UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| **CLUB MADONNA, INC.**, a Florida corporation, ) | |
| d/b/a CLUB MADONNA, ) | |
| ) | CASE NO: |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| **CITY OF MIAMI BEACH**, a Florida ) | |
| municipal corporation, ) | |
| ) | |
| Defendant. ) | |
| _____/ | |

# COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES

Plaintiff, CLUB MADONNA, INC., files this Complaint against the CITY OF MIAMI BEACH, pursuant to 42 U.S.C. §1983, seeking a judgment declaring that Chapter 18, Article XVI (Nude Dance Establishments) of the City of Miami Beach Code of Ordinances is unconstitutional on its face and as applied to Plaintiff under the Fourth, Eighth and Fourteenth Amendments, the Supremacy Clause (Article 6, cl. 2) and the Contract Clause (Art. I, §10, cl. 1) of the United States Constitution, and because it is preempted by state law; and that the January 10, 2014 "Order Revoking Occupational License, Business Tax Receipt and Certificate of Use" was imposed without due process and in violation of Plaintiff's First, Fourteenth and Eighth Amendment Rights; and that §§14-403 through 14-408 (as to certificates of use) and §§102-381 through 102-385 (as to business licenses) of the City of Miami Beach Code of Ordinances, violate the First, Eighth and Fourteenth Amendments on their face and as applied to this Plaintiff. Plaintiff further

seeks issuance of an injunction against those unconstitutional ordinances and practices. Plaintiff further demands damages against the City for losses occasioned by the unconstitutional application of the City's laws and policies against the Plaintiff.

## JURISDICTION

1.      This suit is brought pursuant to 42 U.S.C. §1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

2.      This Court has "Federal Question" jurisdiction pursuant to 28 U.S.C. §1331 to hear cases arising under the Constitution of the United States, pursuant to 28 U.S.C. §1343(3) to redress the deprivation under color of state law of any right, privilege or immunity secured by the Constitution, and under 28 U.S.C. §1343(4) to secure equitable or other relief for the protection of civil rights.

3.      The Court has the authority to issue declaratory judgments pursuant to 28 U.S.C. §§2201 and 2202, and Rule 65 of the Federal Rules of Civil Procedure.

4.      This Court also has jurisdiction to grant equitable relief for violation of civil rights and liberties pursuant to 42 U.S.C. §1983.

5.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367

6.      The Court may enter an award of attorney's fees and costs pursuant to 42 U.S.C. §1988.

7.     This Complaint seeks declaratory relief to prevent violations of the Plaintiff's rights, privileges and immunities under the Constitution of the United States and 42 U.S.C. §§1983 and 1988, specifically seeking redress for the deprivation under color of state statute, ordinance, regulation, custom or usage of rights, privileges, and immunities secured by the Constitution and laws of the United States. The rights sought to be protected in this cause of action arise and are secured under the First, Eighth and Fourteenth Amendments to the U.S. Constitution, as well as the Contract Clause and Supremacy Clause of the U.S. Constitution.

8.     This action seeks a judicial determination of issues, rights and liabilities embodied in an actual and present controversy between the parties involving the constitutionality of certain ordinances, actions and policies of the City. There are substantial *bona fide* doubts, disputes, and questions to be resolved concerning the City's laws, policies and actions taken under color and authority of "state" law and procedures, in violation of Plaintiff's rights under the First, Fourth Eighth and Fourteenth Amendments to the United States Constitution as well as the Supremacy Clause and the Contracts Clause.

## VENUE

9.     Venue is proper in the Southern District of Florida, Miami Division, since the laws and policies complained of are those of the City of Miami Beach, Florida, which is within the district and geographical area assigned to the Miami Division.

## THE PARTIES

10.     Plaintiff, CLUB MADONNA, INC., is a Florida corporation doing business as CLUB MADONNA at 1527 Washington Avenue, Miami Beach, Florida 33139,  Miami-

Dade County, Florida (herein referred to as Plaintiff or "Club Madonna").

    11.    Defendant, CITY OF MIAMI BEACH, is a Florida municipal corporation located in Miami-Dade County, Florida (herein referred to as "Defendant", "City" or "City of Miami Beach").

## BACKGROUND FACTS

    12.    Plaintiff owns and operates a nonalcoholic beverage establishment in Miami Beach that features performances by dancers in the nude. The dance provided by Plaintiff is a form of non-obscene, constitutionally protected expression that is presumptively protected by the First Amendment to the United States Constitution. This expressive activity is performed before a consensual audience, all over the age of eighteen years, desirous of receiving and enjoying the message conveyed by the entertainer of normal human sexual interest in sensual subtleties.

    13.    Plaintiff believes that providing this form of expressive communication to the public is a beneficial social activity that enhances individuals' ability to assimilate and consider various issues involving sexual candor and the interest in human sexuality that all human beings have to a greater or lesser degree. Plaintiff considers this expression to enhance the appreciation of the human body, with an emphasis on the consideration of popular contemporary concepts of physical attractiveness and the stimulating and entertaining aspects of same, which are clear characteristics of a normal and healthy interest in human sexuality.

    14.    Plaintiff communicates these beliefs by offering the expression described above. The expression offered by Plaintiff's business is not intended to be, nor is it, obscene

as contemplated by contemporary community standards. Plaintiff does not intend this expression to appeal to any prurient interest. Plaintiff believes that the specified performances contain serious artistic value.

15.     Plaintiff has presented nude erotic entertainment at this location for over twenty years. Prior to Plaintiff operating a nude entertainment facility at this location, other corporations provided similar entertainment. Said location has been the site of nude entertainment for approximately the past forty years.

16.     Plaintiff has a substantive property right in the continuation of its existing business and in the permits issued to that business.

17.     Florida law recognizes and protects Plaintiff's substantive property rights in its existing business and in the permits issued to that business.

18.     Plaintiff's business falls within the definition of a "nude dancing establishment" under Article V, §142-1271 of the Miami Beach Code of Ordinances.

19.     Club Madonna's current business format is regulated by Miami Beach City Code §6-40, which prohibits nudity where alcoholic beverages are sold, and §12-48 of Ordinance 89-2665, readopted in Ordinance 90-2684 of the Miami Beach Code, which prohibits an alcoholic beverage establishment from permitting nudity on any land in Miami Beach.

20.     Plaintiff's business is also regulated by Chapter 18, Article XVI of the Miami Beach City Code which imposes record-keeping obligations on "Nude Dance Establishments" and regulates the employment contracts of such businesses.

21.     There is a substantial history of conflict and litigation between the Plaintiff and the City which led directly to the bad faith and retaliatory license revocation complained of in this Complaint. That history of conflict and animosity extends to Plaintiff's principal, Leroy Griffith, as well as to the corporate entity.  It is not necessary, for purposes of this litigation, to recount all of the facts of those disputes or the various official investigations into misconduct on the part of the City and its dealings with the Plaintiff. A list of the Federal litigation which this dispute has engendered over the years should suffice to show the depth and long-standing nature of that conflict:

- <u>Club Madonna, Inc. v. City of Miami Beach</u>, Case No.: 05-21213 (S.D. Fla).

- <u>Club Madonna, Inc. v. City of Miami Beach</u>, Case No.: 08-cv-23469-KMM (S.D. Fla.)

- <u>Club Madonna, Inc. v. City of Miami Beach</u>, Case No.: 13-cv-23762 (S.D. Fla.)

- <u>Club Madonna, Inc. v. City of Miami Beach</u>, Case No.: 14-cv-20164-MGC (S.D. Fla.)

## **<u>UNDERAGE PERFORMER</u>**

22.     Plaintiff has a formal policy prohibiting persons under the age of majority from performing at its establishment under any circumstances.

23.     Plaintiff has policies and procedures in place designed to prevent any persons under the age of majority from entering its premises for purposes of performance or otherwise.

24.     Unfortunately, and without the knowledge of the Plaintiff or its principal, it appears that a minor may have gained entry into Plaintiff's business under false pretenses

and may have performed several times during the last week of 2013 and into the first week of 2014. Plaintiff does not concede that a minor actually performed at Plaintiff's business.

25.    On January 6, 2014, a search warrant was issued and executed at Club Madonna for evidence of violations of §787.06(3)(h), Florida Statutes (Commercial Sexual Exploitation of a Minor Under 15 years of Age); §796.03, Florida Statutes (Procuring Person Under the Age of 18 for Prostitution); §796.05, Florida Statutes (Deriving Support from the Proceeds of Prostitution); §827.04, Florida Statutes (Contributing to the Delinquency of a Minor); and §787.03, Florida Statutes (Interference with Child Custody).

26.    The search warrant was issued with respect to an investigation of third parties, none of whom was a principal, officer, manager or employee of Club Madonna.

27.    No principal, officer, manager or employee of Club Madonna has been charged with any of the offenses stated above.

28.    Club Madonna cooperated with law enforcement during their investigation.

29.    Plaintiff undertook immediate remedial measures upon learning that an underage performer may have appeared in the establishment. Plaintiff immediately checked the records of the dancers who had performed at Club Madonna and verified that all of the dancers performing at the establishment were over the age of majority. Plaintiff continues to verify the age of its performers through rigorous internal security protocols.

## EMERGENCY REVOCATION OF BUSINESS LICENSES

30.    At approximately 5:00 PM on Friday, January 10, 2014, Club Madonna was served with an "Order Revoking Occupational License, Business Tax Receipt and Certificate of Use" signed by the City Manager, Jimmy L. Morales. A copy of the Order is

attached as Exhibit "A" to this Complaint and will be referred to herein as "revocation order" or "closure order".

31.     The revocation order required Plaintiff to close its business as it is illegal to operate without the requisite licenses in Miami Beach.

32.     The revocation order inaccurately stated that "The owner of Club Madonna has admitted to having no actual knowledge of whether the minor  performed  at  his establishment, but reportedly admits that 'he heard' that she did."

33.     The revocation order went on to say, "Based on the gravity of the allegations, the evidence collected and the owner's admitted failure to have the required knowledge of what illegal activity occurs at Club Madonna, the City Manager has determined that this activity presents an actual threat to the public health, welfare and safety of the residents of Miami Beach".

34.     The revocation order further states that "An emergency suspension or revocation of Club Madonna's Certificate of Use" is warranted.

35.     In addition to the suspension of the Certificate of Use, Plaintiff's Occupational License/Business Tax Receipt was also suspended.

36.     Pursuant to the revocation order, the revocations of the Occupational License/Business Tax Receipt and the Certificate of Use were for a period of six (6) months.

37.     The revocation order did not provide for any administrative review, did not advise Plaintiff of any administrative or judicial appellate remedies, and did not state that any hearing had been set to consider the charges or that a hearing would be set in the future.

38.     Plaintiff received no prior notice from the City that it was considering administrative action against its Certificate of Use or Business Tax Receipt.

39.     Plaintiff was not afforded any kind of hearing prior to the issuance of the revocation order.

40.     There were no exigent circumstances or serious danger present which would justify the issuance of the revocation order without pre-deprivation notice and an opportunity to be heard.

41.     In particular, the alleged violation – a single underage performer who *may* have been in the Plaintiff's business – had been cured and there was no evidence that there would be a recurrence of that violation. Any potential threat to the public safety had been removed with adequate assurances that no such conduct would occur in the future.

42.     Although Club Madonna had been in existence for approximately 20 years, this was the first allegation ever presented to Club Madonna of having an underage dancer perform at the Plaintiff's business establishment.

43.     Club Madonna offered exotic dance performances for some 20 years without a single reported allegation of an underage performer being allowed to dance. No minor has performed at the establishment since the allegation that a minor performed in December 2013 and January 2014. In other words, in all of the years of operation, the City alleged only a single lapse that has been disputed by the Plaintiff. The City has made no allegation that a minor performed at any other time or is performing at the club at the present time.

44.     The revocation order did not provide for any cure period. That is, there was nothing in the City's Order allowing Club Madonna to take any remedial measures in order to alleviate the City's concerns and to continue its business and its protected speech activities. Notwithstanding the failure to allow remedial measures to correct the alleged violation, Plaintiff immediately undertook appropriate steps in that regard.

45.     The revocation order does not require Club Madonna to perform any particular act or to cure any perceived threat or danger to the public health, welfare and safety, other than being closed for six months.

46.      The revocation order does not show, explain, or identify why six months was a necessary time for Club Madonna to be closed and prevented from presenting constitutionally-protected expression.

47.     The six-month closure is an arbitrary time period set by the City Manager in bad faith for the purpose of punishing Club Madonna and not for the purpose of alleviating an emergency condition or danger to the public health, welfare and safety of the residents of the City.

48.     The revocation order did not even assert that the closure of Club Madonna was necessary for the safety, welfare or public health of the entertainers or visitors to Club Madonna. Rather, Order asserts that the closure is required to protect the residents of Miami Beach without any explanation as to how the closure of Club Madonna for six months protects these residents.

49.     The six month closure is punitive and not remedial.

50.     On January 27, 2014 - more than two weeks after the closure of Plaintiff's business – the City Manager temporarily abated the emergency revocation order, allowing Plaintiff to reopen and again offer constitutionally protected dance performances on a temporary basis.

<div align="center">

**SETTING OF THE SPECIAL MASTER HEARING**

</div>

51.     Pursuant to the City's Ordinances, the City is responsible for setting a hearing with the Special Master following the revocation of a business license.

52.     There are no provisions in the City's Code of Ordinances specifically authorizing a citizen or business whose business license has been suspended or revoked to initiate a hearing before the Special Master.

53.     The City had several opportunities to set an expedited post-deprivation hearing in January 2014, at its regularly scheduled times before the Special Master, but did not do so. In addition, the City could have called a special meeting before the Special Master in January 2014, but did not do so.

