UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 16-25378-CIV-MORENO/GOODMAN

CLUB MADONNA, INC.,

     Plaintiff,

v.

CITY OF MIAMI BEACH,

     Defendant.

_____/

**REPORT AND RECOMMENDATIONS ON DEFENDANT'S
RENEWED MOTION TO DISMISS COMPLAINT**

Club Madonna, Inc. ("Club Madonna" or the "Club"), a liquor-free adult club featuring fully-nude female dancers, filed suit against the City of Miami Beach (the "City"). The lawsuit concerns administrative action taken by the City against Club Madonna, including an emergency closure of Club Madonna, and a subsequent ordinance that was enacted after police discovered that a thirteen-year-old girl, who was a victim of sex trafficking, was dancing at Club Madonna. United States District Judge Federico A. Moreno dismissed all counts of Club Madonna's complaint. [ECF No. 33]. On appeal, the Eleventh Circuit affirmed in part and reversed and remanded in part as to Counts VII-IX, XI, and XIII-XVI.

The City filed a renewed motion to dismiss the remaining counts. [ECF No. 81]. Club Madonna filed a response in opposition and the City filed a reply. [ECF Nos. 82; 85].

Judge Moreno referred to the Undersigned all rulings on pretrial, non-dispositive matters and a Report and Recommendations on all dispositive matters. [ECF No. 77].[1] The Undersigned held a hearing on the motion to dismiss on October 4, 2019 and directed the parties to submit post-hearing memoranda on a discrete issue raised by the City during the hearing. [ECF Nos. 93; 94].

For the reasons stated below, the Undersigned **respectfully recommends** that the District Court **grant in part** and **deny in part** the City's renewed motion to dismiss Club Madonna's complaint. Specifically, the Undersigned **respectfully recommends** that the District Court **grant** the motion to dismiss as to: Counts VII and VIII (First Amendment violations), Count IX (Equal Protection "Class of One," but allow Club Madonna to amend), Count XI (Contract Clause), Count XIV (preemption by FLSA), and Count XV (preemption by state law); and **deny** the motion to dismiss as to: Count XIII (preemption by federal immigration law) and Count XVI (Fourth Amendment violation).

## I.   Background and Procedural History

In December 2016, Club Madonna filed its complaint alleging constitutional violations relating to the City's emergency closure of Club Madonna after the discovery

---

[1]     Judge Moreno referred all pretrial proceedings to the United States Magistrate Judge Lauren F. Louis. [ECF No. 77]. Judge Louis later recused, and the case was reassigned to United States Magistrate Judge Chris M. McAliley. [ECF No. 86]. Subsequently, Judge McAliley recused. [ECF No. 87]. The case was then reassigned to the Undersigned. [ECF No. 87].

of an underage dancer and the ordinance passed by the City in response to the discovery of the underage dancer. [ECF No. 1]. The City filed a motion to dismiss, arguing that Club Madonna's claims were not ripe, were moot, or failed on the merits. [ECF No. 16]. Judge Moreno granted the motion to dismiss, finding that the claims relating to the recently-passed ordinance were not ripe and that the remaining counts relating to the emergency closure failed to state a cause of action. [ECF No. 33]. Club Madonna appealed the order granting the motion to dismiss to the Eleventh Circuit, which was assigned Case No. 17-13934 by the Eleventh Circuit. [ECF Nos. 34; 35].

While the appeal on the order granting the motion to dismiss was pending, the City filed a motion for attorney's fees, which was referred to Judge Louis. [ECF Nos. 46; 51]. Judge Louis held a hearing on the motion and issued a Report and Recommendations, recommending that the motion for attorney's fees be denied. [ECF Nos. 60; 63]. Judge Moreno overruled Judge Louis's Report and Recommendations and on August 24, 2018 entered an order granting the City's motion for attorney's fees, finding that the Complaint was filed in bad faith and "[e]ven absent bad faith, the City is entitled to attorneys' fees because it was the prevailing party and all counts were raised frivolously." [ECF No. 67, p. 4].

Specifically, Judge Moreno found that, even though the City need not show bad faith to be entitled to attorney's fees under 42 U.S.C. § 1988, "the Court nonetheless finds

3

that the Complaint was filed in bad faith for a few reasons." *Id.* at p. 2. Judge Moreno

stated that:

> First, the claims were brought in bad faith because it was the second time
> they were alleged against the City. Plaintiff first brought this lawsuit
> challenging the same 17-day suspension of Plaintiff's licenses in 2014,
> before voluntarily dismissing it. Second, the bad faith was underscored at
> the hearing before Magistrate Judge Louis where Plaintiff suggested that it
> was in dispute whether a thirteen year old girl danced nude at the Club in
> January 2014. The City submits that Plaintiff was aware in 2014—based on
> criminal investigations and the Club's own responses to interrogatories and
> admissions—that the girl dancing at the Club was indeed thirteen years old.
> *See generally* D.E. 62. The City further relies on a trial transcript taken June
> 28, 2018, from the Eleventh Judicial Circuit Court of Florida, where the
> Club's owner, Leroy Griffith, admits under oath that a child danced nude
> at the Club. *See* D.E. 64 Ex. 1. The issue of whether an underage girl danced
> nude at the Club was not hotly disputed in this litigation, because the Club
> knew that was the case in 2014, as evinced by the public records—e.g., 2014
> Criminal Complaint and Arrest Affidavit, and the City of Miami Police
> Department Report of Investigation—attached to the City's Notice of
> Supplemental Filing. (D.E. 62). Accordingly, the City has met its burden in
> showing that the Complaint was filed in bad faith.

*Id.* at pp. 2-3.

Further, Judge Moreno found that Counts I-VI of Club Madonna's complaint

(relating to the emergency closure of Club Madonna) were frivolous and that the Court

did not need to reach the issue of whether the City was the prevailing party as it related

to Counts VII-XVI (dealing with the newly-enacted ordinance) because he had "already

found that all the claims were brought in bad faith;" and even if there was no bad faith,

the City still prevailed on some of its claims. *Id.* at p. 4.

Finally, Judge Moreno found that "Counts VII-XVI are frivolous because the claims were brought before the Club was ever threatened with enforcement under the City's ordinances. In essence, the City was forced to undertake the cost of defending the ordinances at issue before a case or controversy existed." *Id.*

When Judge Moreno issued his order granting the City's motion for attorney's fees, the appeal on the motion to dismiss was still pending. The City pursued an appeal of the fees order, but the Eleventh Circuit (on November 28, 2018) dismissed that appeal, *sua sponte*, for lack of jurisdiction. The fees order did not determine the amount of the fees award, which means it was not a final order. Therefore, the Eleventh Circuit determined that it lacked jurisdiction over the appeal of the fees order and dismissed the appeal.

On October 25, 2018, before the dismissal of the appeal on the fees order, the City filed a "Notice of Supplemental Authority," in the Eleventh Circuit case, Case No. 17-13934. This submission to the Eleventh Circuit attached Judge Moreno's attorney's fees order finding bad faith, with a cover letter stating that "such bad faith warrants summary dismissal of this appeal without oral argument." *Club Madonna, Inc. v. City of Miami Beach*, United States Court of Appeal for the Eleventh Circuit, Case No. 17-13934, Notice of Supp. Authority, p. 2.

On October 30, 2018, Club Madonna filed a motion to strike the notice of supplemental authority because it was not actually supplementary binding authority.

[ECF No. 99-1].[2] The City filed a 14-page response in opposition to the motion to strike, stating that the attorney's fees order is a significant development in the case and requested that the Eleventh Circuit take into consideration the district court's finding that Club Madonna's claims had been filed in bad faith, and also that the Eleventh Circuit could take judicial notice of the documents establishing that the thirteen-year-old had in fact danced at Club Madonna. [ECF No. 99-2].

On November 8, 2018, oral argument was held by the Eleventh Circuit regarding the order granting the City's motion to dismiss. Almost three weeks later, the Eleventh Circuit dismissed the separate attorney's fees award, which was based on the bad faith finding.

Approximately six and a half months after that, on May 24, 2019, the Eleventh Circuit issued its opinion affirming in part and reversing and remanding in part the order granting the City's motion to dismiss. That same day, on May 24, 2019, the Eleventh Circuit issued a one-sentence order stating that Club Madonna's Motion to Strike Appellee's Supplemental Authority was denied as moot.

On June 24, 2019, the Eleventh Circuit issued its mandate to the district court. [ECF No. 74]. The Eleventh Circuit reversed and remanded to the district court for further proceedings Counts VII-IX, XI, and XIII-XVI, which relate to the constitutionality of the

---

[2]      At the hearing on the motion to dismiss, the Undersigned ordered the parties to file copies of these submissions on CM/ECF in this case. [ECF No. 94].

ordinance passed by the City following the incident. The Eleventh Circuit found that Counts VII-IX, XI, and XIII-XVI are all ripe for review. As it related to Club Madonna's preemption claims (Counts XIII, XIV, and XV), the Eleventh Circuit found that "[f]urther factual development cannot assist in resolution of these facial challenges, which raise purely legal issues." [ECF No. 74, p. 17]. Similarly, the Eleventh Circuit found that Club Madonna's First Amendment, Equal Protection, and Contract Clause claims (Counts VII, VIII, IX, and XI) "require no more factual development to be ripe for review." *Id.* at pp. 15-16. And finally, the Eleventh Circuit found that Count XVI is also fit for review and "presents purely legal questions." *Id.* at pp. 16-17.

The City then filed its renewed motion to dismiss the surviving counts. [ECF No. 81]. The City argues that the complaint is subject to dismissal (1) based solely on Judge Moreno's finding in the order granting attorney's fees that Club Madonna's complaint was filed in bad faith, and (2) because the surviving counts, regardless of the bad faith finding, fail on the merits.