54.     A hearing was eventually set before the Special Master for February 5, 2014.

55.     As a matter of law, the February 5, 2014 hearing date did not constitute a prompt post-deprivation hearing as required by the Due Process Clause.

56.     The February 5, 2014 hearing never took place because the City eventually, but belatedly, reinstated Plaintiff's business licenses without a hearing.

57.     Ultimately, Plaintiff's business was closed for seventeen (17) days as a result of the emergency revocation of its business licenses.

58.    Even following the City's decision to allow Plaintiff to reopen following the January 10, 2014 revocation letter, the City pursued alternative means of closing and harassing Plaintiff's business. In particular, the City served a notice on January 27, 2014 falsely claiming that Plaintiff had not paid "resort taxes" pursuant to §102.381(a)(6) of the City's Code.

59.    The City had never previously pursued collection of those taxes against Plaintiff, or any other non-hotel business providing entertainment in the City.

60.    The City threated to bring the resort tax matter before its Special Master at the same time as the hearing on the January 10, 2014 revocation order.

61.    Plaintiff had to secure legal counsel to oppose that assessment before the City finally acknowledged that it had no right to demand payment of those taxes as Plaintiff was obviously exempt.

## THE BUSINESS LICENSING ORDINANCES

62.    The business licensing Ordinances at issue in this case include the following provisions which regulate the suspension and revocation of business licenses:

Sec. 102-383. Notice of violation; emergency action.

If the city manager or his designee believes that a taxee has engaged or is engaged in conduct warranting the suspension or revocation of a business tax receipt, he shall serve the taxee by certified mail or hand delivery, at his business address as disclosed in his application for the business tax, a written administrative complaint which affords reasonable notice to the taxee of facts or conduct that warrant the intended action. The complaint shall state what is required to be done to eliminate the violation, if any. The taxee shall be given adequate opportunity to request a prior administrative hearing unless the city manager finds that an emergency condition exists involving serious danger to public health, safety or welfare, in which case advance notice and hearing shall not be required. In the case

of an emergency suspension or revocation, the taxee shall immediately be advised of the city manager's action and afforded a prompt post-suspension or revocation hearing in accordance with section 102-385.

Sec. 102-384. Hearing when taxee or permittee fails to comply with notice or when requested by aggrieved applicant/taxee.

If a taxee or permittee fails to comply with any notice issued as provided in section 102-383, the city manager or his designee may issue an order in writing to the taxee, by certified mail or hand delivery, notifying him to appear at an administrative hearing before the city manager or his designee to be held at a time to be fixed in such order, which date shall be not less than five days after service thereof. Except as provided in subsection (b) of section, an administrative hearing may also be requested by an applicant/taxee aggrieved by a decision of a code compliance officer regarding denial of a business tax receipt, determination of fees/penalties due and/or warning of potential suspension/revocation for violation of a provision of this article. The request must be in writing and filed in the city manager's office within ten days of receipt of the decision of the inspector. The request must specify the decision complained of and the nature of the applicant's/taxee's grievance and must be accompanied by a fee as approved by a resolution of the city commission to defray expenses of the hearing. The fee will be refunded if the applicant/taxee prevails in the appeal. The city's costs and fees shall be assessed and liened as provided in subsection 30-72(a).

Sec. 102-385. Hearing procedures; enforcement of orders.

(a)     *City manager review.*

(1)     Other than as set forth in subsection (b) of this section, the city manager or his designee shall give written notice of the time and place of the hearing to the taxee/applicant by certified mail or hand delivery and to the city attorney's office.

(2)     The proceedings shall be informal but shall afford the taxee/applicant the right to testify in his own defense, present witnesses, be represented by legal counsel, submit relevant evidence, cross examine witnesses and object to evidence.

(3)     The proceedings shall be recorded and minutes kept by the city. Any applicant/taxee requiring verbatim minutes for judicial review may arrange for the services of a court reporter at his own expense.

(4)     Within ten days of the close of the hearing, the city manager or his designee shall render his decision in writing determining whether or not the tax receipt shall be revoked or suspended or denied, or other action taken or continued, as the case may be, and stating his reasons and findings of fact.

(5)     The city manager or his designee shall file his findings with the city clerk and shall send a true and correct copy of his order by certified mail, return receipt requested, or by hand delivery, to the business address listed on the business tax receipt or to any such other address as the taxee or applicant shall designate in writing.

(b)     *Board of adjustment review.* Denial of a business tax receipt for lack of proper zoning shall be appealable to the board of adjustment pursuant to sections 118-136 and 118-351 et seq. All appeals must be submitted to the board of adjustment within 15 days of the date of the denial.

(c)     *Administrative rulings as final.* The city manager's designee's/ board of adjustment's findings shall constitute the final administrative action of the city for purposes of judicial review under state law.

(d)     *Enforcement.* If an applicant/taxee fails to seek timely appellate review of an order of the city manager or his designee/administrative hearing officer/board of adjustment, or to comply timely with such order, the code compliance officer may pursue enforcement procedures as set forth in section 102-377. Business closings required by suspension/revocation orders may be enforced by the police department.

Sec. 14-406. Notice of violation; emergency action.

(a)     If the city manager or his designee believes that an owner/applicant has engaged or is engaged in conduct warranting the suspension or revocation of a certificate of use, he shall serve the owner/applicant by certified mail or hand delivery, at his business address as disclosed in his application for the certificate of use, a written administrative complaint, which affords reasonable notice to the owner/applicant of facts or conduct

that warrant the intended action. The complaint shall state what is required to be done to eliminate the violation if any.

(b)      The owner/applicant shall be given adequate opportunity to request a prior administrative hearing as specified in section 14-407, unless the city manager finds that an emergency condition exists involving serious danger to public health, safety or welfare, in which case advance notice and hearing shall not be required. In the case of an emergency suspension or revocation, the owner/applicant shall immediately be advised of the city manager's action and afforded a prompt post-suspension or revocation hearing in accordance with section 14-408

Sec. 14-407. Hearing when owner/applicant or permittee fails to comply with notice or when requested by aggrieved owner/applicant.

If an owner/applicant or permittee fails to comply with any notice issued as provided in section 14-36, the city manager or his designee may issue an order in writing to the owner/applicant by certified mail or hand delivery notifying him to appear at an administrative hearing before a special master to be held at a time to be fixed in such order, which date shall be not less than five days after service thereof. Except as provided in section 14-408(b), an administrative hearing may also be requested by an owner/applicant aggrieved by a decision regarding denial of a certificate of use, determination of fees/penalties due, and/or warning of potential suspension/revocation. The request must be in writing and filed in the city manager's office within ten days of receipt of the decision complained of. The request must specify the decision and the owner/applicant's grievance and must be accompanied by a fee as specified in appendix A to defray expenses of the hearing. The fee will be refunded if the owner/applicant prevails in the appeal.

Sec. 14-408. Hearing procedures; enforcement of orders.

(a)      Review by special master.

(1)      Other than as set forth in subsection (b) of this section, the special master shall give written notice of the time and place of the hearing to the owner/applicant by certified mail or hand delivery and to the city attorney's office.

(2)      The proceedings shall be informal but shall afford the owner/applicant the right to testify in his own defense,

present witnesses, be represented by legal counsel, submit relevant evidence, cross examine witnesses, and object to evidence. The proceedings shall be recorded and minutes kept by the city. Any owner/applicant requiring verbatim minutes for judicial review may arrange for the services of a court reporter at his own expense.

(3)     Within ten days of the close of the hearing the special master shall render his decision in writing determining whether or not the owner/applicant's certificate of use shall be revoked or suspended or denied, or other action taken or continued, as the case may be and stating his reasons and findings of fact.

(4)     The special master shall file his findings with the city clerk and shall send a true and correct copy of his order by certified mail, return receipt requested, or by hand delivery to the business address listed on the certificate of use or to any such other address as the owner/applicant shall designate in writing.

(b)     Board of adjustment review. Denial of a certificate of use for lack of proper zoning shall be appealable to the board of adjustment pursuant to section 118-136(a)(1). All appeals must be submitted to the board within 30 days of the date of the denial.

(c)     Administrative rulings as final. The special master or board of adjustment's findings shall constitute the final administrative action of the city for purposes of judicial review under state law.

(d)     Enforcement. If an owner/applicant fails to seek timely appellate review of an order of the special master or the board of adjustment, or to comply timely with such order, the city manager's designee may pursue enforcement procedures as set forth in section 14-403. Business closings required by suspension/revocation orders may be enforced by the city's police department and the costs for the enforcement action shall be placed as a lien against the owner/applicant's real and personal property.

## ENACTMENT OF "HUMAN TRAFFICKING" ORDINANCE

63.     In response to the allegations that an underage performer had danced at Plaintiff's establishment, the City enacted Chapter 18, Article XVI (Nude Dance

Establishments), which purportedly targets human trafficking through the imposition of record-keeping and payment requirements unique to adult entertainment establishments. Article XVI consists of two Ordinances - ORD. No. 2015-3917 and ORD. No. 2015-3926 which were codified as §18-913, §18-914 and §18-915. A copy of Chapter 18, Article XVI is attached as Exhibit "B" to this Complaint.

64.     The City did not impose similar regulations on any other industry, business or trade despite widespread information that human trafficking occurred in such other industries, including hotels and other hospitality businesses.

65.     Because Plaintiff operates the only nude dancing establishment in Miami Beach, the regulations and penalties enacted in Chapter 18, Article XVI apply to only one citizen in the community: Club Madonna.

66.     For the reasons expressed in Counts XV and XVII below, the penalty provisions of Article XVI violate due process and are unenforceable because they exceed the penalty permitted by state and Federal law for similar offenses.

67.     The City enacted Article XVI for an unconstitutional purpose; to-wit: to punish the Plaintiff individually and to provide a means of putting Plaintiff out of business because of the City's objection to the expressive components of Plaintiff's dance entertainment and personal animosity towards Plaintiff's principal, Leroy Griffith.

68.     At the enactment hearings, the City addressed only the alleged violations at Plaintiff's establishment and did not consider underage performances or human trafficking at any other establishment or in any other industry. Plaintiff's business was singled out for condemnation despite widely-available evidence showing that human trafficking is rare in

adult businesses, but common in other establishments in tourist areas (such as hotels and restaurants).

69.     During the enactment proceedings for the Ordinances comprising Article XVI, a majority of the City Commission, and a majority of the Commissioners voting for the subject Ordinances, specifically stated that they intended to use the Ordinance as a means of closing Plaintiff's business. In particular, the Commissioners stated that they desired to impose extravagantly high civil penalties as a means of driving Plaintiff out of business:

> "I think we can all agree that we can multiply those fines by ten for each of them. What do you think, $25,000 for the first offense…?"

Commissioner Ed Tobin (November 21, 2014 public hearing). Commissioner Micky Steinberg's comments at the same hearing show the City's true intent in enacting this legislation: "Listen, I would love not to even have them in business."

## COLOR OF STATE LAW

70.     As a political subdivision of the State of Florida, organized and operating under the laws of the State of Florida, the City of Miami Beach and its agents, were, and are, acting under color of state law and authority.

## DAMAGES AND ATTORNEY'S FEES

71.     Plaintiff has suffered damages as a direct result of the City's Ordinances, policies and practices and the unconstitutional enforcement of those Ordinances and policies. Plaintiff's damages consist of infringement upon Plaintiff's constitutional rights as well as monetary losses. The monetary losses include lost profits, carrying costs and

injury to good will. The injury to good will is reflected in the continuing loss of patronage even after Plaintiff's business was allowed to reopen.

72.    Plaintiff has retained BENJAMIN, AARONSON, EDINGER & PATANZO, P.A. and the LAW OFFICE OF BENEDICT P. KUEHNE, P.A. as its attorneys to represent it in this action and has agreed to pay them a reasonable fee, which fee Defendant must pay pursuant to 42 U.S.C. §1988.

<u>**CONSTITUTIONAL VIOLATIONS**</u>

73.    The Ordinances under which the City purportedly revoked Plaintiff's business licenses - §102-381 (as to business licenses) and §§14-403 and 14-404 (as to certificates of use) - are unconstitutional on their face and applied to this Plaintiff.

74.    The procedural provisions which gave effect to the revocation decision - §§102-383 and 102-385 (as to business licenses) and §§14-406 and 14-408 (as to certificates of use) – are also unconstitutional on their face and applied to this Plaintiff.

75.    The business licensing Ordinances violate the First Amendment as applied to Plaintiff because they allowed the City Manager unfettered discretion to suspend or revoke a license necessary for speech without judicial approval and without any of the substantive or procedural protections required by <u>FW/PBS v. City of Dallas</u>, 493 U.S. 215, 110 S.Ct. 596 (1990) and <u>Fort Wayne Books, Inc. v. Indiana</u>, 489 U.S. 46, 109 S.Ct. 916, 928 (1989).

76.    The business licensing Ordinances violate the due process clause of the Fourteenth Amendment on their face and as applied because they allow for arbitrary, discriminatory, and even bad faith decision-making, and do not provide a quick or effective

post-deprivation hearing as required by <u>Fuentes v. Shevin</u>, 407 U.S. 67, 92 S.Ct. 1983 (1972); *See, also*, <u>Grayden v. Rhodes</u>, 345 F.3d 1225 (11th Cir. 2003), <u>Noatex Corp. v. King Const. of Houston, L.L.C.</u>, 732 F.3d 479 (5th Cir. 2013).

77.     Chapter 18, Article XVI violates the Contract Clause [Art. I, §10, cl. 1] and the Supremacy Clause of the United States Constitution (Article 6, cl. 2), as well as the First, Fourth, Eighth and Fourteenth Amendments for multiple reasons which are set forth below. The Human Trafficking Ordinance is also preempted under a variety of state and Federal laws.