In sum, Club Madonna alleges in the surviving counts that the Human Trafficking Ordinance, Chapter 18, Article XVI, (the "Ordinance") enacted by the City in response to the discovery of the underage dancer, violates the Contract Clause, the Supremacy Clause, the First, Fourth, and Fourteenth Amendments of the United States Constitution, and is also preempted under a variety of state and federal laws. These surviving counts are discussed further in the analysis section below.

Club Madonna's complaint provides the following background information, which is incorporated to all of the surviving counts.[3]

- Plaintiff owns and operates a nonalcoholic beverage establishment in Miami Beach that features performances by dancers in the nude. The dance provided by Plaintiff is a form of non-obscene, constitutionally protected expression that is presumptively protected by the First Amendment to the United States Constitution. [ECF No. 1, ¶ 12].

- Plaintiff has presented nude erotic entertainment at this location for over twenty years. Prior to Plaintiff operating a nude entertainment facility at this location, other corporations provided similar entertainment. Said location has been the site of nude entertainment for approximately the past forty years. *Id.* at ¶ 15.

- Plaintiff has a substantive property right in the continuation of its existing business and in the permits issued to that business. *Id.* at ¶ 16. Florida law recognizes and protects Plaintiff's substantive property rights in its existing business and in the permits issued to that business. *Id.* at ¶ 17.

- Plaintiff's business falls within the definition of a "nude dancing establishment" under Article V, §142-1271 of the Miami Beach Code of Ordinances. *Id.* at ¶ 18.

- Plaintiff's business is regulated by Chapter 18, Article XVI of the Miami Beach City Code which imposes record-keeping obligations on "Nude Dance Establishments" and regulates the employment contracts of such businesses. *Id.* at ¶ 20.

- Unfortunately, and without the knowledge of the Plaintiff or its principal, it appears that a minor may have gained entry into Plaintiff's business under false pretenses and may have performed several times during the last week of 2013 and into the first week of 2014. Plaintiff does not concede that a minor actually performed at Plaintiff's business. *Id.* at ¶ 24.

---

[3]    The facts in the background section are from Club Madonna's complaint and are deemed to be true for purposes of ruling on the City's motion to dismiss.

- On January 6, 2014, a search warrant was issued and executed at Club Madonna for evidence of violations of § 787.06(3)(h), Florida Statutes (Commercial Sexual Exploitation of a Minor Under 15 years of Age); § 796.03, Florida Statutes (Procuring Person Under the Age of 18 for Prostitution); § 796.05, Florida Statutes (Deriving Support from the Proceeds of Prostitution); § 827.04, Florida Statutes (Contributing to the Delinquency of a Minor); and § 787.03, Florida Statutes (Interference with Child Custody). *Id.* at ¶ 25.

- No principal, officer, manager or employee of Club Madonna has been charged with any of the offenses stated above. *Id.* at ¶ 27. Club Madonna cooperated with law enforcement during their investigation. *Id.* at ¶ 28. Plaintiff undertook immediate remedial measures upon learning that an underage performer may have appeared in the establishment. *Id.* at ¶ 29.

- In response to the allegations that an underage performer had danced at Plaintiff's establishment, the City enacted Chapter 18, Article XVI (Nude Dance Establishments), which purportedly targets human trafficking through the imposition of record-keeping and payment requirements unique to adult entertainment establishments. Article XVI consists of two Ordinances - ORD. No. 2015-3917 and ORD. No. 2015-3926 which were codified as §18-913, §18-914 and §18-915. *Id.* at ¶ 63.

- The City did not impose similar regulations on any other industry, business or trade despite widespread information that human trafficking occurred in such other industries, including hotels and other hospitality businesses. *Id.* at ¶ 64. Because Plaintiff operates the only nude dancing establishment in Miami Beach, the regulations and penalties enacted in Chapter 18, Article XVI apply to only one citizen in the community: Club Madonna. *Id.* at ¶ 65.

- The City enacted Article XVI for an unconstitutional purpose; to-wit: to punish the Plaintiff individually and to provide a means of putting Plaintiff out of business because of the City's objection to the expressive components of Plaintiff's dance entertainment and personal animosity towards Plaintiff's principal, Leroy Griffith. *Id.* at ¶ 67.

- At the enactment hearings, the City addressed only the alleged violations at Plaintiff's establishment and did not consider underage performances or human trafficking at any other establishment or in any other industry. Plaintiff's business was singled out for condemnation despite widely-

9

available evidence showing that human trafficking is rare in adult businesses, but common in other establishments in tourist areas (such as hotels and restaurants). *Id.* at ¶ 68.

- During the enactment proceedings for the Ordinances comprising Article XVI, a majority of the City Commission, and a majority of the Commissioners voting for the subject Ordinances, specifically stated that they intended to use the Ordinance as a means of closing Plaintiff's business. In particular, the Commissioners stated that they desired to impose extravagantly high civil penalties as a means of driving Plaintiff out of business: "I think we can all agree that we can multiply those fines by ten for each of them. What do you think, $25,000 for the first offense…?" Commissioner Ed Tobin (November 21, 2014 public hearing). Commissioner Micky Steinberg's comments at the same hearing show the City's true intent in enacting this legislation: "Listen, I would love not to even have them in business." *Id.* at ¶ 69.

Further, Club Madonna attached a copy of the Ordinance, Chapter 18, Article XVI, as Exhibit "B" to its complaint, which provides in part:

**Sec. 18-913. - Proof of identification for workers and performers, and shift logs required.**

All nude dance establishments as defined in section 142-1271 of the city Code, and as such section may be amended from time to time, must:

(1) Require any worker or performer entering the nude dance establishment to provide proof of an original, lawfully issued state or federal photo identification, and one additional form of identification that confirms he or she is:

     (a) Eighteen years of age or older; and

     (b) Is either a U.S. Citizen, legal resident, or otherwise legally permitted to be employed within the United States of America.

(2) Confirm that the person is working or performing of his or her own accord and is not being forced or intimidated into working or performing

at the nude dance establishment. The confirmation as set forth within this subsection shall be pursuant to, and in compliance with subsection (4); and

(3) Maintain copies of those documents required in subsection (1) and (2) herein, and those documents must at all times be on the premises of the nude dance establishment for the duration the worker or performer is employed, hired or contracted at, or is permitted to work or perform at the nude dance establishment; and

(4) Verify the accuracy of those documents required in subsection (1) and (2) by preparing and retaining a sworn statement from the owner or manager of the nude dance establishment confirming that the individual performer is at least 18 years of age, is performing of her or his own accord, and is not being forced or intimidated into performing or working; and

(5) Maintain a check in/check out procedure and log whereby the documents referenced in subsection (1) are presented by the worker or performer upon entering the nude dance establishment, and the worker or performer logs in upon entering and logs out prior to exiting the nude dance establishment. The log shall indicate:

> (a) The name(s) of the manager(s) of the nude dance establishment on duty at the time of the log in and log out;

> (b) The worker or performer's actual name; a unique identifier, if any (e.g., employee number or stage name); the job title or role at the nude dance establishment (e.g., performer, employee, server, bartender); the log in and log out times; and

> (c) The manager who confirmed that the identifications referenced in subsection (1) were inspected and verified.

The documents referenced in subsections (1) through (5) must be available for inspection by the city upon demand, and the nude dance establishment shall not refuse access to these documents for inspection by the city. No person shall be allowed to enter or perform at the nude dance establishment or who has not been presently verified consistent with those provisions identified within subsections 18-913(1) through (5).

Ord. No. 2015-3917, § 1, 1-14-15.

**Sec. 18-914. - Compensation for workers and performers.**

A nude dance establishment, as defined in section 142-127 of the city Code, and as such section may be amended from time to time, must:

(1) Provide direct monetary or non-monetary compensation to any worker or performer at a nude dance establishment, and shall maintain documentary proof acknowledging that the monetary or non-monetary compensation was directly received by the worker or performer. The documentation must identify the performer or worker receiving the compensation, and will acknowledge that no other individual, person, or entity was entitled to, or received the compensation on behalf of the worker or performer. The nude dance establishment shall not compensate any worker or performer through a third-party intermediary or business entity.

> (a) A nude dance establishment shall maintain these compensation records for performers and workers, and the city shall have a right to request and inspect the records for any and all workers or performers at a nude dance establishment.

(2) A worker or performer who works or performs at a nude dance establishment for a period of less than four days within a calendar year shall be exempt from this section.

Ord. No. 2015-3917, § 1, 1-14-15; Ord. No. 2015-3926, § 1, 3-11-15.

**Sec. 18-915. - Enforcement; penalties.**

(a) *Civil fine for violators*. The following civil fines must be imposed for a violation of sections 18-913 and 18-914:

> (1) First offense within a 12-month period must be a fine of $5,000.00;

> (2) Second offense within a three-year period must be a fine of $10,000.00;

> (3) Third offense and subsequent offenses within a five-year period must be a fine of $20,000.00.

(b) *Enforcement.* The code compliance division or the Miami Beach Police Department shall enforce the provisions of this section. This shall not preclude other law enforcement agencies or regulatory bodies from any action to assure compliance with this section, and all applicable laws. If an enforcing officer finds a violation of this section, the officer may issue a notice of violation to the violator. The notice of violation must inform the violator of the nature of the violation, amount of fine for which the violator is liable, instructions and due date for paying the fine, notice that the violation may be appealed by requesting an administrative hearing within ten days after service of the notice of violation, and that failure to appeal the violation within the ten days, shall constitute an admission of the violation and a waiver of the right to a hearing.

Ord. No. 2015-3926, § 1, 3-11-15.