<u>**ALLEGATIONS IN SUPPORT OF INJUNCTIVE RELIEF**</u>

78.     Plaintiff is suffering irreparable injury and is threatened with irreparable injury in the future because it is presently subject to the provisions of Chapter 18, Article XVI (the Human Trafficking Ordinance) and risks substantial fines and the closure of its business under that Ordinance.

79.     Plaintiff's ability to continue in operation and its ability to engage in free speech can be curtailed at the whim of the City Manager as the Manager retains the right to suspend or revoke Plaintiff's business licenses any time he personally believes an "emergency" exists under the business licensing Ordinances (§§102-383 – 385 and §§14-406 – 408, Miami Beach Code). The very real threat of a subsequent closure order chills Plaintiff's constitutionally protected speech rights.

80.     Plaintiff will suffer a continuing violation of its civil rights and liberties as a result of the Human Trafficking Ordinance, and the threat of future closures, should an injunction not issue.

81.     A permanent injunction will preserve Plaintiff's civil rights and reduce the need to compensate Plaintiff with additional money damages for further violations of its rights. Plaintiff has no adequate remedy at law.

82.     The harm that would be suffered by the Plaintiff without an injunction - the loss of its constitutional rights - exceeds any conceivable harm the City would suffer if it is prohibited from enforcing illegal Ordinances and practices.

83.     A permanent injunction prohibiting enforcement of those unconstitutional Ordinances and practices would not be contrary to the public interest.

## COUNT I

### (License Revocation - Violation of First Amendment Rights – Facial Challenge)

84.     Plaintiff realleges the facts set forth in Paragraphs 1 through 62 and 70 through 83 and of this Complaint and incorporates those facts into this Count by reference.

85.     This is an action for declaratory relief pursuant to 28 U.S.C. §2201.

86.     Plaintiff asserts that its position set forth in this Complaint is legally sound and supported by fact and law. The City's actions, however, have created a *bona fide* controversy between the parties, and Plaintiff is in doubt as to its rights, privileges and immunities with respect to the enforcement of the legislation at issue herein. Plaintiff therefore requires a declaratory judgment declaring its rights, privileges and immunities. There is a clear, present, actual, substantial, and *bona fide* justiciable controversy between the parties.

87.     The Ordinances, policies and practices of the City, as above-described, are intended to and have the  actual  effect  of  censoring Plaintiff's  speech  and preventing

Plaintiff from disseminating its message of eroticism.

88.     The closure order, revoking both the Occupational License and the Certificate of Use, violated Plaintiff's First Amendment right to expression and imposed an unlawful prior restraint.

89.     On their face, the subject Ordinances authorize the City Manager to impose a prior restraint in the form of an emergency closure order for alleged code violations.

90.     The First Amendment does not tolerate a prior restraint without careful substantive and procedural safeguards. An administrative closure order with no prior judicial review and no immediate post-deprivation hearing is a particularly egregious prior restraint.

91.     The City Manager is empowered by the Ordinances, in his unfettered discretion, to declare that an emergency exists and is authorized without notice to the occupant or owner of the property, to suspend or revoke any Occupational License or Certificate of Use.  There are no limits placed on the discretion of the City Manager; that discretion is absolute and unfettered.

92.     Emergency closure orders, issued by the City Manager under the authority of §102-381 and §14-408, are unconstitutional when applied against First Amendment protected businesses because the orders lack the substantive and procedural protections required by FW/PBS v. City of Dallas, 493 U.S. 215, 110 S.Ct. 596 (1990).

93.     The subject Ordinances are facially unconstitutional because they allow the City Manager, to impose a prior restraint on speech in his unfettered discretion under a scheme that does not afford a prompt administrative decision within a specified period of

time, fails to provide for prompt judicial review, and does not maintain the *status quo* pending appeal to the justice system.

94.     The Ordinances nominally allow for a post-deprivation hearing. However the time for said hearing is to be set by the City Manager (or the Special Master) at the unfettered discretion of the official, with no Constitutional safeguards that the hearing will occur in a timely fashion - or at all. Further the hearing officer is a Special Master or "designee" of the City Manager and is selected by the City, paid by the City and whose future employment is obviously contingent on his or her allegiance to the City. This process does not afford Plaintiff a fair and impartial hearing before a neutral trier of fact

95.     The administrative decision to close Plaintiff's businesses through an emergency closure order was made without any judicial review or approval whatsoever. Furthermore, neither the Ordinances nor the closure order provide a specified brief period of time for administrative or judicial review of the City Manager's decision.

96.     Neither the Ordinances nor the closure order preserved the *status quo* pending judicial review.

97.     The emergency closure order had much more than an incidental effect on Plaintiff's First Amendment protected expression as the order allowed no alternative avenues of communication – an entire category of speech was prohibited.

98.     The Plaintiff has a constitutional right to present non-obscene erotic dance by performers over the age of majority. The closure order prevented Plaintiff from exercising these rights and from presenting constitutionally protected expression. The

closure order still poses a threat to those speech rights as the Ordinances authorizing emergency closure orders remain in effect.

99.     Plaintiff is entitled to a declaration of its rights.

WHEREFORE, Plaintiff prays for the following relief:

A.     That the Court take jurisdiction over the parties and this cause;

B.     That the Court declare that the January 10, 2014 closure order violated Plaintiff's First Amendment rights;

C.     That the Court declare that §§14-403 through 14-408 and §§102-381 through 102-385 of the Miami Beach Code are unconstitutional on their face because those provisions violate Plaintiff's First Amendment rights;

D.     That the Court enter a permanent injunction forever enjoining the City from issuing emergency closure orders under §§14-403 through 14-408 and §§102-381 through 102-385 of the Miami Beach Code in the absence of an order from a Court directing same;

E.     That the Court enter a judgment against the City for compensatory damages to compensate Plaintiff for its losses.

F.     That this court award Plaintiff its recoverable costs recoverable costs, including reasonable attorney's fees pursuant to 42 U.S.C. §1988; and

G.     That this Court award Plaintiff all other relief in law and in equity to which it may be entitled.

## COUNT II

### (License Revocation - Violation of First Amendment Rights – As Applied)

100.   Plaintiff realleges the facts set forth in Paragraphs 1 through 62 and 70 through 83 of this Complaint and incorporates those facts into this Count by reference.

101.   This is an action for declaratory relief pursuant to 28 U.S.C. §2201.

102.   Plaintiff asserts that its position set forth in this Complaint is legally sound and supported by fact and law. The City's actions, however, have created a *bona fide* controversy between the parties, and Plaintiff is in doubt as to its rights, privileges and immunities with respect to the enforcement of the legislation at issue herein. Plaintiff therefore requires a declaratory judgment declaring its rights, privileges and immunities. There is a clear, present, actual, substantial, and *bona fide* justiciable controversy between the parties.

103.   Even if the subject Ordinances are not unconstitutional on their face, they have been applied in such a manner as to intentionally deprive Plaintiff of its First Amendment rights by creating a prior restraint. That prior restraint is both created and removed in the sole discretion of the City Manager. Furthermore, that discretion has been intentionally abused with the purpose and effect of depriving Plaintiff of its First Amendment rights.

104.   The ordinances, policies and practices of the City as above-described, are intended to and have the actual effect of censoring Plaintiff's speech and preventing Plaintiff from disseminating its message of eroticism.

105.    The closure order, revoking both the Occupational License and the Certificate of Use, violated Plaintiff's First Amendment Right to expression and imposed an unlawful prior restraint.

106.    The emergency revocation order was purportedly based upon alleged illegal performances by a single underage dancer at Plaintiff's establishment and not upon a finding that an emergency condition existed which created a danger to the community.

107.    The restraint of revocation was imposed without prior notice to the Plaintiff, on the basis of a preliminary administrative determination only, and with no judicial review whatsoever.

108.    The revocation was based on allegations of one or more dance performances by a single performer and is not based on any physical defect in the premises or other characteristics of the establishments, its employees or contractors. Neither was the revocation based upon the existence of a dangerous condition.

109.    The revocation was not based on a law of general application affecting all businesses, but rather is based on a performance at an establishment engaged in First Amendment protected activities.

110.    The emergency revocation did not allege that the purported underage dancer continues to perform at Plaintiff's establishment.

111.    The emergency revocation did not allege that any other performers at Plaintiff's establishment are under the age of majority.

112.    The emergency revocation did not allege that any other performance is obscene or otherwise in violation of the law.

113.    The emergency revocation order was not limited to dance performances by the single performer who is alleged to be underage.

114.    The emergency revocation order affected all future dancer performances at Plaintiff's establishment; regardless of who performs or the nature of that future performance.

115.    The City Manager had no factual basis to believe that any future performance would constitute a threat to the public health, safety or welfare of the citizens of Miami Beach.

116.    The revocation order in this instance is exactly the equivalent of closing an adult theater based on the showing of a single obscene movie without a prior judicial determination that future speech is unprotected. Such revocation orders have universally been deemed unconstitutional prior restraints *See, e.g.*, Fort Wayne Books, Inc. v. Indiana, 489 U.S. 46, 109 S.Ct. 916 (1989).

117.    The revocation was over broad and not narrowly tailored to the government's only asserted interest: prohibiting underage performances in adult entertainment establishments.

118.     The six month closure order was disproportionate, was not justified by the circumstances and was not narrowly tailored to alleviate any perceived harm. It was punitive and not remedial.

119.    The actions of the City will and have deprived the Plaintiff of constitutional rights protected by the First Amendment to the United States Constitution.

WHEREFORE, Plaintiff prays for the following relief:

A.      That the Court take jurisdiction over the parties and this cause;

B.      That the Court declare that the closure order violated the First Amendment as applied to the Plaintiff;

C.      That the Court declare that §§14-403 through 14-408 and §§102-381 through 102-385 of the Miami Beach Code are unconstitutional as applied to the Plaintiff because they were employed in such a manner as to violate Plaintiff's First Amendment rights.

D.      That the Court enter a judgment against Defendant for compensatory damages to compensate Plaintiff for its losses.

E.      That this court award Plaintiff its recoverable costs recoverable costs, including reasonable attorney's fees pursuant to 42 U.S.C. §1988; and

F.      That this Court award Plaintiff all other relief in law and in equity to which it may be entitled.

## COUNT III

**(License Revocation - Violation of Due Process Rights – Facial Challenge - Finding of Emergency)**

120.    Plaintiff realleges the facts set forth in Paragraphs 1 through 62 and 70 through 83 of this Complaint and incorporates those facts into this Count by reference.

121.    This is an action for declaratory relief pursuant to 28, U.S.C. §2201.

122.    Plaintiff asserts that its position set forth in this Complaint is legally sound and supported by fact and law. The City's actions, however, have created a *bona fide*

controversy between the parties, and Plaintiff is in doubt as to its rights, privileges and immunities with respect to the enforcement of the legislation at issue herein. Plaintiff therefore require a declaratory judgment declaring its rights, privileges and immunities. There is a clear, present, actual, substantial, and *bona fide* justiciable controversy between the parties.

123.     Plaintiff has a clear legal right to provide exotic entertainment to consenting adult patrons without fear of retaliatory conduct and selective enforcement by the City. Such communication is protected by the First Amendment to the United States Constitution. Furthermore, government actions to enforce local laws must afford due process to Plaintiff and similarly situated businesses.

124.     Section 102-381 and §14-408 give the City Manager unbridled discretion to determine whether an emergency exists that would justify a closure order.

125.     The Code does not adequately constrain the discretion of the City Manager because it specifically confers on the City Manager the ability to deprive a citizen of its property based solely on the City Manager's personal opinion that an emergency exists.

126.     Neither §102-383 nor §14-406 adequately define those circumstances which constitute an emergency. The general reference to any "serious danger to public health, safety or welfare" does not adequately constrain the discretion of the City Manager and has been known to be constitutionally defective for almost fifty years. S*ee*, Shuttlesworth v. City of Birmingham, 394 U.S. 147, 150-51, 89 S. Ct. 935, 938-39 (1969).

127.     The other provisions of the subject Ordinances provide even less guidance and only serve to expand the authority of the City Manager to issue such orders as he

chooses in his unfettered discretion.

128.    The inadequacies of the statutory definition are reflected in their application to the Plaintiff in this case. There was no evidence before the City that the alleged underage dancer was still dancing at Club Madonna and no such allegation was recited in the revocation order.

129.    Therefore, if there had been an emergency, that emergency had been fully abated and there was no continuing "serious danger" to the public health, safety or welfare. The emergency closure in this case could not be justified on the basis of an intent to prevent future instances of underage dancing as there was no evidence or allegation that Club Madonna presented such a risk.

130.    Furthermore, the prior 20 years of operation without an incident of underage dancing shows that such events are rare or non-existent and could not reasonably be expected to recur in the future. Time has shown the truth of this assertion as there have been no subsequent instances of performances by alleged minors.

131.    Thus any future violation was speculative and not supported by fact. The City's Ordinances do not expressly allow for protection against speculative future emergencies, but only to events posing an actual "serious danger' at the time of the revocation.

132.    Section 102-383 and §14-406 do not require any prior notice to the landowner or party in possession before issuing a revocation order.

133.    The subject Ordinances do not provide for an immediate post-deprivation hearing to validate the emergency administrative determination. Instead, the aggrieved

party is only to be "afforded" a hearing under both Ordinance provisions, with the notice of time and place determined by the City Manager or the Special Master in their sole discretion. There is no specific time frame within which a hearing must take place under either section.

133. No judicial review can be had until the post deprivation hearing is unilaterally set by the City and a decision is rendered; *i.e.* administrative remedies must be exhausted before a citizen can turn to the Courts for review.

135. The hearing officer is a Special Master or Designee of the City, selected by the City, paid by the City and whose future employment is obviously contingent on his or her allegiance to the City. This process does not afford Plaintiff a fair and impartial hearing before a neutral trier of fact.