## I.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that fails to state a cause of action for which relief may be granted. Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss, the Court must accept the factual allegations as true and construe them broadly in the light most favorable to the plaintiff. *See Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). When conducting this analysis, the Court may examine only the four corners of the complaint. *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).[4]

---

[4]    As noted in its opinion, the Eleventh Circuit considered the search warrant affidavit "for purposes of recounting the background facts of the case." *Club Madonna, Inc. v. City of Miami Beach*, 924 F.3d 1370, 1379 n. 9 (11th Cir. 2019). It explained that taking notice was proper because "its authenticity is not in question and it is central to the claims at issue." *Id.*

"To survive a motion to dismiss, a Complaint must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Generally, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]o survive a motion to dismiss, a plaintiff must do more than merely label his or her claims." *Afkhami v. Carnival Corp.*, 305 F. Supp. 2d 1308, 1325 (S.D. Fla. 2004) (citing *Blumel v. Mylander*, 919 F. Supp. 423, 425 (M.D. Fla. 1996)).

## II.   Analysis

### a.   Dismissal for Bad Faith

The City first argues that Club Madonna's complaint should be dismissed because the suit was brought in bad faith. [ECF No. 81, p. 5]. In support, the City points to Judge Moreno's Order Granting Defendant's Motion for Attorneys' Fees, which was based on his conclusion in the fees order that the complaint was filed in bad faith. [ECF No. 67].

In response, Club Madonna argues that the law of the case doctrine requires this trial-level court to honor the Eleventh Circuit's ruling "in all respects." [ECF No. 82, p. 4]. According to Club Madonna, the appellate court implicitly and necessarily concluded that the action was not filed in bad faith "or it would have dismissed the appeal as the City had requested." *Id.* at p. 5. Club Madonna relies on case law authority holding that the law of the case doctrine bars relitigation of issues that were decided by the appellate

14

court either explicitly or by necessary implication. *See Schiavo v. Schiavo*, 403 F.3d 1289, 1291 (11th Cir. 2005) ("The [law-of-the-case] doctrine operates to preclude courts from revisiting issues that were decided explicitly or by necessary implication in a prior appeal."); *Klay v. All Defendants*, 389 F.3d 1191, 1198 (11th Cir. 2004) ("Realizing that a prior decision is law of the case as to matters decided explicitly and by necessary implication, we find that our prior affirmation of the district court constitutes law of the case here . . ."); *A.A. Profiles, Inc. v. City of Fort Lauderdale*, 253 F.3d 576, 582 (11th Cir. 2001) ("Generally, the law of the case doctrine requires a court to follow what has been explicitly or by necessary implication decided by a prior appellate decision."); *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1550 n.3 (11th Cir. 1990) (internal quotation marks and citation omitted) (emphasis added) ("While the law of the case does not bar litigation of issues which might have been decided but were not, it does require a court to follow what has been decided explicitly, as well as by necessary implication, in an earlier proceeding."); *see also This That And The Other Gift And Tobacco, Inc. v. Cobb Cty., Ga.*, 439 F.3d 1275, 1283 (11th Cir. 2006).

Club Madonna also urges the so-called "mandate rule" in further support of its argument that this Court can no longer rely on the earlier-issued fees order based on bad faith. The "mandate rule" represents a particular application of the law of the case doctrine. *See Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1288 (11th Cir. 2010) ("The mandate rule is a 'specific application of the law of the case doctrine' requiring that '[a] trial court,

upon receiving the mandate of an appellate court, may not alter, amend, or examine the mandate, or give any further relief or review, but must enter an order in strict compliance with the mandate.'"). It stands for the unremarkable proposition that this Court must honor the appellate court's mandate in all respects. *See generally Piambino v. Bailey*, 757 F.2d 1112, 1119-20 (11th Cir. 1985).

"Appellate courts have the power to issue mandates which are commands that cannot be ignored. Absent a Supreme Court decision to the contrary, district courts are compelled to follow mandates of appellate courts." *Litman v. Mass. Mut. Life Ins. Co.*, 825 F.2d 1506, 1508 (11th Cir. 1987). Given this rule, the trial court lacks discretion to not comply with the appellate mandate.

"When an appellate court issues a clear and precise mandate . . . the district court is obligated to follow the instruction. Neither the district court nor any party is free to ignore the law of the case." *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 881 F.3d 835, 839, 843 (11th Cir. 2018) (internal citation omitted) (reversing in part district court's judgment where it conflicted with Eleventh Circuit's mandate); *see also Friedman v. Mkt. St. Mortg. Corp.*, 520 F.3d 1289, 1294 (11th Cir. 2008) (stating that district court must "enter an order in strict compliance with the mandate" and finding prior determination of Eleventh Circuit precluded district court from revisiting issue when case was remanded).

Recognizing that the Eleventh Circuit's opinion did not specifically mention the bad faith finding or language about the complaint being a frivolous finding, Club

16

Madonna argues that "it must be recognized as incontestably true that the Eleventh Circuit decided by **implication** that the bad faith defense is untenable." [ECF No. 82, p. 5 (emphasis supplied)].

The City, however, tries to rebut that argument by emphasizing that the appellate briefing did not address the merits of the counts and highlighting the absence of discussion in the opinion about this Court's later determination that the case is frivolous and was filed in bad faith. Simply stated, the City notes that the bad faith ruling was not among the issues on review in the appeal.

i. <u>The Hearing (On the Renewed, Post-Appeal Motion to Dismiss)</u>

The City took the position at the hearing that the law of the case rule is inapplicable because Judge Moreno's ruling was not one decided by the appellate court. It further acknowledged that the district Court is free to revisit interlocutory rulings (such as the fees order).

However, the City's counsel encouraged the Undersigned to follow that earlier ruling under a doctrine he termed "law of the case light," though he conceded that the rule could be known under different names. [ECF No. 107, pp. 39-40]. Regardless of the actual name or title of this doctrine, though, the City explained that it concerned scenarios where "you're dealing with prior rulings that are at the same level." *Id.* Moreover, the City explained, the doctrine frequently applies "where one judge makes a set of findings and a coequal judge is being asked to revisit those findings." *Id.* Thus, the City argued,

17

the "law of the case light" rule means that "the subsequent judge reviewing that (e.g., a bad faith finding by a prior judge) tend to give it deference unless they have some compelling reason not to." *Id.* at p. 43.

Club Madonna's counsel, who advised that he does a significant amount of appellate litigation, said that he was not familiar with the "law of the case light" concept. Given this dynamic, I asked the parties to brief the issue succinctly.

### ii.   The Post-Hearing Briefing

Although the City's memorandum [ECF No. 100] does not expressly concede that it found no doctrine titled "law of the case light," it did not mention that phrase at all. Instead, it explained that the law of the case doctrine has two forms: (1) a "stronger" form, which requires a lower court to follow the higher court's mandate concerning issues actually decided, either explicitly or by necessary implication; and (2) a lighter, more-discretionary one, when a district court reviews its own prior determination (or that of a coordinate court). This second type is also known as the "second branch" of the law of the case doctrine. *Prisco v. A & D Carting Corp.*, 168 F.3d 593, 607 (2d Cir. 1999).

In addition, the City recognized that the second branch of the law of the case doctrine does not prevent a new district judge from reconsidering an interlocutory order of a prior district judge under circumstances where the original judge could have reconsidered the order. *Wilson v. Merrell Dow Pharms., Inc.*, 160 F.3d 625, 628 (10th Cir.

2002). Thus, Judge Moreno could reconsider his own, earlier-issued fees order (which was based on a finding of bad faith).

However, the City's memorandum also advances a new argument: it says that a magistrate judge may not review prior determinations made by a district judge in the same case. *See Watt v. United Parcel Serv.*, No. C-1-03-589, 2008 WL 11353604, at *2 (S.D. Ohio May 13, 2008) (stating that magistrate judges are "not vested with the authority to reconsider the prior rulings of the district court"); *Earl v. Turnbull*, No. 02-0224, 2005 WL 3178164, at *1 (D. Ala. Nov. 22, 2005) ("The magistrate judge lacks the authority to reconsider the district judge's order.").

Therefore, the City's theory is that I may not reconsider Judge Moreno's bad faith ruling and that I am bound to follow it -- which would necessarily mean that I **must** issue a report and recommendations recommending that the remaining counts be dismissed.

Moreover, the City argues that I should embrace and follow Judge Moreno's earlier ruling (by respecting the lighter, discretionary form of the doctrine), even if I had authority to reconsider it, because (1) it was made on an adequate record, (2) there has been no material change in controlling law, (3) no newly discovered evidence is involved, and (4) reconsideration is not needed to avoid manifest injustice. *Ellis v. United States*, 313 F.3d 636, 646-48 (1st Cir. 2002); *see also United States ex rel. Petratos v. Genetech, Inc.*, 855 F.3d 481, 493 (3d Cir. 2017) (finding "successor judge should not lightly overturn decisions of predecessor in a given case").

19

Club Madonna rejects as legally unsound the City's reliance on the "second branch" of the law of the case doctrine because it glossed over a portion of *Prisco* that the doctrine is implicated "when a court reconsiders its own ruling **in the absence of an intervening ruling of a higher court.**" *Prisco*, 168 F.3d at 607 (emphasis supplied). Because there *is* an intervening higher court ruling here, Club Madonna notes, the notion that a Court should not reconsider its prior orders unless there is good reason to do so is inapposite.

Moreover, Club Madonna also highlights the manner in which the bad faith fees Order was entered to bolster its view that the second branch of the law of the case doctrine mandates an Order adopting the earlier ruling. Specifically, Club Madonna emphasizes that the earlier Order awarded fees because "no litigant should have filed a case which was so obviously unripe." [ECF No. 104, p. 2]. It then quoted from the earlier Order, "In essence, the City was forced to undertake the cost of defending the ordinances at issue before a case or controversy existed." [ECF No. 67, p. 4].