136. The subject Ordinances are therefore unconstitutional on their face because:

A. They do not provide for pre-deprivation notice and an opportunity to be heard before the seizure and loss of property and speech rights;

B. In those rare cases where exigent circumstances justify action without prior notice or a hearing, there is no guaranty of an immediate post-deprivation hearing to challenge the revocation order.

C. There are no limits on the City Manager's discretion and there are no guidelines or standards to curtail his unbridled discretion.

D. The hearing officer contemplated by the Ordinance is neither neutral nor impartial.

137. Plaintiff is entitled to a declaration of its rights.

WHEREFORE, Plaintiff prays for the following relief:

A.      That the Court take jurisdiction over the parties and this cause;

B.      That the Court declare that the closure order issued against Plaintiff violated Plaintiff's due process rights;

C.      That the Court declare that §§14-403 through 14-408 and §§102-381 through 102-385 of the Miami Beach Code are unconstitutional on their face because those provisions violate Plaintiff's due process rights;

D.      That the Court enter a permanent injunction forever enjoining the City from issuing emergency closure orders under 102-381 and 14-408 of the Miami Beach Code in the absence of an order from a Court directing same;

E.      That the Court enter a judgment against the City for compensatory damages to compensate Plaintiff for its losses.

F.      That this court award Plaintiff its recoverable costs recoverable costs, including reasonable attorney's fees pursuant to 42 U.S.C. §1988; and

G.      That this Court award Plaintiff all other relief in law and in equity to which it may be entitled.

## COUNT IV

### (License Revocation - Violation of Due Process Rights – Facial Challenge – Inadequate Post-Deprivation Procedures)

138.    Plaintiff realleges the facts set forth in Paragraphs 1 through 62 and 70 through 83 of this Complaint and incorporates those facts into this Count by reference.

139.    This is an action for declaratory relief pursuant to 28 U.S.C. §2201.

140.    Plaintiff asserts that its position set forth in this Complaint is legally sound and supported by fact and law. The City's actions, however, have created a *bona fide* controversy between the parties, and Plaintiff is in doubt as to its rights, privileges and immunities with respect to the enforcement of the legislation at issue herein. Plaintiff therefore require a declaratory judgment declaring its rights, privileges and immunities. There is a clear, present, actual, substantial, and *bona fide* justiciable controversy between the parties.

141.    Plaintiff has a clear legal right to provide exotic entertainment to consenting adult patrons without fear of retaliatory conduct and selective enforcement by the City. Such communication is protected by the First Amendment to the United States Constitution. Furthermore, government actions to enforce local laws must afford due process to Plaintiff and similarly situated businesses.

142.    The subject Ordinances give the City Manager unbridled discretion to determine whether an emergency exists that would justify a closure order.

143.    The subject Ordinances do not require any prior notice to the landowner or party in possession before revoking business licenses and requiring a business to close; *i.e.*, there are no provisions for pre-deprivation notice.

144.    The subject Ordinances do not require that the landowner or party in possession be afforded a hearing before the City Manager issues revocation orders and directs the closure of businesses; *i.e.*, there are no provisions for a pre-deprivation hearing.

145.    The subject Ordinances are therefore unconstitutional on their face because:

A.      They do not provide for pre-deprivation notice and an opportunity to be

heard prior to the seizure of property and the loss of property and speech rights;

B.     They afford the decision maker (the City Manager) unfettered discretion and do not limit the issuance of closure orders to exigent circumstances;

C.     In those rare cases where exigent circumstances justify action without prior notice or a hearing, there are no provisions for an immediate post-deprivation hearing to challenge the closure order.

146.    The absolute power of the City Manager to declare an emergency and order the closure of Plaintiff's establishment without prior notice is an unconstitutional infringement upon Plaintiff's Fourteenth Amendment right to due process.

147.    The subject Ordinances do not provide for notice and an opportunity to be heard before issuance of a revocation order and closure of a business.

148.    In the rare case where exigent circumstances may actually be present, the subject Ordinances do not provide for an immediate or effective post-deprivation hearing.

149.    The Ordinances envision a hearing before a Special Master or the City Manager's Designee. Although a hearing is to occur "promptly", that term is undefined in the Code. Furthermore, there are no guidelines specifying when a hearing must be concluded and a decision must issue. The nominal ten day period for decision making is illusory because there is no definite time within which the hearing must be set or concluded and the hearing officer is permitted to continue the hearing unilaterally.

150.    Plaintiff is entitled to a declaration of its rights.

WHEREFORE, Plaintiff prays for the following relief:

A.     That the Court take jurisdiction over the parties and this cause;

B. That the Court declare that §§14-403 through 14-408 and §§102-381 through 102-385 of the Miami Beach Code are unconstitutional on their face because those provisions violate Plaintiff's due process rights;

C. That the Court enter a permanent injunction forever enjoining the City from issuing emergency closure orders under 102-381 and 14-408 of the Miami Beach Code in the absence of an Order from a Court directing same;

D. That the Court enter a judgment against Defendant for compensatory damages to compensate Plaintiff for its losses.

E. That this court award Plaintiff its recoverable costs recoverable costs, including reasonable attorney's fees pursuant to 42 U.S.C. §1988; and

F. That this Court award Plaintiff all other relief in law and in equity to which it may be entitled.

**COUNT V**

**(License - Revocation Violation of Substantive and Procedural Due Process Rights – As Applied)**

151. Plaintiff realleges the facts set forth in Paragraphs 1 through 62 and 70 through 83 of this Complaint and incorporates those facts into this Count by reference.

152. This is an action for declaratory relief pursuant to 28 U.S.C. §2201.

153. Plaintiff asserts that its position set forth in this Complaint is legally sound and supported by fact and law. The City's actions, however, have created a *bona fide* controversy between the parties, and Plaintiff is in doubt as to its rights, privileges and immunities with respect to the enforcement of the legislation at issue herein. Plaintiff

therefore requires a declaratory judgment declaring its rights, privileges and immunities. There is a clear, present, actual, substantial, and *bona fide* justiciable controversy between the parties.

154.    Plaintiff has a clear legal right to provide exotic entertainment to consenting adult patrons without fear of retaliatory conduct and selective enforcement by the City. Such communication is protected under the First Amendment to the United States Constitution. Furthermore, government actions to enforce local laws must afford due process to Plaintiff and similarly situated businesses.

155.    The revocation order issued by the City Manager to the Plaintiff was inadequate and failed to afford due process to the Plaintiff. Plaintiff alleges the following particulars:

A.    The revocation order issued by the City Manager did not identify a means of curing the alleged violation or allow for the curing of the alleged violation.

B.    The revocation order issued by the City Manager did not provide a hearing date at which Plaintiff could appear and contest or defend against the alleged violations.

C.    The revocation order issued by the City Manager did not inform Plaintiff that it had a right to challenge the revocation.

D.    The revocation order did not advise Plaintiff of when the post-deprivation hearing would be held and no other notice of hearing was delivered contemporaneously or at any time after service of the order.

156.    There were no exigent circumstances or serious danger present in the instant case.  For approximately twenty years the Plaintiff has provided nude erotic dance without

so much as an allegation that any minor has entered the establishment, much less been allowed to perform. There is no pattern of conduct or any reason based in fact to anticipate that this alleged violation will occur in the future.

157.    The subject Ordinances did not require any prior notice to the landowner or party in possession before issuing a revocation order or directing the closure of a business.

158.    The subject Ordinances did not require that the landowner or party in possession be afforded a hearing before the City Manager issues a revocation order.

159.    The subject Ordinances *do* require that the City to set a "prompt" public hearing before the Special Master and to give immediate notice of that hearing, although no specific time periods are established.

160.    The City revoked Plaintiff's BTR and CU on Friday, January 10, 2014, without any pre-deprivation notice or hearing.

161.    The revocation order did not advise Plaintiff of its rights to challenge the administrative determination and did not provide notice of when the hearing before the Special Master would take place.

162.    The Due Process Clause requires that there be an immediate post-deprivation hearing when exigent circumstances exist.

163.    While the exact number of hours or days before a hearing is required is not specified in the Constitution, the Courts have required the hearing to be as prompt as possible given the circumstances, the chances of an erroneous determination, and the rights at stake.

164. In this case, a prompt hearing would necessarily mean "within a matter of days". Plaintiff alleges the following particulars:

A. The only alleged violation purported to involve performances by a single underage dancer, who no longer performed at the business. No other performer was alleged to be underage or was engaging in illegal performances and there are no physical defects in the premises to justify a closure.

B. The interests at stake are vital and pertain to two fundamental constitutional rights:

(1) Plaintiff's First Amendment right of free speech along with the associated rights of Plaintiff's performers and patrons;

(2) Plaintiff's livelihood was threatened as its business was closed at the direction of the City Manager with no Court approval or review.

C. There is a substantial probability that the determination of exigent circumstances and the decision to close the business were both erroneous. That error is manifest on the face of the revocation order: the supposed emergency threat, if previously existing, did not exist at the time the order was issued. Furthermore, there was no factual basis to believe that there would ever be a future violation of the kind alleged by the City here. The risk that First Amendment rights could be wrongfully impaired – or burdened to an improper extent – was and is extremely high.

165. Pursuant to §§14-408 and 102-385 it is the City's affirmative obligation to set the post-deprivation hearing and to give immediate notice of same.

166.    The City failed to set an immediate post-deprivation hearing. As a result, Plaintiff's business was closed for 17 days without Court review or an opportunity to challenge the City Manager's decision.

167.    The February 5, 2014 hearing date did not constitute a prompt post-deprivation hearing as required by the Due Process Clause.

168.    The revocation of Plaintiff's licenses violates the Due Process Clause as applied because the City failed to make available or conduct a prompt post-deprivation hearing.

169.    Plaintiff is entitled to a declaration of its rights.

WHEREFORE, Plaintiff prays for the following relief:

A.      That the Court take jurisdiction over the parties and this cause;

B.      That the Court declare that the revocation order and closure of Plaintiff's business violated the Due Process Clause as applied to the Plaintiff;

C.      That the Court declare that §§14-403 through 14-408 and §§102-381 through 102-385 of the Miami Beach Code are unconstitutional as applied to Plaintiff because they were employed to violate Plaintiff's due process rights.

E.      That the Court enter a judgment against the City for compensatory damages to compensate Plaintiff for its losses.

F.      That this court award Plaintiff its recoverable costs recoverable costs, including reasonable attorney's fees pursuant to 42 U.S.C. §1988; and

G.      That this Court award Plaintiff all other relief in law and in equity to which it may be entitled.

## COUNT VI

### (License Revocation - Violation of First Amendment and Due Process Rights – Bad Faith / Retaliation)

170.    Plaintiff realleges the facts set forth in Paragraphs 1 through 62 and 70 through 83 of this Complaint and incorporates those facts into this Count by reference.

171.    This is an action for declaratory relief pursuant to 28 U.S.C. §2201.

172.    Plaintiff asserts that its position set forth in this Complaint is legally sound and supported by fact and law. The City's actions, however, have created a *bona fide* controversy between the parties, and Plaintiff is in doubt as to its rights, privileges and immunities with respect to the enforcement of the legislation at issue herein. Plaintiff therefore requires a declaratory judgment declaring its rights, privileges and immunities. There is a clear, present, actual, substantial, and *bona fide* justiciable controversy between the parties.

173.    The declaration of emergency in this case was entirely pretextual. The purported violation, if in fact it ever existed, was cured as soon as the alleged underage performer was removed from the stage with no realistic prospect for recurrence.

174.    The decision to revoke Plaintiff's business license and certificate of use for a period of six months was punitive and was not tied to any facts or circumstances of this case.

175.    Furthermore, the City had an opportunity, through the exercise of a search warrant on the premises and the City's own independent investigation, to determine that there were no other alleged underage performers at the club.

176.    As noted above, Plaintiff and its principal officer have had an adversarial relationship with Miami Beach for a number of years, including numerous lawsuits and criminal and ethics investigations of City staff and elected officials.

177.    The City utilized the subject Ordinances against Plaintiff for bad faith, pretextual and retaliatory reasons because of Plaintiff's prior conduct involving the City.

178.    Likewise, the closure order issued by the City was not limited to those performances or those portions of the premises believed to represent an immediate threat to the health, safety and welfare of Plaintiff's customers and employees. Instead, the closure order required that the entire business be closed, thereby prohibiting any associated speech activities.

179.    Furthermore, the six month duration of the license revocation, without any opportunity to cure the perceived emergency, speaks for itself. This is a punitive measure, brought in bad faith, and constitutes retaliation against Plaintiff for its previous efforts to speak freely and to seek relief through the Courts. The order was an attempt to silence Plaintiff's speech and to violate its due process rights.

180.    The emergency closure order has much more than an incidental effect on Plaintiff's First Amendment protected expression as the order allowed no alternative avenues of communication – an entire category of speech was prohibited.

181.    Reliance on the subject Ordinances as a basis for the City's emergency closure orders was entirely pretextual.  The City knew or reasonably should have known that Plaintiff's business did not pose an immediate threat or serious danger to the health,

safety or welfare of the community. The closure order was motivated entirely by an intent to harass Plaintiff and deny its right of free speech and access to the Courts.

182.    Also telling is that the City chose to issue the license revocation on a Friday at 5:00 PM., thus preventing any immediate Court redress as well as additional economic hardship because the forced closure occurred during the more lucrative weekend period.

183.    Plaintiff is entitled to a declaration of its rights.

WHEREFORE, Plaintiff prays for the following relief:

A.    That the Court take jurisdiction over the parties and this cause;

B.    That the Court declare that the revocation order and the closure of Plaintiff's business violated Plaintiff's First Amendment due process rights;

C.    That the Court declare that §§14-403 through 14-408 and §§102-381 through 102-385 of the Miami Beach Code are unconstitutional as applied to the Plaintiff because they were employed to violate Plaintiff's First Amendment and due process rights.