But the appellate court reversed the finding that all claims, except the Eighth Amendment count, were not ripe for adjudication. Thus, Club Madonna concludes, neither of the two branches of the law of the case doctrine constrain this District Court from considering the merits of the claims.  According to Club Madonna, those principles *require* reconsideration of the bad faith finding.

Challenging the City's reliance on the lighter branch of the doctrine, Club Madonna underscores the fact that the doctrine is purely discretionary and flexible (as opposed to being a rigid, jurisdictional barrier to reconsideration of interlocutory rulings). *See Novick v. AXA Network, LLC*, 714 F. App'x 22, 24-25 (2d Cir. 2017) (citation omitted) ("[T]he doctrine is discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment.").

Finally, Club Madonna disputes as "simply out of place" the City's argument about a magistrate judge's lack of authority to overturn a district judge's decisions. [ECF No. 104, p. 4]. Club Madonna simply points out that the Undersigned is being asked to enter only a Report and Recommendations, not to reverse Judge Moreno or otherwise overrule his Order.

Adopting a practical view of the procedural reality here, Club Madonna notes that Judge Moreno "will ultimately determine whether his earlier rulings are to be vacated to conform to the Eleventh Circuit's opinion." *Id.*

### iii.   Analysis of City's Bad Faith Argument

The Undersigned does not find that Judge Moreno's findings in the fees Order about bad faith and the frivolous nature of the lawsuit to require an outright dismissal of Club Madonna's remaining counts without examining the substantive merits of those counts.

First, the City has not convinced me that the Eleventh Circuit did not implicitly reject the City's argument that Club Madonna's complaint should be dismissed for bad faith. Before the Eleventh Circuit issued its opinion, the City filed a "Notice of Supplemental Authority," attaching Judge Moreno's attorney's fees order finding bad faith, with a cover letter stating that the appeal could be dismissed on that ground alone. *Club Madonna, Inc. v. City of Miami Beach*, United States Court of Appeal for the Eleventh Circuit, Case No. 17-13934, Notice of Supp. Authority, p. 2. Club Madonna then filed a motion to strike the supplemental authority because it was not binding authority and for other reasons. [ECF No. 99-1]. The City filed a 14-page response in opposition to the motion to strike, stating that the attorney's fees order is a significant development in the case and that the Eleventh Circuit could take judicial notice of the documents establishing that the thirteen-year-old had in fact danced at Club Madonna. [ECF No. 99-2].

The Eleventh Circuit did not dismiss the appeal for bad faith and did not mention whether the case was subject to dismissal for bad faith despite the fairly extensive briefing. Instead, it discussed the merits in significant detail.

Further, it is clear that the Eleventh Circuit was aware of the facts included in the search-warrant affidavit, as it mentions its consideration of it. [*See* ECF No. 74, p. 15].

Although the Undersigned is not persuaded by the City's argument, I am also not convinced by Club Madonna's argument that the appellate court *did*, in fact, implicitly consider the bad faith argument. The issue is dicey, and the more-prudent approach

would be to err on the side of caution and not just dismiss the remaining counts, without further analysis, based on the pre-mandate fees Order.

Second, the Eleventh Circuit denied as moot the City's Motion to Strike the City's Supplemental Authority. It did not deny the motion on the merits. And the appellate court was aware of the City's position that the appeal should be dismissed because of the fees Order based on bad faith.

Third, the Eleventh Circuit could easily have affirmed the lower court's ruling on the bad faith finding even if the substantive briefing did not address that post-dismissal Order. *See Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1059 (11th Cir. 2007); *see also Vista Mktg., LLC v. Burkett*, 812 F.3d 954, 980 (11th Cir. 2016) (appellate court may "affirm for any reason supported by the record, regardless of whether the district court relied on it"). But it did not. Given that the City took specific steps to bring the post-dismissal fees Order to the appellate court's attention with a request to dismiss the appeal, the Eleventh Circuit's failure to affirm on that ground is surely a factor which the Undersigned can consider when evaluating whether the earlier bad faith ruling should be blindly adopted again.

Fourth, the Undersigned deems it significant that Judge Moreno referred the motion to dismiss (and all other pre-trial motions) to a magistrate judge following the partial reversal/partial affirmance and mandate. Judge Moreno was surely aware that he found the lawsuit to have been filed in bad faith. If Judge Moreno intended to adopt that

earlier ruling under the second branch of the law of the case doctrine, then he certainly did not need to arrange for a magistrate judge to evaluate the substantive arguments about the merits of the remaining claims. Instead, he could have been far-more efficient and simply entered an order dismissing the remaining counts based on the earlier fees Order.

Fifth, the Eleventh Circuit remanded this case for "further proceedings," which, in my view, means a substantive assessment of the remaining claims. That remand, which is part of the mandate, must be followed. The City has not convinced me that the mandate rule somehow authorizes me to not evaluate the merits of the remaining claims.

Sixth, the Undersigned finds it troubling that Club Madonna disputed the fact that a thirteen-year-old danced at Club Madonna. This indiscretion, on its own, does not appear to rise to the level of improper conduct necessary to dismiss a complaint with prejudice (which is presumably what the City is seeking here; otherwise, why would it bother seeking dismissal if Club Madonna is given leave to amend and assert the same claims?). *See Flaksa v. Little River Marine Const. Co., Inc.*, 389 F.2d 885, 887-89 (5th Cir. 1968) (holding that a with-prejudice dismissal is a "drastic remed[y] which should be used only in extreme situations"). In addition, the City is relying on an Order which found that the entire case was **frivolous,** so a without-prejudice dismissal seems fundamentally inconsistent with a frivolous filing.

24

"[A] dismissal *with prejudice*, whether on motion or *sua sponte*, is an extreme sanction that may be properly imposed *only* when: (1) a party engages in a clear pattern of delay or willful contempt (contumacious conduct), and (2) the district court specifically finds that lesser sanctions would not suffice." *Betty K Agencies, Ltd. v. M/V Monada*, 432 F.3d 1333, 1337-78 (11th Cir. 2005) (internal quotation and citations omitted) (vacating and remanding with-prejudice dismissal); *see also Warner v. Tinder, Inc.*, 675 F. App'x 945 (11th Cir. 2017) (reversing and remanding with-prejudice dismissal and noting that the trial court did not make the necessary two findings required by *Betty K Agencies*).

The Eleventh Circuit standard for dismissing a case with prejudice is high. In fact, findings satisfying both prongs of the *Betty K Agencies* rule are "essential before dismissal is appropriate," and district courts "must make these findings" because "the sanction of dismissal with prejudice is so unsparing . . . and we strive to afford a litigant his or her day in court, if possible." *Abreu-Velez v. Bd. of Regents*, 248 F. App'x 116, 118 (11th Cir. 2007) (internal quotation omitted).

Here, because Judge Moreno was considering only the City's entitlement to attorney's fees in making the bad faith finding, this two-prong finding necessary for dismissal with prejudice was not made in the attorney's fees order. Further, the Undersigned is not now making a finding that Club Madonna has engaged in a ***pattern*** of willful contempt and that lesser sanctions would not suffice. *See Betty K Agencies*, 432 F.3d at 1337-78.

Seventh, it is far from clear that the legal foundation for the earlier fees Order remains intact after the appellate opinion and mandate. The earlier Order explained that Counts VII-XVI are frivolous because they were not yet ripe, thus forcing the City to unnecessarily defend the ordinances before a case or controversy existed. But the Eleventh Circuit disagreed and held that all claims other than the Eighth Amendment claim in Count XII were ripe.

Therefore, although the fees Order was not technically reversed (i.e., it was merely dismissed for lack of jurisdiction because it did not establish the amount of the fees), a portion of the *rationale* was rejected. The City has not presented any authority to support the view that a magistrate judge cannot reconsider a prior ruling of a district court judge in the same case, in the absence of express consent by the parties, when an appellate court has rejected the legal grounds on which the earlier order is based.

Eight, because the ruling contained here is only a Report and Recommendations, as opposed to an actual, substantive Order, the Undersigned may well not be violating the "do-not-overrule-district-judges" rule for magistrate judges.

Finally, the Undersigned is adopting a realistic and practical perspective on this issue. If Judge Moreno were to determine that a with-prejudice dismissal is appropriate based on his earlier Order, then he obviously can enter the appropriate dismissal Order in connection with his review of this Report and Recommendations (and of any Objections and Responses to those Objections).

Thus, for the reasons outlined above, the Undersigned does not find that Club Madonna's complaint should be dismissed automatically for bad faith based on the earlier fees Order, and I will address the City's merit-based arguments below as to each count.

### b.   Count VII – Unconstitutional Burden on Speech

Club Madonna argues that the Ordinance is not narrowly tailored and does not advance the asserted government interest commensurate with the burden on free speech. [ECF No. 1, ¶ 187]. Specifically, Club Madonna points to the Ordinance's requirement that the Club verify two forms of ID and then copy and log that information every time the performer enters the premises. Club Madonna alleges this requirement is "unduly burdensome on speech and is not narrowly tailored because the *repeated* requirement to verify the age, identity and citizenship of a performer serves no valid public purpose." *Id.* at ¶ 189. Club Madonna posits that a narrowly-tailored ordinance might require a dancer to register once, "after which the dancer could perform as a known performer." *Id.*

Club Madonna also points to the "Compensation" requirement of the Ordinance as being "unduly burdensome on speech and is not narrowly tailored in several respects" because:

> (A)   It requires some sort of "acknowledgment" that money was paid directly to the performer and not some third-party intermediary. Wages are typically paid by check and documented by

a W-2 or 1099. The requirement for additional "acknowledgments" is unreasonable and serves no valid government interest.