E.    That the Court enter a permanent injunction forever enjoining the City and from issuing emergency closure orders under the subject Ordinances in the absence of an Order from a Court directing same;

F.    That the Court enter a judgment against the City for compensatory damages to compensate Plaintiff for its losses.

G.    That this court award Plaintiff its recoverable costs recoverable costs, including reasonable attorney's fees pursuant to 42 U.S.C. §1988; and

H.    That this Court award Plaintiff all other relief in law and in equity to which it may be entitled.

**COUNT VII**

**(Human Trafficking Ordinance - Unconstitutional Burden on Speech)**

184.     Plaintiff realleges each and every allegation in paragraphs 1 through 29 and 63 through 83 of this Complaint and incorporates them herein by reference.

185.     This is an action for declaratory relief pursuant to 28 U.S.C. §2201.

186.     Plaintiff is uncertain as to its rights and remedies under Chapter 18, Article XVI of the City of Miami Beach Code, as it has been applied to Plaintiff in violation of the First Amendment to the Constitution of the United States.

187.     Various provisions of Chapter 18, Article XVI of the City of Miami Beach Code are not narrowly tailored and do not advance the asserted government interest commensurate with their burden on free speech.

188.     Section 18-913 requires a performer to present two forms of identification and requires Plaintiff to copy and log in that information *every* time that the performer comes onto the premises:

> No person shall be allowed to enter or perform at the nude dance establishment or who has not been *presently verified* consistent with those provisions identified within subsections 18-913(1) through (5). (emphasis added).

189.     Section 18-913 is unduly burdensome on speech and is not narrowly tailored because the repeated requirement to verify the age, identity and citizenship of a performer serves no valid public purpose. A sensible and narrowly-tailored ordinance might require a business to register a dancer once, after which the dancer could perform as a known performer. After all, once a potential performer reaches the age of 18, she will

never be disqualified from performing on the basis of age, nor is she likely or able to change

identities or citizenship from day to day.

190.   Section 18-914 requires that a nude dancing establishment pay its

performers directly and that it maintain certain records in perpetuity:

Sec. 18-914. - Compensation for workers and performers.

A nude dance establishment, as defined in section 142-127 of the city Code, and as such section may be amended from time to time, must:

(1)   Provide direct monetary or non-monetary compensation to any worker or performer at a nude dance establishment, and shall maintain documentary proof acknowledging that the monetary or non-monetary compensation was directly received by the worker or performer. The documentation must identify the performer or worker receiving the compensation, and will acknowledge that no other individual, person, or entity was entitled to, or received the compensation on behalf of the worker or performer… The nude dance establishment shall not compensate any worker or performer through a third-party intermediary or business entity.

(a)   A nude dance establishment shall maintain these compensation records for performers and workers, and the city shall have a right to request and inspect the records for any and all workers or performers at a nude dance establishment.

191.   Section 18-914 is unduly burdensome on speech and is not narrowly

tailored in several respects:

A.   The requirement that documentation include some sort of

"acknowledgement" that compensation was paid directly by the business and not by a third

party. Wages in the business world are commonly paid by check and documented with a

W-2 or 1099. The requirement for additional "acknowledgements" is unreasonable and

serves no valid government interest.

B.     Under the Ordinance, Plaintiff must maintain documentation of compensation indefinitely and must immediately provide those documents to the City upon request. The lack of a time limit imposes an unreasonable burden on the Plaintiff in terms of sheer volume of paperwork accumulated over the years. Furthermore, the requirement that Plaintiff provide those records at any time to the City means that the records must be kept on-site rather than warehoused, making the regulation even more unreasonably burdensome.

C.     The City of Miami Beach does not actually "do" anything with the records which it requires the Plaintiff to maintain. That is, the City does not evaluate whether employees and contractors have received the correct compensation; it has no standards, practices or guidelines to measure whether the compensation is correct; it does not punish the business if the compensation paid to the employees and contractors is not proper (without providing any standards to determine propriety), and it does not enforce the contracts for the benefit of the employees and contractors. Rather, the records must be kept solely for the purpose of requiring the Plaintiff to keep records.

D.     The City of Miami Beach does not regulate the manner in which compensation is paid by other businesses, trades or industries, nor does it impose record-keeping requirements of the kind found in §18-914 with respect to any other business, trade or industry. The record-keeping and payment requirements are imposed on this single business in this single industry despite abundant information known to the City that human trafficking occurs in a variety of businesses and locations. As the only nude dancing

establishment in the City of Miami Beach, Plaintiff is literally the only citizen affected by this law.

WHEREFORE, Plaintiff prays for the following relief:

A.      That this Court take jurisdiction over the parties and this cause;

B.      That this Court enter a judgment declaring Chapter 18, Article XVI §18-913 and 18-914 of the Miami Beach Code to be unconstitutional on its face, and as applied to Plaintiff.

C.      That this Court enter a permanent injunction forever enjoining the City and its various agents and employees, from enforcing Chapter 18, Article XVI §§18-913 and 18-914 of the Miami Beach Code against Plaintiff and its owners, officers, directors, managers, employees and performers, and against all other similarly situated businesses;

D.      That this Court award Plaintiff its recoverable costs recoverable costs, including reasonable attorney's fees pursuant to 42 U.S.C. §1988; and

E.      That this Court award Plaintiff all other relief in law and in equity to which it may be entitled.

## COUNT XV

### (Human Trafficking Ordinance - §18-914 Imposes an Unconstitutional Tax on Speech)

192.    Plaintiff realleges each and every allegation in paragraphs 1 through 29 and 63 through 83 of this Complaint and incorporates them herein by reference.

193.    This is an action for declaratory relief pursuant to 28 U.S.C. §2201.

194.    Plaintiff is uncertain as to its rights and remedies under Chapter 18, Article XVI of the City of Miami Beach Code, as it has been applied to Plaintiff in violation of the First Amendment to the Constitution of the United States.

195.    Chapter 18, Article XVI, §18-914 effectively imposes a tax on Plaintiff because of the content of the Plaintiff's speech. That tax takes the form of economic hurdles not faced by other businesses and in additional taxes Plaintiff is forced to pay on wages as explained below.

196.    In particular, the restrictions on compensation of employees and contractors prevent Plaintiff from taking advantage of tax and economic benefits that are otherwise available under Federal law and IRS regulations.

197.    Plaintiff's performers receive *all* of their income in the form of fees and tips paid by customers.

198.    Plaintiff's deejays and security staff also receive tip income from performers who participate in a "tip pool" arrangement authorized by 29 U.S.C. § 203(m).

199.    Chapter 18, Article XVI, §18-914 purports to require that all compensation received by employees and performers be paid directly from the nude dancing establishment to the individual. The Ordinance specifically forbids any payments made by or through any third party:

Sec. 18-914. - Compensation for workers and performers.

(1)    Provide direct monetary or non-monetary compensation to any worker or performer at a nude dance establishment, and shall maintain documentary proof acknowledging that the monetary or non-monetary compensation was directly received by the worker or performer..... The nude dance establishment shall not compensate

any worker or performer through a third-party intermediary or business entity.

200.    On its face, the Ordinance prohibits direct tipping of employees and performers by Plaintiff's patrons and exposes Plaintiff to startlingly high fines and the potential loss of its business if Plaintiff were to maintain its current form of tipping.

201.    The ban on compensation from patrons prevents bartenders, deejays and performers from receiving tips and, because they cannot receive tips, Plaintiff cannot take advantage of the reduced minimum wage for tipped employees to which it is otherwise entitled under the Fair Labor Standards Act (FLSA).

202.    The ban on "tip pooling" by performers who otherwise might choose to pay tips to deejays and security staff prevents a business arrangement specifically authorized by the FLSA and prevents  Plaintiff from taking advantage of the reduced minimum wage for tipped employees to which it is otherwise entitled under the FLSA.

203.    Section 18-914(1) directly prohibits what Federal law specifically allows: the payment of tips to employees and contractors in a fashion which allows the employer to take advantage of the reduced minimum wage provisions of the FLSA.

204.    In addition to forcing Plaintiff to pay higher wages, §18-914(1) effectively requires Plaintiff to pay taxes and make Federal withholdings on those involuntary wages in excess of the reduced minimum wage – a tax burden not placed on any other citizen.

205.    The economic burdens placed on Plaintiff's speech activities *as a consequence of speaking* directly chills that speech and makes the cost of speech more expensive than is the case for businesses not providing exotic dancer entertainment.

WHEREFORE, Plaintiff prays for the following relief:

A.      That this Court take jurisdiction over the parties and this cause.

B.      That this Court enter a judgment declaring that Chapter 18, Article XVI, §18-914(1) of the City of Miami Beach Code of Ordinances violates the First Amendment because it effectively imposes a tax on speech and otherwise burdens speech because of the content of the communications and the identity of the speaker.

C.      That this Court enter a permanent injunction forever enjoining the City and its various agents and employees, from enforcing Chapter 18, Article XVI, §18-914(1) of the City of Miami Beach Code of Ordinances against Plaintiff and its owners, officers, directors, managers, employees and performers, and against all other similarly situated businesses;

D.      That this court award Plaintiff its recoverable costs recoverable costs, including reasonable attorney's fees pursuant to 42 U.S.C. §1988; and

E.      That this Court award Plaintiff all other relief in law and in equity to which it may be entitled.

## COUNT IX

**(Human Trafficking Ordinance - Equal Protection Claims – Class of One)**

206.    Plaintiff realleges each and every allegation in paragraphs 1 through 29 and 63 through 83 of this Complaint and incorporates them herein by reference.

207.    This is an action for declaratory relief pursuant to 28 U.S.C. §2201.

208.    Plaintiff is uncertain as to its rights and remedies under Chapter 18, Article XVI of the City of Miami Beach Code, as it has been applied to Plaintiff in violation of the

Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States.

209.    The City singled out Plaintiff for a unique and targeted regulation that affects no other citizen within the City.

210.    As more particularly described above, during the enactment Article XVI the City singled out Plaintiff's business for particular condemnation and announced its intention to utilize the Ordinances as a means of putting Plaintiff out of business.

211.    As more particularly described above, the City has long persecuted the Plaintiff and treated it differently than other businesses in the jurisdiction because of the City's objection to the form of entertainment offered by the Plaintiff, its desire to censor speech associated with sexuality and eroticism, and its animosity towards Plaintiff's principal.

212.    The City enacted Article XVI to retaliate against Plaintiff for filing its previous Federal lawsuits.

213.    As more particularly described above, the City established the penalty provisions of Article XVI with the specific and stated purpose of providing a means of fining Plaintiff out of business.

214.    Furthermore, the penalties imposed by §18-915 are extravagant and unique in that they exceed those fines and remedies imposed by any other provision of the City Code, as well as those civil fines imposed by the Florida Legislature for violation of similar laws.

215.    There is no justification to treat Plaintiff differently from all other businesses employing minors, or immigrants, or providing entertainment for patrons. This is particularly true where the State of Florida has studied the problem of human trafficking and enacted statutes of general application that require posting of signs at a variety of locations, including airports, train stations and hospitals.

216.    The City has intentionally treated the Plaintiff differently from others similarly situated and there is no rational basis for the difference in treatment.

217.    The City has infringed upon Plaintiff's constitutional rights to speak freely and to access the Courts for redress of its grievances.

218.    This Court should employ heightened scrutiny to conclude that there is no compelling reason to treat Plaintiff differently from all other citizens in the community.

219.    The City favored all other citizens over Plaintiff for impermissible and bad faith reasons having no rational relation to any public purpose or public benefit. The only differences between the Plaintiff's business and similarly situated businesses are the City's objections to Plaintiff's exotic dance entertainment, the Plaintiff's prior efforts to seek relief through the Courts, and the City's animosity towards Plaintiff's principal.

220.    The City has treated Plaintiff differently for an invidious purpose and with the specific intent of discriminating against Plaintiff and denying its rights, including an excessive penalty, only applicable to this particular citizen.

221.    Plaintiff has a right to have this Court declare its rights under the Fourteenth Amendment as those rights are restricted and infringed by the targeted legislation and

extraordinary penalties found in Article XVI and for the retaliatory and content-based reasons for enacting that legislation.

WHEREFORE Plaintiff prays for the following relief:

A.     That this Court take jurisdiction over the parties in this cause.

B.     That this Court declare that Chapter 18, Article XVI was enacted for a discriminatory and retaliatory purpose to specially punish the Plaintiff in violation of Plaintiff's Equal Protection rights as guaranteed by the Fourteenth Amendment to the United States Constitution.

C.     That this Court declare that Chapter 18, Article XVI was intended to and has actually created a class of one which unfairly and unreasonably discriminates against Plaintiff for impermissible, content-based reasons in violation of Plaintiff's Equal Protection rights as guaranteed by the Fourteenth Amendment to the United States Constitution.

D.     That this Court declare that the penalty provisions of Chapter 18, Article XVI found in §18-915 single out Plaintiff for civil fines that exceed those found for similar violations of any other provision of the City Code, as well as those civil fines imposed by the Florida Legislature for violation of similar laws.

E.     That this Court issue an Order enjoining the City from violating Plaintiff's Equal Protection rights as guaranteed by the Fourteenth Amendment by prohibiting the enforcement of Article XVI against the Plaintiff and, in particular, the penalty provisions thereof.

F.      That this Court award Plaintiff its recoverable costs, including a reasonable attorney's fee pursuant to 42 U.S.C. § 1988; and

G.      That this Court award Plaintiff all other relief in law and in equity to which it may be entitled.

## COUNT X
## <u>Various Provisions of Chapter 18, Article XVI are Unconstitutionally Vague</u>

222.    Plaintiff realleges each and every allegation in paragraphs 1 through 29 and 63 through 83 of this Complaint and incorporates them herein by reference.