(B)   Club Madonna must maintain documentation of the compensation indefinitely and must provide these documents to the City on demand. This imposes an unreasonable burden in terms of the sheer volume of paperwork and requires that the records be kept on-site, making it even more unreasonably burdensome.

(C)   The City does not do anything with the records, such as evaluate whether employees are receiving the correct compensation or punish Club Madonna if the compensation is not proper. Thus, the recordkeeping requirement is arbitrary.

(D)   The City does not impose similar record-keeping and payment requirements on any other industry, "despite abundant information known to the City that human trafficking occurs in a variety of businesses and locations."

*Id.* at ¶ 191.

Thus, Club Madonna seeks a declaration that the Ordinance is an unconstitutional burden on speech.

Nude dancing is considered expressive conduct, which is afforded **some** First Amendment protection. *See Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 566 (1991) ("[N]ude dancing . . . is expressive conduct within the outer perimeters of the First Amendment."); *see also Brownell v. City of Rochester*, 190 F. Supp. 2d 472, 488 (W.D.N.Y. 2001) ("[N]on-obscene nude or semi-nude dancing is expressive activity that is protected by the First Amendment.").

"[T]he First Amendment is not implicated by the enforcement of a . . . regulation of general application" that applies to a business where protected activity happens to

occur. *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 707 (1986). For example, in *Arcara*, the Supreme Court found that First Amendment scrutiny did not apply to the closure of an adult bookstore under an ordinance banning prostitution because the ordinance did not single out a specific industry or business, and further, prostitution "manifests absolutely no element of protected expression." *Id.* at 705. Generally applicable regulations can be applied to businesses engaged in expressive conduct without implicating First Amendment scrutiny, including antitrust laws, Fair Labor Standards Act, and responding to grand jury subpoenas. *Id.* at 704.

On the other hand, "a regulation of the time, place, or manner of protected speech must be narrowly tailored to serve the government's legitimate, content-neutral interests but . . . it need not be the *least* restrictive or least intrusive means of doing so." *Ward v. Rock Against Racism*, 491 U.S. 781, 798-99 (1989) (emphasis added). Thus, as long as "the means chosen are not substantially broader than necessary to achieve the government's interest," the regulation is narrowly tailored. *Id.* at 800; *see also City of Renton v. Playtime Theatres*, Inc., 475 U.S. 41, 47 (1986) ("'[C]ontent-neutral' time, place, and manner regulations are acceptable so long as they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication.").

Here the Undersigned does not find that the Ordinance is a generally applied regulation like the one in *Arcara* barring prostitution, which would not implicate the First

Amendment at all. The Undersigned finds that the Ordinance is akin to a zoning ordinance or hours of operation ordinance, which regulates the **time, place, or manner** that nude dancing clubs may operate in Miami Beach and thus is subject to the time, place, and manner test laid out in *Ward* and *Renton. See Lady J. Lingerie, Inc. v. City of Jacksonville*, 176 F.3d 1358, 1364-65 (11th Cir. 1999) (applying the *Renton/Ward* test to ordinance regulating the hours of operation of a nude dancing club and buffer zone provisions, which "regulate 'time' and 'place' in the 'time, place, or manner' sense" and they "affect, but do not directly regulate, the expressive conduct that is the basis of the plaintiffs' First Amendment challenges: nude dancing"); *see also Brownell*, 190 F. Supp. 2d at 486 (applying "time, place, and manner" test to ordinance "relating to activities inside sexually oriented businesses-generally").

Here, the City has a legitimate, content-neutral interest in attempting to curb human trafficking and other negative secondary effects of nude dancing clubs. *See City of Renton*, 475 U.S. at 47; *see also Brownell*, 190 F. Supp. 2d at 506. ("The City has a legitimate and substantial interest in ensuring that minors are not allowed to work at . . . sexually oriented businesses."). The parties do not appear to dispute this. Rather, Club Madonna argues that the Ordinance is not narrowly tailored to serve this interest because the repeated ID verification process and recordkeeping requirements are unnecessary to serve the City's purpose.

The Undersigned agrees that requiring a performer to present two forms of ID every time she enters Club Madonna is more onerous than requiring a performer to register once with Club Madonna as a "known dancer," which is the narrowly tailored means that Club Madonna suggests should be used. [*See* ECF No. 1, ¶ 189]. Thus, the City could likely employ less-restrictive means to carry out its purpose, but the determinative question here is whether "the means chosen are . . . ***substantially broader*** than necessary to achieve the government's interest." *Ward*, 491 U.S. at 800 (emphasis added).

It is unclear how Club Madonna's proposed registration process would work, i.e., whether Club Madonna would issue an ID badge that would be presented every time the dancer entered Club Madonna or whether the manager would just remember the known dancer's face. However, "[t]he less identifying information provided by the [dancer upon entry], the greater the potential for abuse," if, for instance, the "known dancer" gave her ID badge to another person that was not registered. *See Brownell*, 190 F. Supp. 2d at 506.

Accordingly, the Undersigned does not find that the means chosen by the City are ***substantially broader*** than necessary to achieve its interest in ensuring Club Madonna does not allow underage dancers to perform and to prevent human trafficking.

The Undersigned finds that the propriety of the recordkeeping requirements under the "Compensation" provision of the Ordinance to be a much easier question. The City again has a substantial interest in preventing human trafficking. Requiring Club Madonna to keep track of payments it makes to its performers (which does not include

tips) and ensuring that these payments are not made to other third-parties or handlers serves the City's purpose in prevent human trafficking.

To satisfy this requirement, Club Madonna could simply maintain a log sheet for each dancer for these payments, allowing her to check a box on a form stating that she received the amount and that no other individual is entitled to or will receive that amount. Conceivably, there may be a less-restrictive way to carry out this purpose; however, the means chosen here cannot be said to be substantially broader than necessary to achieve this purpose. *See Ward*, 491 U.S. at 800.

Thus, Club Madonna fails to state a cause of action for declaratory or injunctive relief on the grounds that the Ordinance is an unconstitutional burden on speech.

### c.   Count VIII – Unconstitutional Tax on Speech

Club Madonna alleges that the Ordinance's "Compensation" provision "imposes a tax on Plaintiff because of the content of the Plaintiff's speech. That tax takes the form of economic hurdles not faced by other businesses and in additional taxes Plaintiff is forced to pay on wages . . ." [ECF No. 1, ¶ 195]. Club Madonna states that its performers receive all their income in the form of tips and that its deejays and security staff all receive tip income from performers who participate in a tip pool. Club Madonna alleges that the Ordinance prohibits direct tipping of employees and performers by Club Madonna's patrons and results in a potential loss of business. Thus, Club Madonna states that it

cannot take advantage of the reduced minimum wage for tipped employees that it would otherwise be entitled to do under the Fair Labor Standards Act.

Club Madonna claims that the "economic burdens placed on Plaintiff's speech activities as a consequence of speaking directly chills that speech and makes the cost of speech more expensive than is the case for businesses not providing exotic dancer entertainment." *Id.* at ¶ 205.

"A tax that burdens rights protected by the First Amendment cannot stand unless the burden is necessary to achieve an overriding governmental interest." *Minneapolis Star & Tribune Co. v. Minn. Com'r of Revenue*, 460 U.S. 575, 582 (1983) (holding tax on the use of ink and paper violated the First Amendment where the tax singled out the press and Minnesota "offered no satisfactory justification for its tax"); *see also Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 115 (1991) ("A statute is presumptively inconsistent with the First Amendment if it imposes a financial burden on speakers because of the content of their speech.").

Here, Club Madonna alleges that the tax on speech is the Ordinance's prohibition on tipping. However, a plain reading of the Ordinance (Sec. 18-914), attached as Exhibit 1-2 to Club Madonna's complaint, reflects that it does not ban tipping of performers and employees by patrons or ban tip pooling. It merely prohibits Club Madonna from providing compensation to a dancer or employee through a "handler" or other third-party intermediary.

While the Undersigned agrees that the phrasing used by the City -- that Club Madonna "*must*: (1) [p]rovide direct monetary or non-monetary compensation to any worker or performer" -- could have been written more clearly to state, "*if* or *when* Club Madonna provides compensation, it must be made directly to the performer and not any third-party intermediary." But regardless, the plain reading of the Ordinance does not bar tipping from patrons to the dancers or require Club Madonna to maintain records of all tips made to performers and employees.

Putting aside Club Madonna's constrained, unreasonable reading of the Ordinance to ban tipping, the Undersigned already determined that the economic burdens imposed by the Ordinance generally (specifically the ID verification and recordkeeping requirements) are content-neutral, necessary to further a substantial government interest (preventing human trafficking) and are not substantially broader than necessary to achieve this purpose. *See Ward*, 491 U.S. at 800. This is unlike the ink tax involved in *Minneapolis Star & Tribune Co.*, where the Court found the tax was not "necessary to achieve an overriding governmental interest." *See Minneapolis Star & Tribune Co.*, 460 U.S. at 582.

Thus, Club Madonna also fails to state a cause of action for declaratory or injunctive relief on the grounds that the Ordinance is an unconstitutional tax on speech.

### d. Count IX – Equal Protection Clause – Class of One

In sum, Club Madonna argues that, because it offers exotic dance entertainment, it is being treated differently from "all other businesses employing minors, or immigrants, or providing entertainment for patrons." [ECF No. 1, ¶ 215]. Club Madonna alleges that "[t]he City singled out Plaintiff for a unique and targeted regulation that affects no other citizen within the City." *Id.* at ¶ 209. It further alleges that during the enactment of the Ordinance, the City "singled out Plaintiff's business for particular condemnation and announced its intention to utilize the Ordinances as a means of putting Plaintiff out of business." *Id.* at ¶ 210. Thus, Club Madonna argues that the Ordinance is being applied to Club Madonna in violation of the Equal Protection Clause of the Fourteenth Amendment. *Id.* at ¶ 208.