223.    This is an action for declaratory relief pursuant to 28 U.S.C. §2201.

224.    Plaintiff is uncertain as to its rights and remedies under Chapter 18, Article XVI of the City of Miami Beach Code, as certain of the codified provisions are so vague as to subject Plaintiff to arbitrary enforcement action in violation of the First Amendment and the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States.

225.    Plaintiff is uncertain how to comply with certain provisions of Chapter 18, Article XVI and is subject to arbitrary enforcement of those provisions as individual administrators likely cannot determine how the Ordinances are to be construed and applied.

226.    If Plaintiff makes even a slight mistake in attempting to comply with the ambiguous provisions Chapter 18, Article XVI, Plaintiff will be subject to enormous fines and the loss of its business for a significant period of time.

227.    Those vague provisions found in Chapter 18, Article XVI include the following:

A.       Section 18-913(1) requires Plaintiff to obtain proof of age and citizenship through "proof of an original, *lawfully issued* state or federal photo identification". (emphasis added). While Plaintiff readily understands what forms of identification may be considered "state or federal identification", Plaintiff is uncertain what constitutes a "lawfully issued" identification. The term is undefined in the Miami Beach Code or under Florida law. Moreover, Plaintiff has no means of ascertaining whether an ID was lawfully issued or not.

B.       Section 18-913(1) requires Plaintiff to obtain proof of age and citizenship through "one additional form of identification that confirms" that a worker is over the age of 18 and a U.S. citizen. The Ordinance does not provide a description or list of acceptable IDs which would constitute "additional form[s] of identification". The vagueness in the Ordinance permits the City's inspectors to accept or reject "additional forms" in their unfettered discretion.   For instance, it is unclear whether the additional forms of "additional form[s] of identification" are restricted to government-issued IDs or could include private forms of identification or documentation such as a credit card or sworn affidavit.

C.       Section 18-913(2) requires Plaintiff to "[c]onfirm that the person is working or performing of his or her own accord and is not being forced or intimidated into working or performing at the nude dance establishment." The Ordinance does not include any standards for determining whether a person is "working on their own accord" or is being "forced or intimidated into working" and does not specify how one would go about verifying that status. For instance, the Ordinance is unclear whether a business is merely

required to ask the worker whether he or she is being employed on their own volition or whether an investigation of some kind is anticipated. The City's enforcement officials are provided no guidance for determining whether a performer is working voluntarily or whether the business' documentation of that assent is sufficient.

      D.     The vagueness inherent in §§18-913(1) and (2) is exacerbated by their link to §18-913(1)(4) which requires additional documentation of an uncertain nature. Section 18-913(1)(4) reads as follows:

> (4)     Verify the accuracy of those documents required in subsection (1) and (2) by preparing and retaining a sworn statement from the owner or manager of the nude dance establishment confirming that the individual performer is at least 18 years of age, is performing of her or his own accord, and is not being forced or intimidated into performing or working…

That section is unconstitutionally vague in the following respects:

      (1)     As previously noted, §18-913(1) includes both a requirement for government-issued identification and a requirement that such identification be "lawfully issued". That ambiguity is complicated by the further statement that the business must "verify the accuracy of those documents". It is unclear whether that requirement is met by having the owner or manager state under oath that they reviewed the documents or whether some sort of independent investigation is required.

      (2)     As previously noted, §18-913(2) requires Plaintiff to ascertain whether a performer is being coerced or is working on his or her own accord, without providing any standards as to how to make such an evaluation. Section 18-913(1)(4) exacerbates that problem by requiring the owner or manager to verify under oath that the performer is not being coerced. While the owner or manager can certainly verify that they

are not forcing a dancer to perform, the owner or manager are unlikely to have any personal knowledge of those facts beyond their own actions; requiring attestation without personal knowledge is arbitrary and furthers no valid government interest.

E.     The vagueness accompanying the requirement that documents be "verified" is found again in §18-913(5)(c) which requires an owner or manager to "confirm[] that the identifications referenced in subsection (1) were inspected *and verified*. (emphasis added). Again, the Ordinance provides no guidance as to how a manager or owner would go about "verifying" the proffered identification.

F.     The problem with "verification" is not merely one of recordkeeping because the requirement also imposes an actual prior restraint on a dancer's ability to perform and on the Plaintiff's ability to offer exotic entertainment. That restraint is found in §18-913(5) which prohibits anyone from entering or performing at an adult club until that person's documents have been "verified" – a completely undefined term:

> No person shall be allowed to enter or perform at the nude dance establishment or who has not been presently verified consistent with those provisions identified within subsections 18-913(1) through (5).

G.     The forgoing provision in §18-913(5) is vague in one additional respect. The rest of §18-913(5) refers to the individuals from who identification is required as a "worker or performer". However, §18-913(5) states that "no *person* shall be allowed to enter… at the nude dance establishment who has not been presently verified…". (emphasis added). The general rule of construction is that unique language in a code provision that differs from the language used elsewhere in the law, is intended to have a unique meaning. Here, Plaintiff is unsure whether it must obtain and verify two forms of ID from *every*

"person" who enters the business – including patrons - or whether that requirement is limited only to "workers or performers".

     H.     Section 18-915(c)(1)b[1] states that the city manager "may" revoke business licenses "for a period not to exceed one year". However, Article XVI includes no standards or guidelines to govern when a city manager should exercise his discretion to revoke a license, when he should refrain from punishing a business, and how long the revocation should last (other than the requirement that it last no longer than a year). No other provision of the Miami Beach Code provides standards to limit that unfettered discretion.

     228.     The vague provisions, collectively and individually, and the opportunity for arbitrary enforcement of Chapter 18, Article XVI, violate the First Amendment and the due process protections of the Fourteenth Amendments.

     229.     The vague provisions of Chapter 18, Article XVI are so intertwined with the rest of the Ordinance, and with the City's regulatory scheme, that severance is not possible.

     WHEREFORE, Plaintiff prays for the following relief:

     A.     That this Court take jurisdiction over the parties and this cause;

     B.     That this Court enter a judgment declaring Chapter 18, Article XVI to be unconstitutional, in whole or in part, as the codified Ordinances are unconstitutionally vague;

---

[1] There are two sections (c)s in §81-915. In this case, Plaintiff's allegations are directed to the second section (c) entitled "enhanced penalties".

C.      That this Court enter a permanent injunction forever enjoining the City and its various agents and employees, from enforcing Chapter 18, Article XVI, in whole or in part, against Plaintiff and its owners, officers, directors, managers, employees and performers, and against any other similarly situated businesses;

D.      That this court award Plaintiff its recoverable costs recoverable costs, including reasonable attorney's fees pursuant to 42 U.S.C. §1988; and

E.      That this Court award Plaintiff all other relief in law and in equity to which it may be entitled.

## COUNT XI

### (Human Trafficking Ordinance - Violation of the Contract Clause)

230.    Plaintiff realleges each and every allegation in paragraphs 1 through 29 and 63 through 83 of this Complaint and incorporates them herein by reference.

231.    This is an action for declaratory relief pursuant to 28 U.S.C. §2201.

232.    Plaintiff is uncertain as to its rights and remedies under Chapter 18, Article XVI, §18-914 of the City of Miami Beach Code, as it has been applied to Plaintiff in violation of the Contract Clause of the United States Constitution (Art. I, §10, cl. 1).

233.    Plaintiff has existing contracts with its employees and independent contractors that control how those employees and contractors are to be compensated. In general those individuals fall into one of three categories:

A.      Employees such as managers, bartenders and security staff. These employees are paid a salary or hourly compensation, as the case may be, directly from the Plaintiff. Records of these payments are kept by the Plaintiff in accordance with IRS

requirements. These contractual relationships are generally oral and at-will as permitted under Florida law.

      B.    <u>Dance Performers</u>. These individuals typically operate under written independent contractor agreements and are treated as independent contractors ("licensees") by the Plaintiff. Performers pay the Plaintiff for the opportunity to perform at Plaintiff's club. The performers receive their compensation exclusively from patrons of the club in the form of dance fees or tips. Private dance fees are mediated through the Plaintiff by the way of tickets or club scrip; the Plaintiff receives the money paid by the patrons and credits the performer for the performer's portion of the payment per the parties' independent contract. Tips paid by the patrons are received directly by the performers and the Plaintiff does not control or derive any income from such payments. In addition, Plaintiff does not record the tips paid by the patrons; instead the performers self-report tip income to the club.

      C.    <u>Deejays</u>. These individuals operate under written independent contractor agreements and are treated as independent contractors by the Plaintiff. Deejays receive their income through payments made by the performers and from tips paid by patrons of the business. The Plaintiff does not control or derive any income from the payments made by the performers or the tips paid by patrons. In addition, the Plaintiff does not record the payments or tips; instead the deejays self-report income to the club.

      234.    Of the various categories of employees and independent contractors, Plaintiff fully controls only the payment and record-keeping of its employees and does not control all aspects of the cash flow or record-keeping with respect to its independent contractors (performers and deejays).

235.    The manner in which Plaintiff has contracted to secure payment for its independent contractors – specifically the source and handling of compensation – is a material, and in fact a key, feature of the contracts with Plaintiff's employees and independent contractors.

236.    The adult entertainment industry is highly competitive and performers and deejays can readily contract with our businesses if their contractual rights are not honored by a club or the method of compensation of a particular business differs from industry norms.

237.    The contractual arrangements by which Plaintiffs pays its employees and independent contractors, or secures their compensation through patrons, has been in place for decades and is typical of the contractual arrangements found in the exotic entertainment industry.

238.    Plaintiff's contractual arrangements with its current employees, performers and deejays are of long-standing duration; most of those contracts pre-date the enactment of §18-914 of the City of Miami Beach Code.

239.    Section 18-914 of the Miami Beach Code purports to govern certain aspects of Plaintiff's contracts with its employees and independent contractors. In particular, the Ordinance requires that all compensation be paid directly to an employee or contractor and further requires that the business create and maintain records of all such payments. The relevant language of the Ordinance is as follows:

Sec. 18-914. - Compensation for workers and performers.

A nude dance establishment, as defined in section 142-127 of the city Code, and as such section may be amended from time to time, must:

(1) Provide direct monetary or non-monetary compensation to any worker or performer at a nude dance establishment, and shall maintain documentary proof acknowledging that the monetary or non-monetary compensation was directly received by the worker or performer. The documentation must identify the performer or worker receiving the compensation, and will acknowledge that no other individual, person, or entity was entitled to, or received the compensation on behalf of the worker or performer. The nude dance establishment shall not compensate any worker or performer through a third-party intermediary or business entity.

(a) A nude dance establishment shall maintain these compensation records for performers and workers, and the city shall have a right to request and inspect the records for any and all workers or performers at a nude dance establishment.

240.    The provisions of §18-914 directly and substantially impair Plaintiff's existing and pre-existing contracts with its independent contractors (performers and deejays) because they change the payment arrangements and record-keeping responsibilities of the various parties. In particular, the Ordinance prohibits the indirect payment of performers and deejays called for under the parties' contracts and would shift the burden of record-keeping from those contractors to the Plaintiff.

241.    The provisions of §18-914 negatively and substantially affect Plaintiff's contractual rights in the following respects:

A.    They expose the Plaintiff to litigation from its independent contractors for breach of their independent contractor agreements.

B.    They put Plaintiff at a competitive disadvantage with respect to attracting and retaining performers and deejays as those contractors will refuse to perform services

at a business that operates outside of industry practices and does not afford those

contractors control over their income offered by other exotic entertainment establishments.

C.      It burdens the Plaintiff with logistical and record-keeping requirements that

it currently delegates to others under its independent contractor agreements.

242.    There is no substantial public interest served by §18-914. Plaintiff's

obligation to ensure that its employees and contractors are properly compensated is already

secured by a web of state and Federal regulations, including minimum wage laws,

unemployment compensation, and worker's compensation. Moreover, the Internal

Revenue Code already imposes significant record-keeping and reporting requirements on

the Plaintiff, its employees, and its independent contractors (in terms of tip reporting,

W-2s, 1099s, and individual tax returns). Moreover, Plaintiff's employees and independent

contractors can take action on their own behalf if Plaintiff does not properly perform under

its contracts, including the terms for compensation provided for in those contracts.

243.    Plaintiff's existing record-keeping practices, and the allocation of certain

record-keeping requirements to its employees and/or independent contractors, is consistent

with Florida and Federal laws.

244.    The City of Miami Beach does not actually "do" anything with the records

it requires the Plaintiff to maintain. That is, the City does not evaluate whether employees

and contractors have received the correct compensation; it has no standards, practices or

guidelines to measure whether the compensation is correct; it does not punish the business

if the compensation paid to the employees and contractors is not proper (without providing

any standards to determine propriety), and it does not enforce the contracts for the benefit

of the employees and contractors. Rather, Plaintiff must keep the records solely for the purpose of keeping records.

245.    The City of Miami Beach does not regulate the manner in which compensation is paid by other businesses, trades or industries, nor does it impose record-keeping requirements of the kind found in §18-914 with respect to any other business, trade or industry.

246.    As the only nude dancing establishment in the City of Miami Beach, Plaintiff is literally the only citizen affected by this law and the only citizen whose contractual rights have been impaired in this fashion.

247.    The adjustment of rights and responsibilities imposed on the contracting parties by §18-914 are unreasonable and not of an appropriate nature. The impairment of the Plaintiff's contractual rights is substantial while there is no valid public interest served by the City's Ordinance. The fact that §18-914 affects only the Plaintiff and its employees and independent contractors (because it is the only regulated business in the community) further illustrates the complete disconnect between individual impairment and the advancement of any cognizable government purpose.

248.    Plaintiff has a right to have this Court declare its rights under the Contract Clause of the United States Constitution (Art. I, §10, cl. 1).