A "class of one" type of equal protection claim will be successful "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (holding that complaint alleged a viable equal protection claim where it was alleged that Village demanded 33-foot easement from homeowner, and Village required only 15-foot easement from other "similarly situated property owners").

Here, Club Madonna is the only nude dance club in the City of Miami Beach and therefore currently is the only business subject to the Ordinance. Thus, Club Madonna

cannot allege it is being treated differently from other nude dance clubs. Club Madonna argues it is being treated differently from "all other businesses employing minors, or immigrants, or providing entertainment for patrons." [ECF No. 1, ¶ 215]. As pointed out by the City, this description would include a broad range of businesses that are allegedly "similarly situated." However, Club Madonna is "not permitted . . . to rely on broad generalities in identifying a comparator." *Leib v. Hillsborough Cty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1307 (11th Cir. 2009) (internal citation omitted).

In its briefing, Club Madonna points to massage parlors as similarly situated businesses that also have sex-trafficking concerns. [ECF No. 82, p. 15]. However, these allegations relating to massage parlors are not in the complaint. And during the hearing on the motion to dismiss, Club Madonna expressed a desire to amend its equal protection claim to allege an adequate comparator, which would include an umbrella of adult entertainment-related businesses, including adult bookstores with video booths and other adult entertainment businesses.

Because Club Madonna fails to identify a comparator that is "similarly situated" in its complaint, Club Madonna has failed to sufficiently allege the first prong for a "class of one" equal protection violation. Thus, the Undersigned **respectfully recommends** that the district court find that Club Madonna fails to state a claim for equal protection.

The Undersigned has doubt that, even if Club Madonna identified a comparator, that there would be no rational basis for the difference in treatment. However, because

the motion to dismiss briefing is the first time that Club Madonna's count for equal protection is being considered on the merits, the Undersigned **respectfully recommends** that Club Madonna be given leave to amend this count. *See Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (internal citation omitted) ("Where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice.").

### e.   Count XI – Violation of the Contract Clause

Club Madonna alleges that the Ordinance's "Compensation for workers and performers" provision violates the Contracts Clause because it "govern[s] certain aspects of Plaintiff's contracts with its employees and independent contractors" by requiring Club Madonna to provide "direct monetary or non-monetary compensation to any worker or performer" and not "compensate any worker or performer through a third-party intermediary or business entity." [ECF Nos. 1, pp. 60-61; 1-2]. Club Madonna must also maintain records of these transactions. [ECF No. 1-2, p. 2].

Club Madonna describes in general the payment arrangements for its employees, performers, and deejays, and it alleges that the Ordinance's compensation requirements modify these arrangements. [ECF No. 1, pp. 59-63]. However, it is unclear from reading the Ordinance how it would interfere with Club Madonna's payment arrangements. Club Madonna fails to pinpoint how the Ordinance would change these payment

arrangements, other than to state that the Ordinance prohibits tipping of employees and performers by patrons to Club Madonna. [ECF No. 1, ¶¶ 200-203].

The Contract Clause of the United States Constitution provides that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts." U.S. Const. art. 1, § 10. "Three factors are considered when evaluating a claim that the Contract Clause has been violated: (1) whether the law substantially impairs a contractual relationship; (2) whether there is a significant and legitimate public purpose for the law; and (3) whether the adjustments of rights and responsibilities of the contracting parties are based upon reasonable conditions and are of an appropriate nature." *Vesta Fire Ins. Corp. v. State of Fla.*, 141 F.3d 1427, 1433 (11th Cir. 1998).

Here, Club Madonna failed to allege that the Ordinance "substantially impairs" the payment arrangements it has with its employees, performers, and deejays. If the plain language of the Ordinance did in fact prohibit tipping and/or require Club Madonna to maintain records of every tip received from a performer, then this would arguably substantially impair the payment arrangements that Club Madonna has with its employees, performers, and deejays. But that is not the case here.

As stated above, a plain reading of the Ordinance does not reflect that the Ordinance bans tipping of performers and employees by patrons or bans tip pooling. It merely prohibits Club Madonna from providing compensation to a dancer or employee through a "handler" or other third-party intermediary. Again, the Ordinance could have

been written more clearly, but the plain reading of the Ordinance does not bar tipping from patrons to the dancers or require Club Madonna to maintain records of all tips made to performers and employees.

Further, based on this plain reading of the Ordinance, it is unclear from the face of the complaint how the Ordinance "burdens the Plaintiff with logistical and record-keeping requirements that it currently delegates to others under its independent contractor agreements." [ECF No. 1, ¶ 241(C)]. But even if it did, Club Madonna does not plead facts supporting that these record-keeping requirements substantially impair its payment arrangements, i.e., that its employees, performers, and deejays were induced to enter into these agreements because Club Madonna was not subject to the record-keeping requirements of the Ordinance. *See Taylor v. City of Gadsden*, 958 F. Supp. 2d 1287, 1333 (N.D. Ala. 2013), *aff'd*, 767 F.3d 1124 (11th Cir. 2014) (stating that, in determining whether contract impairment is substantial, the court "looks at whether the impaired term was central to the contract, whether settled expectations have been disrupted, and whether the impaired right was reasonably relied on").

Accordingly, the Undersigned finds that Club Madonna fails to state a claim for relief under the Contracts Clause.

### f. Count XIII – Section 18-913(1)(b) is Preempted by Federal Immigration Law (8 U.S.C. §§ 1324a-1324b)

Club Madonna alleges that the Ordinance violates the Supremacy Clause of the United States Constitution because it is preempted by federal law. [ECF No. 1, ¶ 272].

Club Madonna points to the ordinance's requirement that Club Madonna require identification (state or federal photo identification, and one additional form of identification) confirming that a dancer "is either a U.S. Citizen, legal resident, or otherwise legally permitted to be employed within the United States of America." *Id.* at ¶ 274(A). Further, "[t]he ordinance imposes monetary penalties as well as the loss of business licenses if a business fails to obtain and retain these records." *Id.* at ¶ 274(B).

Club Madonna states that a person who lacks the required documentation cannot work at Club Madonna because Club Madonna would be subject to significant penalties if it does not obtain the required citizenship/residency documents. *Id.* at ¶ 274(C). Thus, the Ordinance precludes an undocumented foreign national from working at Club Madonna. *Id.* at ¶ 274(D).

Club Madonna alleges that the Ordinance's requirement is expressly preempted by the Immigration Reform and Control Act of 1986 ("IRCA"), 8 U.S.C. § 1324a, which makes it unlawful for any person or entity to hire an unauthorized alien. The IRCA provides that "[t]he provisions of this section preempt any State or local law imposing civil or criminal sanctions (other than through licensing and similar laws) upon those who employ, or recruit or refer for a fee for employment, unauthorized aliens." 8 U.S.C. § 1324a(h)(2).

Club Madonna also argues that the Ordinance is impliedly preempted under the doctrine of implied/conflict preemption because it regulates the treatment of foreign

nationals who are independent contractors, in contravention to 8 U.S.C. §1324a(a)(1)(A) and the other provisions of the IRCA. Specifically, Club Madonna states that Congress excluded independent contractors and other non-employees from the scope of the restrictions contained in the IRCA, but the Ordinance precludes any undocumented foreign national from working at Club Madonna. [ECF No. 1, ¶ 274(D)]. This would include Club Madonna's dancers, who the Club says are engaged as independent contractors. *Id.* at ¶ 274.

"[T]he Supremacy Clause provides a clear rule that federal law 'shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any state to the Contrary notwithstanding.'" *Ariz. v. United States*, 567 U.S. 387, 399 (2012) (citing Art. VI, cl. 2.). Under the Supremacy Clause, Congress has the power to preempt state and local laws when they conflict with federal law. *Id.*

"Conflict preemption occurs either when it is physically impossible to comply with both the federal and the state laws or when the state law stands as an obstacle to the objective of the federal law." *Fla. State Conference of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1167 (11th Cir. 2008). Further, "[t]he court utilizes its judgment to determine what constitutes an unconstitutional obstacle to federal law, and this judgment is 'informed by examining the federal statute as a whole and identifying its purpose and intended

effects.'" *Ga. Latino All. for Human Rights v. Governor of Ga.*, 691 F.3d 1250, 1263 (11th Cir. 2012) (internal citation omitted).

The City argues it is not impossible to comply with both the IRCA and the Ordinance because, even though the IRCA does not require verification of independent contractors, it does not prevent the City from requiring verification for nude dancers to protect the public from child sex trafficking. [ECF No. 81, p. 15]. The City further argues that the Ordinance does not create an obstacle to the objective of the IRCA, which is to create a "comprehensive framework combating the employment of illegal aliens." *Id.* (citing *Ariz.*, 567 U.S. at 404). The City claims the Ordinance "does not punish, prohibit, or even address the lawfulness of a business hiring unauthorized aliens." [ECF No. 81, p. 15].

The Undersigned disagrees. Even though the Ordinance is directed at preventing human trafficking, the plain language of the Ordinance (Sec. 18-913) requires Club Madonna and other nude dance establishments to verify that "any worker or performer" is "a U.S. Citizen, legal resident, or otherwise legally permitted to be employed within the United States of America," and to maintain copies of the documents confirming the worker or performer's legal status. [ECF No. 1-2, p. 1]. If Club Madonna fails to comply, it faces steep fines in the amount of $5,000 for a first offense; $10,000 for a second offense; $20,000 for a third offense; and enhanced penalties, including: suspension of the business

42

for three-months or revocation of the business tax receipt or certificate of use for a period not to exceed a year. [ECF No. 1-2, pp. 2-4].