WHEREFORE Plaintiff prays for the following relief:

A.      That this Court take jurisdiction over the parties in this cause.

B.      That this Court declare that Chapter 18, Article XVI, §18-914 of the City of Miami Beach Code because it substantially impairs Plaintiff's existing and pre-existing

contract rights in an unreasonable and inappropriate manner without advancing a substantial government interest.

C.     That this Court issue an Order enjoining the City and its various agents and employees, from enforcing Chapter 18, Article XVI §18-914 of the Miami Beach Code against Plaintiff and its owners, officers, directors, managers, employees and performers, and against all other similarly situated businesses;

D.     That this court award Plaintiff its recoverable costs recoverable costs, including reasonable attorney's fees pursuant to 42 U.S.C. §1988; and

E.     That this Court award Plaintiff all other relief in law and in equity to which it may be entitled.

## <u>COUNT XII</u>

### (The Penalty Provisions of Article XVI Violate the Eighth Amendment)

249.     Plaintiff realleges each and every allegation in paragraphs 1 through 29 and 63 through 83 of this Complaint and incorporates them herein by reference.

250.     This is an action for declaratory relief pursuant to 28 U.S.C. §2201.

251.     Plaintiff is uncertain as to its rights and remedies under Chapter 18, Article XVI of the City of Miami Beach Code, as it has been applied to Plaintiff in violation of the Eighth Amendment to the United States Constitution.

252.     The Eighth Amendment prohibits, *inter alia*, the imposition of "excessive fines".

253.     The penalties for violation of Article XVI of the City of Miami Beach state that they are exclusively civil in nature: they consist of the imposition of civil fines and the

suspension or revocation of the citizen's business tax receipt and certificate of use (the latter penalties being referred to as "enhanced penalties").

254.     The provisions for civil fines are set forth in §18-915(a):

(a)     *Civil fine for violators.* The following civil fines must be imposed for a violation of sections 18-913 and 18-914:

(1)     First offense within a 12-month period must be a fine of $5,000.00;

(2)     Second offense within a three-year period must be a fine of $10,000.00;

(3)     Third offense and subsequent offenses within a five-year period must be a fine of $20,000.00.

255.     The provisions for the revocation of licenses required in order to business are set forth in §18-915(c):[2]

(c)     *Enhanced penalties.* The following enhanced penalties must be imposed,   in addition to any mandatory fines set forth in section 18-915 above, for violations of sections 18-913 or 18-914:

(1)     *Enhanced penalties for this section:*

a.     If the offense is a second offense within the preceding three-year period of time, in addition to the fine set forth in subsection 18-915(a), the property owner, company or business entity must be prohibited from operating the nude dance establishment for a three-month period of time.

b.     If the offense is a third offense, in addition to any fine set forth in subsection 18-915(a), the property owner, company or business entity must be deemed a habitual offender, and the city manager may revoke the business tax receipt or the certificate of use issued to such person, company or business

---

[2] The codified ordinance appears to have two subsections (c). This is surely a codification error. The subsection (c) addressed in this count is the second subsection (c) and was likely intended to be designated as subsection (d).

> entity that have been deemed habitual offenders pursuant to
> this section for a period not to exceed one year.

256.    While nominally imposing only a civil fine, the fines imposed by §18-915(a) are clearly punitive in nature as they are not intended or utilized for the purpose of restitution or compensation.

257.    The fines imposed by the City dramatically exceed those fines established by the State of Florida for non-criminal offenses: §775.083(e), Florida Statutes, limits fines for non-criminal violations to $500.00.

258.    The Florida Legislature has enacted a statute intended to combat human trafficking that is analogous to the City's Article XVI. In particular, Florida requires adult businesses (and a number of other industries) to post signs intended to educate citizens and deter traffickers. *See, generally*, §787.29, Fla.Stat.

259.    The penalty for violation of §787.29, is noncriminal in nature and is limited to a civil fine:

> (5)    … A violation of subsection (3) is a noncriminal violation and
> punishable by a fine only as provided in s. 775.083.

As previously noted, the maximum penalty that can be imposed under §775.083 for a non-criminal violation is $500.00.

260.    The substantive provisions of §18-913 and §18-914 primarily impose record-keeping requirements with respect to the identity of performers and their compensation. Even the provisions mandating the direct payment of compensation to employees and contractors regulates only the physical delivery of that compensation and

does not actually require payment of compensation or provide a remedy if compensation is inadequate.

261.    Any violation of §18-913 and §18-914 amounts to a technical breech of record-keeping with no consequence beyond the fact that a record was not made or retained as required by the Code. In particular, a violation of §18-913 and §18-914 does not mean that an underage dancer was allowed to perform, that an individual was the victim of human trafficking, that an undocumented worker was hired, or that a worker was not paid a fair wage.

262.    The challenged Ordinances essentially created a paperwork requirement that serves no valid government interest, but then imposes a draconian fine and the potential loss of one's livelihood for violation of the record-keeping laws.

263.    The monetary fines provided by §18-915(a) dramatically exceed the fines assessed for comparable violations by other businesses under any other provision of the Miami Beach Code of Ordinances.

264.    The monetary fines provided by §18-915(a) are inherently arbitrary, as the City Commission, by its own admission, selected those amounts only because they were punitive enough to serve as a basis for closing down the Plaintiff's business. Indeed, Commissioner Ed Tobin attempted to set the fines an order of magnitude higher:

    "I think we can all agree that we can multiply those fines by ten for each of
    them. What do you think. $25,000 for the first offense…?"

265.    The penalty imposed by §18-915(a) is completely disproportionate to the technical violation of a record-keeping law that itself serves no substantial government

purpose.

266.    Section 18-915(a) imposes an excessive and unreasonable fine in violation of the Eighth Amendment to the United States Constitution.

267.    The "enhanced penalties" provided by §18-915(c) require the mandatory closure of a business through suspension or revocation of its business licenses (BTR and CO) on a strict liability basis, for any violation of the Code, no matter how small. Thus, a failure to record a single performer on a single day is treated as harshly as a failure to maintain any records at all. Forfeiture of a citizen's right to do business is an unreasonable penalty for the failure to collect and maintain unnecessary paperwork that advances no valid government interest.

268.    The penalty imposed by §18-915(c) is completely disproportionate to the technical violation of a record-keeping law that itself serves no valid government purpose.

269.    Section 18-915(c) imposes an excessive penalty in violation of the Eighth Amendment to the United States Constitution.

WHEREFORE, Plaintiff prays for the following relief:

A.    That this Court take jurisdiction over the parties and this cause.

B.    That this Court enter a judgment declaring that Chapter 18, Article XVI, §18-915(a) of the City of Miami Beach Code of Ordinances imposes an excessive fine in violation of the Eighth Amendment to the United States Constitution.

B.    That this Court enter a judgment declaring that Chapter 18, Article XVI, 18-915(c) of the City of Miami Beach Code of Ordinances imposes an excessive penalty in violation of the Eighth Amendment to the United States Constitution.

C.     That this Court enter a permanent injunction forever enjoining the City and its various agents and employees, from enforcing Chapter 18, Article XVI, §§18-915(a) and  18-915(c) of the City of Miami Beach Code of Ordinances against Plaintiff and its owners, officers, directors, managers, employees and performers, and against any other similarly situated businesses;

D.     That this court award Plaintiff its recoverable costs recoverable costs, including reasonable attorney's fees pursuant to 42 U.S.C. §1988; and

E.     That this Court award Plaintiff all other relief in law and in equity to which it may be entitled.

## COUNT XIII

### (Section 18-913(1)(b) is Preempted by Federal Law - 8 U.S.C. §§ 1324a–1324b)

270.    Plaintiff realleges each and every allegation in paragraphs 1 through 29 and 63 through 83 of this Complaint and incorporates them herein by reference.

271.    This is an action for declaratory relief pursuant to 28 U.S.C. §2201.

272.    This Court has "Federal Question" jurisdiction to consider whether a local ordinance violates the Supremacy Clause of the United States Constitution (Article 6, cl. 2) because the regulation has been preempted by Federal law.

273.    Chapter 18, Article XVI, §18-913(1)(b) requires Plaintiff to ensure that persons working at its establishment are U.S. citizens or are aliens lawfully admitted to the U.S. with the right to work. Plaintiff is subject to substantial monetary penalties and the potential loss of its right to do business if it does not comply with the Ordinance.

274.    That regulatory scheme is accomplished as follows:

A.      §18-913(1)(b) requires that all nude dance establishments obtain proof of

citizenship or status as a lawful residents from all persons working at the business:

> Sec. 18-913. - Proof of identification for workers and performers, and shift
> logs required.
>
>      All nude dance establishments as defined in section 142-1271 of the
> city Code, and as such section may be amended from time to time, must:
>
>> (1)      Require any worker or performer entering the nude dance
>> establishment to provide proof of an original, lawfully issued state
>> or federal photo identification, and one additional form of
>> identification that confirms he or she is:
>> ….
>>
>>> (b)      Is either a U.S. Citizen, legal resident, or otherwise
>>> legally permitted to be employed within the United
>>> States of America.

B.      The Ordinance imposes monetary penalties as well as the loss of business

licenses if a business fails to obtain and retain these records. *See*, §18-915(a), City of Miami

Code ("The following civil fines must be imposed for a violation of sections 18-913…");

and §18-915(c), City of Miami Code ("The following enhanced penalties must be imposed,

in addition to any mandatory fines set forth in section 18-915 above, for violations of

sections 18-913….").

C.      As a consequence, an individual who lacks the required documentation

cannot work at Plaintiff's business because Plaintiff would be subject to significant

penalties if it does not obtain the required citizenship / residency documents.

D.      The Ordinance precludes an undocumented foreign national from working

at Plaintiff's establishment. Parenthetically, even a U.S. citizen could not necessarily work

at Plaintiff's establishment unless that citizen possessed and produced whatever "proof" of

U.S. citizenship the City deems acceptable[3] - a passport would presumably qualify, but other forms of "state or federal photo identification" do not typically indicate an individual's citizenship.

275.    The Ordinance, as written, specifically applies to "performers" in Plaintiff's business, all of whom are engaged as independent contractors.

276.    The Ordinance infringe upon Federal law and conflicts with Federal immigration policy by regulating the employment of foreign nationals and the records required for such individual to be employed in the United States.

277.    Section 18-913(1)(b) is preempted by Federal law in two respects:

A.    <u>Express Preemption</u>.    The Ordinance imposes a substantial civil fine for employing undocumented foreign nationals. However, 8 U.S.C. §1324a(h)(2) expressly preempts states from imposing "civil or criminal sanctions" on those who employ undocumented foreign nationals:

(2)    Preemption

The provisions of this section preempt any State or local law imposing civil or criminal sanctions (other than through licensing and similar laws) upon those who employ, or recruit or refer for a fee for employment, unauthorized aliens.

Under this provision, a local government may provide for the forfeiture of a business license as a consequence for allowing an undocumented worked to perform services, but may not impose a monetary fine.  Section 18-913(1)(b) therefore conflicts with those

---

[3]   The City does not indicate whether it would accept a short-form birth certificate or whether a performer would have to produce the long-form version as President Obama did.

express limitations and is therefore void under the doctrine of express preemption.

B.     Conflict Preemption. The Immigration Reform and Control Act of 1986 (codified at 8 U.S.C. §§ 1324a–1324b) (IRCA) limits its regulation of undocumented foreign workers to those individuals who are *employed* by a U.S. employer. *See*, 8 U.S.C. §1324a(a)(1)(A) ("It is unlawful for a person or other entity … to hire, or to recruit or refer for a fee, for employment in the United States an alien knowing the alien is an unauthorized alien … with respect to such employment…"). Congress deliberately excluded independent contractors and other non-employees from the scope of the restrictions contained in the statute. The Miami Beach Code of Ordinances conflicts with, and is impliedly preempted by, the IRCA because §18-913(1)(b) includes both employees and independent contractors within its scope: "All nude dance establishments … must: … [r]equire any worker or *performer* entering the nude dance establishment…" (emphasis added). Accordingly, §18-913 is void under the doctrine of implied or conflict preemption. *See, generally*, Lozano v. City of Hazleton, 724 F.3d 297, 306 (3d Cir. 2013).

WHEREFORE, Plaintiff prays for the following relief:

A.     That this Court take jurisdiction over the parties and this cause;

B.     That this Court enter a judgment declaring that Chapter 18, Article XVI, 18-913(1)(b) of the City of Miami Beach Code of Ordinances is expressly preempted by 8 U.S.C. §1324a(h)(2) and is therefore void pursuant to the Supremacy Clause;

C.     That this Court enter a judgment declaring that Chapter 18, Article XVI, 18-913(1)(b) of the City of Miami Beach Code of Ordinances is impliedly preempted under the doctrine of conflict preemption because it regulates the treatment of foreign nationals

who are independent contractors in contravention to 8 U.S.C. §1324a(a)(1)(A) and the other provisions of the IRCA;

      D.     That this Court enter a permanent injunction forever enjoining the City and its various agents and employees, from enforcing Chapter 18, Article XVI, 18-913(1)(b) of the City of Miami Beach Code of Ordinances against Plaintiff and its owners, officers, directors, managers, employees and performers, and against any other similarly situated businesses;

      E.     That this court award Plaintiff its recoverable costs and

      F.     That this Court award Plaintiff all other relief in law and in equity to which it may be entitled.

## COUNT XIV

### (Section 18-911(1) is Preempted by Federal Law - 29 U.S.C. §201, *et seq.*)

278.    Plaintiff realleges each and every allegation in paragraphs 1 through 29 and 63 through 83 of this Complaint and incorporates them herein by reference.

279.    This is an action for declaratory relief pursuant to 28 U.S.C. §2201.

280.    This Court has "Federal Question" jurisdiction to consider whether a local ordinance violates the Supremacy Clause of the United States Constitution (Article 6, cl. 2) because the regulation has been preempted by Federal law.