Further, the Ordinance applies to "any worker or performer entering the nude dance establishment," which includes independent contractors who perform at Club Madonna. [ECF No. 1-2, p. 1]. This requirement that Club Madonna verify the work status of independent contractors differs from federal immigration law, codified in the IRCA, which excludes verification obligations for independent contractors. *See Chamber of Commerce of U.S. v. Edmondson*, 594 F.3d 742, 769 (10th Cir. 2010) (stating Congress has "intentionally excluded independent contractors from verification obligations"); *see also Lozano v. City of Hazleton*, 724 F.3d 297, 306 (3d Cir. 2013) (citing H.R.Rep. No. 99–682(1), at 57, 1986 U.S.C.C.A.N. 5649, 5661) ("Congress explicitly declined to sanction employers based on the work authorization status of 'casual hires (i.e., those that do not involve the existence of an employer/employee relationship).'").

Congress did so in order to "minimize the burden placed on employers." *Lozano*, 724 F.3d at 306; *see also Edmondson*, 594 F.3d at 768 ("Employers are not required to verify the work eligibility of independent contractors, which would increase the burdens on business and could lead to increased employment discrimination.").

The Eleventh Circuit has not addressed whether the IRCA impliedly preempts a local or state requirement that individuals and businesses verify the legal work status of independent contractors. But other Circuits have addressed challenges to similar

43

requirements and found that they **do** conflict with the objectives of federal immigration law and are preempted. *See Lozano*, 724 F.3d at 307, 309 (finding that statutory scheme requiring that employer "verify the status of independent contractors and casual hires . . . conflicts with Congress's intent to limit IRCA's application to the employer/employee relationship" and is preempted); *see also Edmondson*, 594 F.3d at 750 (finding Oklahoma statutory requirement that "contracting entities either verify the work eligibility of their individual independent contractors or withhold certain taxes from those contractors . . . interferes with Congress' chosen methods and is thus conflict preempted"); *Cf. Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582, 601 (2011) (finding Arizona licensing law applying to employees was not impliedly preempted because it "closely track[ed] IRCA's provisions in all material respects").

Thus, because the Ordinance requires Club Madonna to verify the work eligibility of its independent contractors, the Undersigned finds that Club Madonna states a cause of action for preemption by federal immigration law.

### g.   Count XIV – Section 18-911(1) is Not Preempted by Federal Labor Law (29 U.S.C. § 201, *et seq.*)

Club Madonna argues that the Ordinance is also preempted by federal labor law. Specifically, Club Madonna alleges that the Ordinance's ban on tipping is preempted by the Fair Labor Standards Act ("FLSA"), which allows employers to pay a "reduced minimum wage" when employees receive tips from customers. [ECF No. 1, ¶ 286]. Club Madonna claims the Ordinance prevents it from taking advantage of the reduced

minimum wage for tipped employees allowed under the FLSA and "exposes Plaintiff to startlingly high fines and the potential loss of its business if Plaintiff allowed such tipping." *Id.* at ¶¶ 285-287.

However, as stated above, a plain reading of the Ordinance reveals that it does not ban tipping of performers and employees by patrons or ban tip pooling. It merely prohibits Club Madonna from providing compensation to a dancer or employee through a "handler" or other third-party intermediary. Thus, Club Madonna has not alleged any conflict between the FLSA and the Ordinance, and the Undersigned finds that Club Madonna's claim for preemption by the FLSA fails.

### h. Count XV – Penalty Provisions of Article XVI Are Neither Illegal Nor Preempted by State Law

Club Madonna argues that the penalty for a violation of the Ordinance is illegal, unenforceable, and violates due process because it is more stringent than the penalty imposed by Florida law for violation of an "analogous" Florida statute. [ECF No. 1, ¶ 297]. The Club argues that the "fines imposed by the City dramatically exceed those fines established by the State of Florida for non-criminal offenses," as provided by § 775.083(e) of the Florida Statutes, which limits fines for non-criminal violations to $500. Id. at ¶ 296.

Club Madonna alleges that the Florida Legislature has enacted a statute (Fla. Stat. § 787.29) intended to combat human trafficking that is analogous to the Ordinance and which requires adult businesses (and a number of other industries) to post signs intended to educate citizens and deter traffickers. *Id.* at ¶ 297. Section 787.29 is noncriminal in

45

nature and limits punishment to a civil fine of up to $500. *Id.* at ¶ 298. By contrast, the

Ordinance here imposes penalties ranging from $5,000 for a first offense to $20,000 for a

third offense.

Additionally, the Club argues that the procedures for imposing penalties under

Article XVI are illegal, unenforceable, and violate due process because they vary from the

express and mandatory provisions of Florida law and are preempted by Florida law.

Specifically, the Ordinance requires a special master to impose the maximum fine set by

the Ordinance and prohibits the special master from reducing that penalty under any

circumstances. The Ordinance provides: "The special master shall not have discretion to

alter the penalties prescribed in section 18-915." [ECF No. 1-2, p. 4].

Club Madonna alleges this provision conflicts with state law, Fla. Stat.

§ 162.09(2)(b), concerning the discretion of the special master. Section 162.09(2)(b)

provides:

> (b) In determining the amount of the fine, if any, the enforcement board
> shall consider the following factors:
>
> 1. The gravity of the violation;
>
> 2. Any actions taken by the violator to correct the violation; and
>
> 3. Any previous violations committed by the violator.

Fla. Stat. § 162.09(2)(b).

Like federal law, "[p]reemption of local ordinances by state law may, of course, be

accomplished by express preemption—that is, by a statutory provision stating that a

particular subject is preempted by state law or that local ordinances on a particular subject are precluded." *Masone v. City of Aventura*, 147 So. 3d 492, 495 (Fla. 2014). Alternatively, "field preemption" or "[i]mplied preemption" is "found where the state legislative scheme of regulation is pervasive and the local legislation would present the danger of conflict with that pervasive regulatory scheme." *Id.* Even when there is not express or field/implied preemption, "a municipality's concurrent legislation must not conflict with state law." *Id.* (internal citation omitted).

Thus, a municipality may not impose a greater penalty than that imposed by the state for the same conduct. *See Thomas v. State*, 614 So. 2d 468, 470 (Fla. 1993) (finding city ordinance criminalizing failure to have bell on bicycle was in conflict with, and preempted by, state law punishing same conduct by civil penalty); *see also Wyche v. State*, 619 So. 2d 231, 237 (Fla. 1993) ("[T]he ordinance is invalid because its maximum penalty of six months' imprisonment is greater than the penalty imposed by state statutes regulating similar conduct.").

Here, the Club alleges that § 787.29 is analogous to the Ordinance and because the penalty for violating the Ordinance is greater than the penalty for violating § 787.29 (or any other state civil fine), the Ordinance is preempted by state law. However, § 787.29 provides that transportation hubs, emergency rooms, adult entertainment establishments, and massage parlors must display a human trafficking public awareness sign including a help line for victims. The language of § 787.29 does not expressly

preempt local governments from regulating conduct directed to prevent human trafficking. Further, Club Madonna has not pointed to any case law reflecting that there is field/implied preemption of human trafficking by the state.

Section 787.29 does not conflict with the conduct targeted by the Ordinance. There is nothing preventing Club Madonna from displaying a human trafficking public awareness sign and complying with the verification and record-keeping requirements of the Ordinance. Accordingly, there can be no preemption if there is no conflict. And the fact that the penalties differ for the Ordinance and § 787.29 is irrelevant because they do not regulate the same conduct. *See Thomas*, 614 So. 2d at 470; *see also Wyche*, 619 So. 2d at 237.

Because there is no preemption, Club Madonna's argument that the Ordinance's penalty violates due process -- because it exceeds the fine punishable by § 787.29 and other state civil fines -- is essentially an argument that the penalty is excessive. The Club made a similar argument in Count XII that the penalties imposed by the Ordinance violated the excessive fines clause of the Eighth Amendment. [ECF No. 1, pp. 64-69].

In that count, Club Madonna alleged "[t]he fines imposed by the City dramatically exceed those fines established by the State of Florida for non-criminal offenses: §775.083(e), Florida Statutes, limits fines for non-criminal violations to $500.00." [ECF No. 1, ¶ 257]. The Eleventh Circuit rejected that argument and affirmed dismissal of Count

XII, finding that it was not ripe for review because Club Madonna did not allege that the City had yet imposed a fine under the Ordinance. [ECF No. 74, p. 17].

Finally, the Undersigned finds that Club Madonna fails to state a cause of action for preemption regarding the Ordinance's provision relating to the special master. [*See* ECF No. 1-2, p. 4]. The Club's primary argument is that the Ordinance is preempted by state law because the Ordinance provides that the special master does not have discretion to determine the dollar amount of the penalty for violations. This situation, Club Madonna argues, is inconsistent with a Florida statute (§ 162.09), which the Club says is analogous. Section 162.09 permits a code enforcement board to set the dollar amount of the fine, up to certain dollar limits, based upon several designated factors.

However, the Club has not identified any case law holding, or even implying, that the loss of discretion to determine the dollar amount of the fine creates a preemption scenario. In fact, in its response to the City's motion to dismiss, the Club says nothing about its theory and it ignores the City's arguments in the motion to dismiss. Thus, when confronted with a direct challenge to its novel preemption theory, the Club has not provided *any* material to even arguably support the concept. The Undersigned therefore concludes that this argument is not plausible.

Accordingly, the Undersigned finds that Club Madonna fails to state a cause of action for preemption by state law and recommends dismissal of Count XV.