281.    Congress has partially preempted the field of wages through enactment of 29 U.S.C. §201, *et seq.* (the Fair Labor Standards Act ("FLSA").[4] The FLSA sets a

---

[4] The FLSA permits a state or local government to enact a minimum wage higher than that set by Federal law, but not lower. *See*, 29 U.S.C. §218(a).

minimum wage for all employees in the United States, but also allows employers to pay a "reduced minimum wage" when employees receive tips from customers. The definition of a "tipped employee" is set forth in §203(t) of the FLSA and the authority to pay a reduced minimum wage is set forth in §203(m) of the FLSA.

282.    Plaintiff's bartenders, deejays and performers regularly receive tips from the club's patron; that business model is typical of the industry. Plaintiff's performers receive *all* of their income in the form of fees and tips paid by patrons.

283.    Plaintiff's deejays and security staff also receive tip income from performers who participate in a "tip pool" arrangement authorized by 29 U.S.C. § 203(m). The Federal law authorizes tip pools only among "employees who customarily and regularly receive tips."

284.    Chapter 18, Article XVI, §18-914 purports to require that all compensation received by employees and performers be paid directly from the nude dancing establishment to the individual. The Ordinance specifically forbids any payments made by or through any third party:

Sec. 18-914. - Compensation for workers and performers.

(1)    Provide direct monetary or non-monetary compensation to any worker or performer at a nude dance establishment, and shall maintain documentary proof acknowledging that the monetary or non-monetary compensation was directly received by the worker or performer..... The nude dance establishment shall not compensate any worker or performer through a third-party intermediary or business entity.

285. On its face, the Ordinance prohibits direct tipping of employees and performers by Plaintiff's patrons and thereby exposes Plaintiff to startlingly high fines and the potential loss of its business if Plaintiff allowed such tipping.

286. The ban on compensation from patrons prevents bartenders, deejays and performers from receiving tips; because they cannot receive tips, Plaintiff cannot take advantage of the reduced minimum wage for tipped employees to which it is otherwise entitled under the FLSA.

287. The ban on "tip pooling" by performers who otherwise might choose to pay tips to deejays and security staff prevents a business arrangement specifically authorized by the FLSA and prevents Plaintiff from taking advantage of the reduced minimum wage for tipped employees to which it is otherwise entitled under the FLSA.

288. Section 18-914(1) directly prohibits what Federal law specifically allows: the payment of tips to employees and contractors in a manner that allows the employer to take advantage of the reduced minimum wage provisions of the FLSA.

289. Section 18-914(1) infringes upon Federal law and conflicts with Federal policy concerning the payment of wages by prohibiting third-party tipping.

WHEREFORE, Plaintiff prays for the following relief:

A. That this Court take jurisdiction over the parties and this cause.

B. That this Court enter a judgment declaring that Chapter 18, Article XVI, §18-914(1) of the City of Miami Beach Code of Ordinances is expressly preempted by 29 U.S.C. §201, *et seq.* ("FLSA") and is therefore void pursuant to the Supremacy Clause.

C.      That this Court enter a permanent injunction forever enjoining the City and its various agents and employees, from enforcing Chapter 18, Article XVI, §18-914(1) of the City of Miami Beach Code of Ordinances against Plaintiff and its owners, officers, directors, managers, employees and performers, and against all other similarly situated businesses;

D.      That this court award Plaintiff its recoverable costs; and

E.      That this Court award Plaintiff all other relief in law and in equity to which it may be entitled.

## COUNT XV

**(The Penalty Provisions of Article XVI are Illegal and Preempted by State Law)**

290.    Plaintiff realleges each and every allegation in paragraphs 1 through 29 and 63 through 83 of this Complaint and incorporates them herein by reference.

291.    This Court has jurisdiction over this state law cause of action because Plaintiff's other claims involve Federal Questions and this Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367.

292.    This is an action under Florida law for declaratory and supplemental relief pursuant to Chapter 86, Florida Statutes.

293.    The penalties for violation of Article XVI of the City of Miami Beach state that they are exclusively civil in nature: they consist of the imposition of civil fines and the suspension or revocation of the citizen's business tax receipt and certificate of use (the latter penalties being referred to as "enhanced penalties").

294.    The provisions for civil fines are set forth in §18-915(a):

    (a)   *Civil fine for violators.* The following civil fines must be imposed for a violation of sections 18-913 and 18-914:

        (1)   First offense within a 12-month period must be a fine of $5,000.00;

        (2)   Second offense within a three-year period must be a fine of $10,000.00;

        (3)   Third offense and subsequent offenses within a five-year period must be a fine of $20,000.00.

295.    While nominally imposing only a civil fine, the fines imposed by §18-915(a) are clearly punitive in nature as they are not intended or utilized for the purpose of restitution or compensation.

296.    The fines imposed by the City dramatically exceed those fines established by the State of Florida for non-criminal offenses: Section §775.083(e) of the Florida Statutes limits fines for non-criminal violations to $500.00.

297.    The Florida Legislature has enacted a statute intended to combat human trafficking that is analogous to Miami Beach's Article XVI. In particular, Florida law requires adult businesses (and a number of other industries) to post signs intended to educate citizens and deter traffickers. *See, generally*, §787.29, <u>Fla.Stat</u>.

298.    The penalty for violation of §787.29, <u>Fla. Stat</u>. is noncriminal in nature and is limited to a civil fine:

    (5)   … A violation of subsection (3) is a noncriminal violation and punishable by a fine only as provided in s. 775.083.

As previously noted, the maximum penalty that can be imposed under §775.083 for a non-criminal violation is $500.00.

299.    The penalty imposed by Article XVI is illegal and unenforceable and violates due process because it exceeds the penalty permitted by state law for the same offense and is preempted by Florida law.

324.    The City of Miami Beach utilizes a special master in lieu of a code enforcement board. *See, generally*, Chap 30, Article I §30-36 of the City of Miami Beach Code; *See, also*, §162.03(2) <u>Fla.Stat</u>. (statute authorizing special masters in lieu of code enforcement boards).

300.    Appeals from a notice of violation of Article XVI are heard by a special master operating under those rules which the City employs for code enforcement proceedings:

 (2)    The procedures for appeal by administrative hearing of the notice of violation shall be as set forth in sections 30-72 and 30-73.

§18-915(c)(2), City of Miami Beach Code.

301.    However, Article XVI §18-915 includes an express restriction on the discretion of the special master in levying an appropriate fine for violation of the Ordinance. In particular, the Ordinance requires the special master to impose the maximum fine set by the Ordinance and prohibits the special master from reducing that penalty under any circumstances:

 (7)    The special master shall not have discretion to alter the penalties prescribed in section 18-915.

§18-915(c)(7), City of Miami Beach Code.

302.    Section 18-915(c)(7) conflicts with state law concerning the discretion of the special master. In particular, §162.09(2)(b), <u>Fla.Stat</u>. contemplates that the fine will be

commensurate with the offense and requires that a special master evaluate a proper fine under specific mandatory criteria:

> (b)      In determining the amount of the fine, if any, the enforcement board *shall* consider the following factors:
>
>> 1.      The gravity of the violation;
>>
>> 2.      Any actions taken by the violator to correct the violation; and
>>
>> 3.      Any previous violations committed by the violator.

(emphasis added).

303.    Florida law does not permit a City to deprive a special master of the discretion to assess a penalty utilizing the mandatory guidelines set forth in §162.09(2)(b), <u>Fla.Stat</u>.

304.    The procedures for imposing penalties under Article XVI is illegal and unenforceable and violates due process because it varies from the express and mandatory provisions of Florida law and is preempted by Florida law.

WHEREFORE, Plaintiffs pray for the following relief:

A.      That this Court take jurisdiction over the parties and this cause;

B.      That this Court enter a judgment declaring that the penalty for violation of Chapter 18, Article XVI violates due process because it is more stringent than the penalty imposed by Florida law;

C.      That this Court enter a judgment declaring that 18-915(c)(7) conflicts with and is preempted by state statute as the Ordinance purports to deprive a Special Master of the mandatory discretion allowed by Florida law;

D.     That this Court enter a permanent injunction forever enjoining the City and its various agents and employees, from enforcing §18-915(a) against Plaintiff and its owners, officers, directors, managers, employees and performers, and against any other similarly situated businesses;

E.     That this court award Plaintiff its recoverable costs; and

F.     That this Court award Plaintiff all other relief in law and in equity to which it may be entitled.

## COUNT XVI

### (Human Trafficking Ordinance - Fourth Amendment Violation – Warrantless Administrative Searches and Seizures)

305.    Plaintiff realleges each and every allegation in paragraphs 1 through 29 and 63 through 83 of this Complaint and incorporates them herein by reference.

306.    This is an action for declaratory relief pursuant to 28 U.S.C. §2201.

307.    Plaintiff is uncertain as to its rights and remedies under Chapter 18, Article XVI, §18-913 of the City of Miami Beach Code, as it has been applied to Plaintiff in violation of the First Amendment to the Constitution of the United States.

308.    Section 18-913 requires a performer to present two forms of identification and requires Plaintiff to copy and log in that information every time the performer enters the premises.

309.    Section 18-913 further requires that Plaintiff allow the City to inspect those records at any time "upon demand":

> The documents referenced in subsections (1) through (5) must be available for inspection by the city upon demand, and the nude dance establishment shall not refuse access to these documents for inspection by the city

310.   The Ordinance allows essentially anyone employed by the City to inspect the records. Section 18-915 assigns the primary responsibility for reviewing those records to the "code compliance division or the Miami Beach Police Department". However, the Ordinance authorizes other employees to enforce the Code as well:

> This shall not preclude other law enforcement agencies or regulatory bodies from any action to assure compliance with this section, and all applicable laws.

311.   There is no requirement under the Ordinance for City employees to obtain a warrant or have probable cause to believe that a violation of the Ordinance has occurred.

312.   Section 18-913 allows the City and its employees the right to conduct a warrantless administrative search and seizure at any time without the business owner's permission.

313.   The warrantless administrative searches and seizures provided by §18-913 are unconstitutional and in violation of the Fourth Amendment. Plaintiff alleges the following particulars:

A.   Plaintiff has a reasonable expectation of privacy in its business records. In addition, Plaintiff's employees and contractors – and particularly its performers – have a vital, constitutionally protected interest in maintaining the privacy of their personal identifier information. The information required by the Ordinance includes the most vital of all such information: date of birth and social security number (the latter needed to prove citizenship).

B.      Plaintiff's business does not operate within a closely-regulated industry. The Supreme Court has recognized only four such industries: liquor sales,[5] firearms dealers, mining and automobile junkyards. *See*, City of Los Angeles, Calif. v. Patel, __ U.S. __, 135 S. Ct. 2443, 2454–55 (2015). The "pornography industry" is not closely regulated. *See*, Free Speech Coal., Inc. v. Attorney Gen. United States, 825 F.3d 149, 169–70 (3d Cir. 2016).

C.      The Ordinance does not afford Plaintiff the opportunity to obtain precompliance review before a neutral decisionmaker.

D.      The administrative search does not take place under a system that provides procedural protections equivalent to those of a warrant. In particular:

(1)      Warrantless inspections are not necessary to further the regulatory scheme; "surprise inspections" are not needed for this Ordinance to operate effectively. The government interest would not be harmed by requiring the City to obtain a warrant as the Plaintiff is not in a position to create contemporaneous records on the spot if it has not been complying with the recordkeeping requirements.

(2)      The Ordinance allows inspections without notice or consent on a 24/7/365 basis with no opportunity to challenge the scope or frequency of the administrative inspections. There is no "certainty and regularity" in the inspection regime to constrain the discretion of City employees as to which business to search and under what circumstances.

---

[5] Plaintiff's gentleman's club is "dry" – no alcohol is sold or consumed on premises.

E.      Inspections by City officials under the circumstances described in the Ordinance – particularly by police officers – would constitute a common law trespass as that term was construed and applied in United States v. Jones, __ U.S. ___, 132 S. Ct. 945, (2012).

WHEREFORE, Plaintiff prays for the following relief:

A.      That this Court take jurisdiction over the parties and this cause;

B.      That this Court enter a judgment declaring that Chapter 18, Article XVI §18-913 of the Miami Beach Code violates the Fourth Amendment on its face, and as applied to Plaintiff;

C.      That this Court enter a permanent injunction forever enjoining the City and its various agents and employees, from enforcing Chapter 18, Article XVI §18-913 of the Miami Beach Code against Plaintiff and its owners, officers, directors, managers, employees and performers, and against any other similarly situated businesses;

D.      That this court award Plaintiff its recoverable costs, including reasonable attorney's fees pursuant to 42 U.S.C. §1988; and

E.      That this Court award Plaintiff all other relief in law and in equity to which it may be entitled.

*Respectfully submitted,*

BENJAMIN, AARONSON, EDINGER
& PATANZO, P.A.

   /s/  Daniel R. Aaronson                 /s/  Gary S. Edinger

DANIEL R. AARONSON, Esquire           GARY S. EDINGER, Esquire
Florida Bar No.: 314579                    Florida Bar No. 0606812
1 Financial Plaza #1615                   305 N.E. 1st Street
Ft. Lauderdale, Florida 33394         Gainesville, Florida 32601
(954) 779-1700  (Fax) (954) 779-1771   (352) 338-4440  (Fax) (352) 337-0696
danaaron@bellsouth.net                GSEdinger@aol.com

LAW OFFICE OF BENEDICT P.
KUEHNE, P.A.

   /s/  Benedict P. Kuehne

BENEDICT P KUEHNE, Esquire
Florida Bar No. 233293
100 SE 2nd Street, Suite 3550
Miami, Florida 33131-2112
Tel: 305.789.5989 / Fax: 305.789.5987
ben.kuehne@kuehnelaw.com
efiling@kuehnelaw.com

*Attorneys for Plaintiff*