### i.   Count XVI – Violates Fourth Amendment Restriction on Warrantless Administrative Searches and Seizures

Club Madonna alleges that the Ordinance violates the Fourth Amendment because it allows the City to conduct a warrantless administrative search and seizure at any time without Club Madonna's permission. [ECF No. 1, pp. 80-81]. Club Madonna points to the language in the Ordinance providing that "[t]he documents referenced in subsections (1) through (5) [verifying the age and legal work status for workers and performers] must be available for inspection by the city ***upon demand***, and the nude dance establishment shall not refuse access to these documents for inspection by the city." [ECF No. 1-2, p. 2 (emphasis added)]. Additionally, other City employees are allowed to enforce the Ordinance as well. [*See* ECF No. 1-2, p. 3 ("The code compliance division or the Miami Beach Police Department shall enforce the provisions of this section. This shall not preclude other law enforcement agencies or regulatory bodies from any action to ensure compliance . . .")].

The Club alleges that it has a reasonable expectation of privacy in its business records and that its performers have a protected interest in maintaining the privacy of their personally identifying information. Club Madonna further points out that there is no requirement under the Ordinance for City employees to obtain a warrant or have probable cause to believe that a violation of the Ordinance has occurred.

Under the Fourth Amendment, "searches conducted outside the judicial process, without prior approval by a judge or a magistrate judge, are per se unreasonable . . .

50

subject only to a few specifically established and well-delineated exceptions." *City of Los Angeles, Calif. v. Patel*, 135 S. Ct. 2443, 2452 (2015) (internal citation omitted). This rule applies to commercial locations, as well as to homes. *Id.* However, "administrative searches," such as those necessary to ensure compliance with record-keeping requirements, are permissible. *Id.*

"[I]n order for an administrative search to be constitutional, the subject of the search must be afforded an opportunity to obtain precompliance review before a neutral decisionmaker." *Id.* For example, if a business refused an administrative search of its records, the business owner "must be afforded an opportunity to have a neutral decisionmaker review an officer's demand to search the [records] before he or she faces penalties for failing to comply." *Id.* at 2453. The "availability of precompliance review alters the dynamic between the officer and the [business] to be searched, and reduces the risk that officers will use these administrative searches as a pretext to harass business owners." *Id.* at 2454.

Here, the Ordinance does not provide any opportunity for precompliance review before a neutral decisionmaker. [*See* ECF No. 1-2]. However, the City argues that the more-relaxed standard for conducting administrative searches applies to Club Madonna because it is a "closely regulated" industry. *See Patel*, 135 S. Ct. at 1254. The Undersigned is not convinced.

The Supreme Court has identified four industries that are closely regulated -- liquor sales, firearms dealing, mining, or operating an automobile junkyard. *Id.* (internal citation omitted) ("Over the past 45 years, the Court has identified only four industries that 'have such a history of government oversight that no reasonable expectation of privacy . . . could exist for a proprietor over the stock of such an enterprise.'").

Under this relaxed standard for closely regulated businesses, the Ordinance would still need to satisfy the following criteria:

> (1) "[T]here must be a 'substantial' government interest that informs the regulatory scheme pursuant to which the inspection is made"; (2) "the warrantless inspections must be 'necessary' to further [the] regulatory scheme"; and (3) "the statute's inspection program, in terms of the certainty and regularity of its application, [must] provid[e] a constitutionally adequate substitute for a warrant."

*Patel*, 135 S. Ct. at 2456 (citing *N.Y. v. Burger*, 482 U.S. 691, 702 (1987)).

Nude dancing clubs have been historically regulated. *See City of Erie v. Pap's A.M.*, 529 U.S. 277, 299, 302 (2000) (upholding ordinance barring full nudity at nude dancing club); *see also Flanigan's Enters., Inc. of Ga. v. Fulton Cty., Ga.*, 596 F.3d 1265, 1269 (11th Cir. 2010) (upholding ordinance barring the sale of alcohol at adult entertainment establishments).[5] Thus, nude dancing clubs could arguably be viewed as analogous to

---

[5]     It is worth noting that the Court's finding in *Flanigan's Enterprises* was based on the secondary effects "associated with the combination of nude dancing **and** alcohol consumption." *Id.* at 1278 (emphasis added). Here, Club Madonna is not permitted to serve alcohol at its nude dancing club.

the four categories listed in *Patel* (liquor sales, firearms dealing, mining, or operating an automobile junkyard). *See Patel*, 135 S. Ct. at 1254.

However, the Supreme Court has not designated nude dancing clubs as closely regulated for purposes of the administrative-search exception. And courts have been hesitant to expand the categories which are designated as "closely regulated." *See Patel*, 135 S. Ct. at 1254 (declining to find that hotel industry is "closely regulated" because hotels do not "pose a clear and significant risk to the public welfare"); *see also Free Speech Coal., Inc. v. Attorney Gen.*, 825 F.3d 149, 170 (3d Cir. 2016) (emphasis added) ("The **pornography** industry, like the hotel industry in *Patel*, is **not** subjected to a level of regulation even approximating the pervasive regulation aimed at the liquor industry . . . firearms dealing . . . mining, [and] . . . independent automobile junkyards."). *But see WBY, Inc. v. Dekalb Cty.*, No. 1:14-CV-0253-LMM, 2016 WL 3128397, at *5 (N.D. Ga. Jan. 13, 2016) ("Adult entertainment establishments, like Follies, are considered closely regulated industries.").

Regardless, the Undersigned need not now determine if the Club is involved in a closely regulated industry because the warrantless inspections allowed under the Ordinance do not appear to even meet the three criteria necessary for warrantless searches of closely regulated businesses. *See Patel*, 135 S. Ct. at 2456.

As to the first requirement, the Undersigned finds that the City has a substantial government interest in curtailing human trafficking and in ensuring that Club Madonna

maintains accurate and complete records verifying the age and work eligibility of its employees and performers.

However, as to the second requirement, the Undersigned is not convinced that warrantless surprise inspections are necessary to further the efficacy of the Ordinance. The City argues that inspections are necessary because "establishments could falsify records after the fact." [ECF No. 85, p. 10]. This same argument was rejected in *Patel*:

> The City claims that affording hotel operators any opportunity for precompliance review would fatally undermine the scheme's efficacy by giving operators a chance to falsify their records. . . . The Court has previously rejected this exact argument, which could be made regarding any recordkeeping requirement. *See Barlow's, Inc.*, 436 U.S., at 320, 98 S.Ct. 1816 ("[It is not] apparent why the advantages of surprise would be lost if, after being refused entry, procedures were available for the [Labor] Secretary to seek an *ex parte* warrant to reappear at the premises without further notice to the establishment being inspected"); *cf. Lone Steer*, 464 U.S., at 411, 415, 104 S.Ct. 769 (affirming use of administrative subpoena which provided an opportunity for precompliance review as a means for obtaining "payroll and sales records"). We see no reason to accept it here.

> As explained above, nothing in our decision today precludes an officer from conducting a surprise inspection by obtaining an *ex parte* warrant or, where an officer reasonably suspects the registry would be altered, from guarding the registry pending a hearing on a motion to quash. *See Barlow's, Inc.*, 436 U.S., at 319–321, 98 S.Ct. 1816; *Riley*, 573 U.S., at ——, 134 S.Ct., at 2486.

*Patel*, 135 S. Ct. at 2456.

Similarly, the City could seek an *ex parte* warrant if it suspected that Club Madonna would falsify the records unless a surprise inspection was conducted. The Undersigned finds that warrantless surprise searches are not necessary to further the efficacy of the Ordinance's recordkeeping requirements.

54

And lastly, the Undersigned finds that the Ordinance is deficient under the "certainty and regularity" requirement for warrantless searches of closely regulated businesses. *See Patel*, 135 S. Ct. at 2456 (citing *Burger*, 482 U.S. at 702) ("[T]he statute's inspection program, in terms of the certainty and regularity of its application, [must] provid[e] a constitutionally adequate substitute for a warrant."). The City argues that the Ordinance "informs nude dance clubs that inspections may be done, and narrowly defines the scope of the search, limiting it to 'documents referenced in subsections (1) through (5)' of Section 18-913." [ECF No. 81, p. 18].

The City is correct that the Ordinance limits the specific documents that are to be inspected. But there is no limitation on when or how often the City (code enforcement officials or police officers) can inspect Club Madonna's records, which must be kept onsite. This is problematic. *See Patel*, 135 S. Ct. at 2456 (finding ordinance "was constitutionally deficient under the 'certainty and regularity' prong . . . because it fails sufficiently to constrain policy officers' discretion" where there was no limitation on what hotels would be searched and how often they would be searched); *see also Burger*, 482 U.S. at 711 (finding ordinance permissible that provided for inspections on a "regular basis" during "regular and usual business hours").

Accordingly, the Undersigned finds that Club Madonna alleges a valid facial challenge to the Ordinance's inspection provision, which allows warrantless administrative searches.

## II.     CONCLUSION

Accordingly, for the reasons discussed above, the Undersigned **respectfully recommends** that the District Court **grant in part** and **deny in part** the City's renewed motion to dismiss Club Madonna's complaint. The Undersigned **respectfully recommends** that the District Court **grant** the motion to dismiss as to Counts VII, VIII, IX (but allow leave to amend), XI, XIV, and XV; and **deny** the motion to dismiss as to Counts XIII and XVI.

## III.     OBJECTIONS

The parties will have ten (10) days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with United States District Judge Federico A. Moreno. Each party may file a response to the other party's objection within ten (10) days of the objection.[6] Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error

---

[6]     The Undersigned is shortening the deadlines for Objections and Responses because the issues have been fully briefed, the Court held extensive oral argument, and important deadlines are imminent.

56

if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140,

149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

  **RESPECTFULLY RECOMMENDED**, in Chambers, Miami, Florida, on October

24, 2019.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Federico A. Moreno
All counsel of record