UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number: 16-25378-CIV-MORENO**

CLUB MADONNA, INC. *d/b/a* CLUB
MADONNA,

               Plaintiff,

vs.

CITY OF MIAMI BEACH,

               Defendant.

_____/

### ORDER ADOPTING REPORT AND RECOMMENDATION AND ORDER GRANTING IN PART AND DENYING PART DEFENDANT'S RENEWED MOTION TO DISMISS

THE MATTER was referred to the Honorable Jonathan Goodman, United States Magistrate Judge, for a Report and Recommendation on Defendant City of Miami Beach's Renewed Motion to Dismiss. The Court has reviewed the entire record, and made a *de novo* review of the issues presented by the parties' cross-objections to Magistrate Judge Goodman's Report and Recommendation. Being otherwise fully advised in the premises, it is

**ADJUDGED** that the Report and Recommendation **(D.E. 110)** is **AFFIRMED** and **ADOPTED** as follows: the Renewed Motion to Dismiss **(D.E. 81)** is **DENIED** as to Counts 7, 13, and 16, and **GRANTED** as to Counts 8, 9, 11, 14, and 15, which are accordingly **DISMISSED**.

## I.     BACKGROUND

### A. FACTUAL HISTORY

Plaintiff Club Madonna is the only nude strip club operating in the City of Miami Beach. (D.E. 1 at ¶ 65.) In January 2014, law enforcement officers discovered that a 13-year-old girl, a victim of human trafficking, was being forced to dance at the Club after the victim ran away from

home and was taken by four adult captors. (*See id.* at ¶¶ 24–25; D.E. 1-1; D.E. 81-1 at 6–9.)  The 13-year-old girl gained access to the Club through one of her captors, who also danced there. (D.E. 81-1 at 7.)  During the several occasions that the 13-year-old girl danced at the Club, the Club's staff never asked her to provide any ID to verify her age.  *Id.*  According to a police search warrant affidavit, the 13-year-old girl made around $1,000 dancing at the Club, all of which was taken by one of her captors or paid to cover the Club's mandatory house fee.  *Id.* at 7–8.

On January 6, 2014, acting pursuant to a lawfully issued search warrant, the City of Miami Beach Police Department and the State Attorney's Office separately rescued the 13-year-old girl, arrested her captors, and searched the Club.  *See generally id.*  Four days later, the City of Miami Beach, the Defendant in this case, issued an order that temporarily suspended the Club's Business Tax Receipt and Certificate of Use for six months.  (D.E. 1-1.)  The City suspended the Certificate of Use license because—based on the grave allegations, the evidence collected during the search, and an interview with the Club's owner—the City determined that the Club posed an "actual threat to the public health, welfare and safety of residents of Miami Beach."  *Id.*  After a post-deprivation hearing regarding the suspended Certificate of Use was scheduled, the Club sued the City, and then filed an emergency motion for a temporary restraining order.  *See Club Madonna Inc. v. City of Miami Beach*, Case No. 14-20164, D.E. 1, 6 (S.D. Fla. 2014).

Ultimately, the post-deprivation hearing was never held.  On January 27, 2014, the City reinstated the Certificate of Use after the Club agreed to enact written security standards, to hire a Chief Compliance officer, to check at least two forms of ID before allowing a performer to dance, and to maintain records of performers who danced.  (D.E. 16-3.)  The next day, the Club withdrew its emergency motion for a temporary restraining order.  *See Club Madonna Inc.*, Case No. 14-20164, D.E. 25 (S.D. Fla. Jan. 28, 2014).  The Club was closed for 17 days.

## B. **THE ORDINANCES**

In the aftermath, to combat human trafficking and its destructive secondary effects, the City Commission enacted Ordinances 2015-3917 and 3926 (codified at Sections 18-913 to -915 of the City Code).[1]  Section 18-913 requires all nude dance establishments in the City of Miami Beach to check the age and work eligibility of "any worker or performer" by requiring that the establishment "provide proof of an original, lawfully issued state or federal photo identification, and one additional form of identification."  Code of the City of Miami Beach § 18-913(1).  The owner or manager of the establishment must also "[v]erify the accuracy" of the documents by making a "sworn statement . . . confirming that the individual performer is at least 18 years of age." § 18-913(4).  In the same sworn statement, the owner or manager must "[c]onfirm" that the worker is "performing of her or his own accord, and is not being forced or intimidated into performing or working."  *Id.*  The establishment is also required to keep a log of performers and workers as they enter and exit the premises and to make all of the required documentation available "for inspection by the city upon demand." § 18-913.

Under Section 18-914, all nude dance establishments must "[p]rovide direct monetary or non-monetary compensation to any worker or performer" and "maintain documentary proof" that the compensation "was directly received by the worker or performer."  Code of the City of Miami Beach § 18-914(1).  Section 18-914 also requires the establishment to maintain records of its compliance, and the City enjoys "a right to request and inspect the records for any and all workers or performers." § 18-914(1)(a).

Finally, Section 18-915 establishes penalties for failing to comply with Sections 18-913 and 18-914.  For a first, second, and third offense within specified time periods, a business is fined $ 5,000, $ 10,000, and $ 20,000, respectively.  Code of the City of Miami Beach § 18-915(a).  For

---

[1] These Sections will collectively be referred to as the "Ordinance," unless otherwise noted.

a second offense within three years, the City will shut down the business for three months. § 18-915(d)(1)(a). And a third offense allows the City to exercise its discretion to close the business for up to one year. § 18-915(d)(1)(b). An establishment charged with violating the ordinance has a right to an administrative hearing and may appeal the decision to "a court of competent jurisdiction." § 18-915(c)(5).

## C. **PROCEDURAL HISTORY**

Perceiving itself to be "singled out for condemnation" (D.E. 1 at ¶ 68), the Club filed a 16-count Complaint against the City, challenging the constitutionality of the Ordinance (Counts 7–16) and the suspension of the Club's Certificate of Use for 17 days (Counts 1–6).

In August 2017, this Court granted the City's initial Motion to Dismiss and dismissed all counts with prejudice.[2] The Club appealed the dismissal of Counts 3–5, 6 (as to Due Process claim only), and Counts 7–16. In June 2019, the Eleventh Circuit issued a Mandate that affirmed dismissal of Counts 3–6, 10, and 12, and reversed dismissal of Counts 7–9, 11, 13–16.

In July 2019, the City filed a Renewed Motion to Dismiss asking the Court to dismiss all remaining claims. After full briefing and oral argument, Magistrate Judge Goodman issued a Report and Recommendation recommending that the Court dismiss Counts 7, 8, 11, 14, and 15 with prejudice, dismiss Count 9 with leave to amend, and allow Counts 13 and 16 to proceed to summary judgment. The parties filed cross-objections to the Report and Recommendation, which the Court will now resolve.

## II.     **LEGAL STANDARD**

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion

---

[2] Specifically, the Court dismissed Counts 1–6 for failing to state a claim and Counts 7–16 on ripeness grounds.

to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. Detailed factual allegations are not required, but a complaint must offer more than "labels and conclusions" or "a formulaic recitation of the elements of the cause of action." *Twombly*, 550 U.S. at 555 (citation omitted). The factual allegations must be enough to "raise a right to relief above the speculative level." *Id.* (citations omitted). Finally, the Court must view the allegations in the complaint in the light most favorable to the plaintiffs and accept well-pleaded facts as true. *See St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 954 (11th Cir. 1986).

## III. <u>DISCUSSION</u>

Before addressing the plausibility of the Club's remaining claims, the Court must decide whether the entire Complaint must be dismissed with prejudice because of the Court's prior determination, in an order awarding attorneys' fees to the City, that the Complaint was filed in bad faith, even though the Eleventh Circuit did not explicitly reverse this determination.

### A. <u>THE "LAW OF THE CASE" DOCTRINE</u>

In 2018, the Court awarded attorneys' fees to the City on bad faith grounds after finding that all 16 claims were frivolous. (*See* D.E. 67 at 3–4.) Relevant here, the Court found Counts 7–16 frivolous because "the claims were brought before the Club was ever threatened with enforcement under the City's ordinances," and thus "the City was forced to undertake the cost of

defending the ordinances at issue before a case or controversy existed." *Id.* at 4.[3]

Because the Eleventh Circuit did not reverse the Court's initial bad faith determination, the City invokes the "law of the case" doctrine to argue that the Court must now dismiss the entire Complaint with prejudice.  The Club strongly disagrees, arguing that the Eleventh Circuit implicitly reversed the bad faith determination when it reversed dismissal of Counts 7–16, finding them ripe for review.  In other words, because the Eleventh Circuit ruled that Counts 7–16 were ripe, these counts cannot still be deemed frivolous.  The Club argues, then, that the law of the case doctrine requires the Court to honor the Mandate in all respects, meaning the Court cannot dismiss the Complaint in full on bad faith grounds.

In the Eleventh Circuit, the law of the case doctrine applies "not only as to 'matters 'decided explicitly' but also as to those 'decided by necessary implication.'"  *Klay v. All Defendants*, 389 F.3d 1191, 1197 (11th Cir. 2004) (quoting *DeLong Equip. Co. v. Wash. Mills Electro Minerals Corp.*, 990 F.2d 1186, 1196 (11th Cir. 1993), *modified on other grounds*, 997 F.2d 1340 (11th Cir. 1993)).  Here, reviewing the Mandate closely, the Court finds that its previous bad faith determination was not left undisturbed.  Although the Eleventh Circuit did not explicitly rule on the frivolity of the Club's claims, the Eleventh Circuit "decided by necessary implication" that Counts 7–16 were not frivolous when it ruled the claims were ripe for review.  Bound by the Mandate, which reversed the ruling underlying the Court's bad faith determination, the Court must deny the City's request for dismissal with prejudice on bad faith grounds.

The Court will now address the sufficiency of the Club's allegations in Counts 7–16.

---

[3] The Court also found the constitutional claims in Counts 1–6 frivolous, but the Eleventh Circuit did not comment on this finding despite also affirming dismissal of Counts 3–6 (the only constitutional claims on appeal).

### B. <u>COUNT 7 – FIRST AMENDMENT – BURDEN ON SPEECH</u>

In Count 7, the Club alleges the Ordinance imposes unconstitutional burdens on the Club's speech in violation of the First Amendment.  Beginning with the legal standard, the Court agrees with Magistrate Judge Goodman that the Ordinance is a time, place, and manner regulation for nude dancing establishments in Miami Beach.[4]  Such a regulation "must be narrowly tailored to serve the government's legitimate, content-neutral interests." *Ward v. Rock Against Racism*, 491 U.S. 781, 798 (1989).  Although the means of the regulation "need not be the least restrictive or least intrusive," they cannot be "substantially broader than necessary to achieve the government's interest." *Id.* at 798, 800.  But, an ordinance will not be struck invalid "simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative." *Id.* at 800.

Turning to the Club's allegations, the Court finds that the Club states a plausible First Amendment claim.  The Club alleges the ID verification requirement is unduly burdensome because it requires the Club to verify, copy, and log the age, identity, and citizenship of every performer "*every* time" the performer enters the premises, and that this provision is not narrowly tailored because the "repeated requirement to verify the age, identity and citizenship of a performer serves no valid public purpose." (D.E. 1 at ¶¶ 188–89 (emphasis in original).)  As a less restrictive alternative, the Club proposes that a "sensible and narrowly-tailored ordinance might require a business to register a dancer once, after which the dancer could perform as a known performer."

---

[4] The Club appears to argue that the Report and Recommendation erred in concluding the Ordinance is not a content-based restriction on speech. (*See* D.E. 117 at 5 ("A compelling argument can be made . . . .").)  The Court disagrees.  Put simply, the Ordinance—which requires the Club to verify the identity of performers entering the premises and to maintain records of compensation paid to performers—is not a content-based restriction because it does not regulate the Club's coveted form of expression (*i.e.* nude dancing).  And to the extent these requirements could actually regulate the Club's protected expression, any such intrusion would be *de minimis*. *See City of Erie v. Pap's A.M.*, 529 U.S. 277, 294 (2000) (plurality).

*Id.* at ¶ 189.[5]

The Club also alleges the record keeping requirement is unduly burdensome because it requires the Club to indefinitely maintain records of compensation and to immediately provide these records to the City upon request. *Id.* at ¶ 191(B). The Club further alleges this provision is not narrowly tailored because the City does not use the records for any purposes, and thus the requirements impose a legal obligation to keep records solely for the purpose of keeping records. *Id.* at ¶¶ 191(C)–(D). Taken together, the Court finds these allegations state a plausible claim that the time, place, and manner regulations in the Ordinance impose an unconstitutional burden on the Club's speech.

Back to the Report and Recommendation, Magistrate Judge Goodman ultimately recommends that the Court dismiss Count 7, finding that the City has a legitimate content-neutral interest in curbing human trafficking and other negative secondary effects and finding that the means chosen by the City to achieve these interests are not substantially broader than necessary. The Club objects that Magistrate Judge Goodman's recommendation is premature, and thus error if adopted, because Magistrate Judge Goodman failed to accept as true the Club's factual allegations about the burden and ease of employing less restrictive alternatives.

The Court agrees with Magistrate Judge Goodman that the "determinative question" on this claim is whether the means chosen by the City were "substantially broader than necessary to achieve the government's interest" (D.E. 110 at 31), but the Court finds this is a fact dependent question more appropriate for resolution at summary judgment or trial. Without factual findings about the alleged burdens,[6] the Court cannot say as a matter of law at the motion to dismiss stage

---

[5] Even though the Court agrees with Magistrate Judge Goodman that it is unclear how this proposed process would work, this does not subject the entire claim to dismissal. Taken as true, the allegation supports the Club's theory that the Ordinance is not narrowly tailored.

[6] As the Club notes in its objections, the Club has affidavit evidence supporting its argument that the ID verification requirement would impose hundreds of additional work hours to

that the Ordinance is substantially broader than necessary.  And given that the Club has stated a

plausible First Amendment claim, the Renewed Motion to Dismiss is **DENIED** as to Count 7.

### C.  COUNT 9 – EQUAL PROTECTION –"CLASS OF ONE" CLAIM

In Count 9, the Club asserts a "class of one" claim under the Equal Protection Clause on

grounds that the Club is being treated differently than "all other businesses employing minors, or

immigrants, or providing entertainment for patrons."   (D.E. 1 at ¶ 215.)   Magistrate Judge

Goodman recommends that the Court dismiss Count 9 because the Complaint fails to identify a

comparator that is "similarly situated."   But noting the Club's desire to amend this claim, as

expressed by the Club in response to questions during the motion to dismiss hearing (*see* D.E. 107

at 50–53), Magistrate Judge Goodman recommends that the Court grant leave to amend.

The Court agrees with Magistrate Judge Goodman that the Club does not state a "class of

one" claim because the Complaint fails to sufficiently identify any "similarly situated" businesses

that have been intentionally treated differently than the Club under the Ordinance.  But the Court

declines to grant the Club leave to amend the claim because the request for leave to amend is

procedurally improper and because any amendment would be futile.

#### 1.) Procedurally Improper Request

Immediately upon remand from the Eleventh Circuit, the Court issued a scheduling order

on June 26, 2019 that afforded the Club an opportunity to amend its Complaint by July 26, 2019.

The Club did not amend its allegations during the month-long court-authorized time to do so.

Instead, the Club informally requested leave to amend during the motion to dismiss hearing on

October 4, 2019—more than 3 months after the amendment deadline expired.  Thus, the Club must

---

comply with, and that compliance would burden the Club by requiring it to dedicate physical space
to store compliance logs.  (*See* D.E. 117 at 4.)  The Club also points out that Magistrate Judge
Goodman did not have the opportunity to compare ordinances from other communities.  *Id.*
Although it is debatable whether this proposed evidence is actually enough to prevail, at this stage
the Court's analysis is limited to the plausibility of the Club's claim.

show "good cause" to now amend the scheduling order to permit an amended complaint. *See* Fed. R. Civ. P. 16(b)(4); *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998) (noting that applying Rule 15(a)'s liberal amendment standard would "render scheduling orders meaningless" and effectively read out Rule 16(b)'s good cause requirement).

Here, the Court does not find "good cause" to amend the scheduling order to permit the Club to amend its Complaint. The Eleventh Circuit has "rejected the idea that a party can await a ruling on a motion to dismiss before filing a motion for leave to amend." *Avena v. Imperial Salon & Spa, Inc.*, 740 F. App'x 679, 683 (11th Cir. 2018) (citing *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) ("A district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court.")). As far back as early 2017, the Club has been aware of the City's contention that the "class of one" claim fails because the Complaint does not sufficiently identify "similarly situated" businesses, let alone allege unconstitutionally disparate treatment relative to those businesses. (*See* D.E. 16 at 15 ("Although the Club claims that it is treated differently from 'all other businesses employing minors, or immigrants, or providing entertainment for patrons,' these businesses are not 'similarly situated.'") (quoting D.E. 1 at ¶ 215).) And the Club has remained aware of the City's argument since the Renewed Motion to Dismiss was filed in July 2019 after remand. Yet, the Club did not consider amending the Complaint until Magistrate Judge Goodman raised the issue during the motion to dismiss hearing in October 2019.

The proper way to request leave to amend a complaint is by filing a motion, which either sets forth the substance of the proposed amendment or attaches a copy of the proposed amendment. *See Cita Tr. Co. AG v. Fifth Third Bank*, 879 F.3d 1151, 1157 (11th Cir. 2018) (citing *Long v. Satz*, 181 F.3d 1275, 1279 (11th Cir. 1999)); *see also* S.D. Fla. Local Rule 15.1 ("A party who

moves to amend a pleading shall attach the original of the amendment to the motion.").  Since the motion to dismiss hearing, the Club still has not filed a motion asking for leave to amend.  And although the Club passively references, in its motion for summary judgment, that Magistrate Judge Goodman recommends that the Court grant leave to amend (*see* D.E. 112 at 12), the Club still has not set forth the substance or attached a copy of its proposed amendment—as required by Local Rule and as recognized by the Eleventh Circuit.

The final tally of these procedural errors weighs heavily against allowing an amended complaint.  Combining these errors with discovery being closed and cross-motions for summary judgment being fully briefed, the Court does not find "good cause" to amend the scheduling order. *See Sys. Unlimited, Inc. v. Cisco Sys., Inc.*, 228 F. App'x. 854, 857 (11th Cir. 2007) (affirming the denial of a motion for leave to amend filed the same day summary judgment motions were due and two days before discovery closed).

### 2.) Amendment Would Be Futile

Even if the Court overlooked the procedural errors, amending the "class of one" claim would be futile.  Amendment is futile when the complaint as amended would still be dismissed. *See Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004) (quoting *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999)).

The Supreme Court has ruled that a "class of one" equal protection claim requires allegations that the plaintiff "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (citations omitted).  In this Circuit, the "similarly situated" requirement "must be rigorously applied."  *See Leib v. Hillsborough County Pub. Transp. Comm'n*, 558 F.3d 1301, 1307 (11th Cir. 2009) (citations omitted).  This is because "[t]oo broad a definition of 'similarly situated' could subject nearly all state regulatory decisions to

constitutional review in federal court and deny state regulators the critical discretion they need to effectively perform their duties." *Id.* (quoting *Griffin Indus. v. Irvin*, 496 F.3d 1189, 1203 (11th Cir. 2007)).

Here, even though binding precedent precludes the Club from relying on "broad generalities in identifying a comparator," that is precisely what the Complaint does. *See id.* (quoting *Griffin*, 496 F.3d at 1204); D.E. 1 at ¶ 215 (listing as similarly situated "all other businesses employing minors, or immigrants, or providing entertainment for patrons"). And that is precisely what the Club's informally proposed amendment does. (*See* D.E. 107 at 51 (listing as similarly situated "the broader industry, which would include such things as alcoholic beverage establishments that provide exotic dance entertainment, massage parlors, and adult bookstores which frequently have video booths.").)

Even if the Complaint was amended to include these businesses, none of them are "*prima facie identical in all relevant respects*" to the Club. *Griffin Industries, Inc.*, 496 F.3d at 1204 (emphasis in original) (quoting *Campbell v. Rainbow City*, 434 F.3d 1306, 1314 (11th Cir. 2006)). One particularly relevant, if not defining, trait of the Club is that it "features performances by dancers in the nude." (D.E. 1 at ¶¶ 12, 15.) But nude dancing is not a trait found at businesses like massage parlors, adult bookstores (with or without video booths), or alcoholic beverage establishments with exotic *non*-nude dance entertainment.[7] Applying the "similarly situated" requirement rigorously, as the Court must under *Leib*, it simply cannot be that the Club was

---

[7] While the Club's nude dancing entertainment could be comparable to that of exotic *non*-nude dancing entertainment in certain establishments, these establishments are not "similarly situated" to the Club for purposes of a "class of one" claim. Notably, the Club is a "nonalcoholic beverage establishment." (D.E. 1 at ¶ 12.) And for "class of one" claims, businesses must be "*prima facie identical in all relevant respects*" to the Club. *Griffin Industries, Inc.*, 496 F.3d at 1204 (11th Cir. 2007) (emphasis in original) (quoting *Campbell*, 434 F.3d at 1314). So, a business providing exotic *non*-nude dance entertainment while serving alcohol is not "similarly situated" to a business providing fully nude dance entertainment while not serving alcohol.

"singled out" for unconstitutionally disparate treatment. The Club just happens to be the only business of its kind in Miami Beach. (*See* D.E. 1 at ¶ 246 ("Plaintiff operates the *only* nude dancing establishment in Miami Beach . . . .") (emphasis added).) For the Club to state a plausible "class of one" claim here, it would need to allege that there are other fully nude dancing establishments in the City of Miami Beach, and that the City of Miami Beach enacted an ordinance that only applied to the Club.[8] For these reasons, the Court finds that amendment would be futile.

Finally, even assuming there was a "similarly situated" comparator identified in the Complaint, the claim can only stand if the Club also alleges that it was "intentionally treated differently" and there was "no rational basis for the difference in treatment." *Vill. of Willowbrook*, 528 U.S. at 564. The Court finds that neither element can be shown. First, the Ordinance plainly applies to "*[a]ll* nude dance establishments" as defined in the City's Code. *See* § 18-913 (emphasis added); *see also* § 18-914 ("A nude dance establishment . . . must . . . ."). And second, there is no doubt that the City had a rational basis in exercising its police power to impose ID verification and direct compensation requirements on "all nude dance establishments" to prevent the deleterious effects of human trafficking, particularly after discovering that a 13-year-old girl danced on the Club's stage multiple times. For these additional reasons, the Court finds that amendment would be futile.

In short, the Complaint fails to identify "similarly situated" businesses and also fails to

---

[8] Indeed, the fact that the Club is the only nude dancing establishment in the City of Miami Beach precludes a finding that any other proposed business is "*prima facie identical in all relevant respects*" to the Club. *Griffin Industries, Inc.*, 496 F.3d at 1204 (11th Cir. 2007) (emphasis in original) (quoting *Campbell*, 434 F.3d at 1314).

And as the City explained during oral argument, "there is at present only a single nude night club in the City of Miami Beach. But this ordinance is not intended to apply only to that night club." (D.E. 107 at 53.) The City further noted that "it is more than conceivable and in fact it's ongoing right now, and it certainly has been in recent years, that there are other establishments seeking to gain a foothold in Miami Beach to be performing nude live adult entertainment." *Id.* So, if additional nude dancing establishments open in Miami Beach, the Ordinance—as written—would apply equally to those new establishments.

allege that the Club has been treated intentionally different from those "similarly situated" businesses. Therefore, Count 9 is **DISMISSED**.

### D.   COUNT 13 – FEDERAL PREEMPTION UNDER THE IRCA

In Count 13, the Club alleges the Ordinance violates the Supremacy Clause of the United States Constitution because it is expressly and impliedly preempted by the Immigration Reform and Control Act of 1986 ("IRCA").

The Supremacy Clause provides that federal law "shall be the supreme Law of the Land." U.S. Const. Art. VI, cl. 2.   Through the Supremacy Clause, federal law can preempt state law in multiple ways.   For instance, state law can be expressly preempted where Congress withdraws specified powers from the states by enacting a statute containing an express preemption provision. *Ariz. v. United States*, 567 U.S. 387, 399 (2012) (citing *Chamber of Commerce of United States v. Whiting*, 563 U.S. 582, 592 (2011)).   There is also field preemption, which occurs where state law regulates conduct in a field that Congress has determined must be regulated by its exclusive governance.   *Id.* (citations omitted).   And finally, there is conflict preemption, which occurs where compliance with both federal and state regulations is physically impossible.   *Id.* (citations omitted).

Here, the Ordinance requires "any worker or performer" entering the Club "to provide proof of an original, lawfully issued state or federal photo identification, and one additional form of identification that confirms he or she is . . . either a U.S. Citizen, legal resident, or otherwise legally permitted to be employed within the United States."   § 18-913(1).   The Ordinance also imposes monetary penalties and the loss of a business license if the business fails to obtain and retain these ID verification records.   §§ 18-915(a), (d).

The Club alleges the Ordinance is expressly preempted by the IRCA because the IRCA makes it unlawful for the Club to hire an unauthorized alien, and because the IRCA contains a provision that expressly preempts state or local laws that impose civil or criminal sanctions on

businesses that employ or recruit unauthorized aliens. (*See* D.E. 1 at ¶¶ 274(D), 277(A).)  The Club also alleges the Ordinance is preempted because, by regulating the treatment of foreign-national independent-contractors, the Ordinance conflicts with Congress's intention to exclude independent contractors from the restrictions imposed by the IRCA. *See id.* at ¶¶ 275–76, 277(B).

The City challenges both preemption theories.  Specifically, the City argues the Ordinance is not expressly preempted because the Ordinance does not punish the Club's *employment* of unauthorized aliens, but rather, punishes the Club's failure to *verify* certain information.  The City also argues that although the "IRCA may not require verification of independent contractors . . . it certainly does not prohibit a City from requiring it for nude dancers to protect the public from sex trafficking." (*See* D.E. 81 at 15.)

As Magistrate Judge Goodman notes, although the Eleventh Circuit has not addressed whether the IRCA preempts state or local laws requiring businesses to verify the legal work status of independent contractors, other Circuits have addressed challenges to similar requirements and found that these requirements do conflict with and are preempted by federal law. (*See* D.E. 110 at 43–44 (citing *Lozano v. City of Hazleton*, 724 F.3d 297 (3d Cir. 2013); *Chamber of Commerce of United States v. Edmondson*, 594 F.3d 742 (10th Cir. 2010)).)

At the motion to dismiss stage, the Court need not resolve whether the Ordinance is or is not preempted by the IRCA.  Indeed, "[w]hile there may be clear cut cases where preemption questions can be resolved on the pleadings . . . it is far more common to resolve issues like the ones here at summary judgment." *Taylor v. Alabama*, 275 F. App'x. 836, 842 (11th Cir. 2008) (citations omitted).  For now, the question is whether the Club's allegations plausibly allege that the Ordinance is preempted by the IRCA.  The Court agrees with Magistrate Judge Goodman that the Club has met this burden.  Therefore, the Renewed Motion to Dismiss is **DENIED** as to Count 13.

## E. COUNT 15 – STATE PREEMPTION UNDER VARIOUS STATUTES

In Count 15, the Club alleges that the Ordinance's penalty provision is preempted by Florida law because the civil penalties imposed for violating the Ordinance are punitive in nature and "dramatically exceed" the fines established for non-criminal offenses under Section 775.083 of the Florida Statutes. Magistrate Judge Goodman recommends that the Court dismiss Count 15 because the Club fails to state a claim for state preemption.[9] The Court agrees.

As with federal preemption, state law can expressly or impliedly preempt local ordinances. *See Masone v. City of Aventura*, 147 So. 3d 492, 495 (Fla. 2014). Express preemption occurs where a statutory provision states that "a particular subject is preempted by state law or that local ordinances on a particular subject are precluded." *Id.* And implied preemption occurs where "the state legislative scheme of regulation is pervasive and the local legislation would present the danger of conflict with that pervasive regulatory scheme." *Id.* (quoting *Sarasota Alliance for Fair Elections, Inc. v. Browning*, 28 So. 3d 880, 886 (Fla. 2010)). Conflict preemption can occur when a municipality imposes a penalty that is greater than that imposed by state law for the same conduct. *See, e.g., Thomas v. State*, 614 So. 2d 468, 470 (Fla. 1993); *Wyche v. State*, 619 So. 2d 231, 237 (Fla. 1993).

The Club objects that the fines established in Section 775.083(1) are "an order of magnitude higher than those assessed under state law for violations of similar statutes." (D.E. 117 at 13.) The Club is correct that the Ordinance's fines are much higher than those imposed under Section 775.083(1). But it is clear to the Court that Section 775.083(1) does not preempt the Ordinance.

---

[9] Although the Complaint advances two other theories of state preemption—under Florida Statute Section 162.09(2)(b) and Section 787.29—the Club's objections do not contest Magistrate Judge Goodman's findings that the Club did not state a claim under these theories. In any event, the Court agrees with Magistrate Judge Goodman's sound reasoning regarding these theories.

Section 775.083(1)(e) limits fines that can be imposed on persons convicted of a "noncriminal violation" to $500. *See* Fla. Stat. § 775.083(1)(e). But the definition of a "noncriminal violation" explicitly excludes from Section 775.083's fines any violations of municipal or county ordinances. *See* Fla. Stat. § 775.08(3) ("The term 'noncriminal violation' shall not mean any conviction for any violation of any municipal or county ordinance."). Furthermore, Section 775.08(3) makes clear that "[n]othing contained in this code shall repeal or change the penalty for a violation of any municipal or county ordinance." *Id.* So, because violating the Ordinance is not a "noncriminal violation" by definition, the Ordinance's penalty provision does not conflict with Section 775.083(1)(e). Thus, the Club's claim is not plausible.

Before advancing, the Court notes that the Club raises a new argument—appearing for the first time in its objections to the Report and Recommendation—that the fines imposed by the Ordinance exceed the cap on fines established in Section 162.09 of the Florida Statutes. This argument stems from a recent ruling in the Eleventh Judicial Circuit, which was issued after the motion to dismiss was fully briefed. (*See* D.E. 117 at 13–14 (citing *Nichols v. City of Miami Beach*, Case No. 2018-21933 ca (22) (Fla. 11th Jud. Cir. Miami-Dade County Oct. 7, 2019)).)

This Court has "broad discretion" in reviewing the Report and Recommendation, and this discretion includes deciding whether to consider a new argument that was not presented to Magistrate Judge Goodman. *See Williams v. McNeil*, 557 F.3d 1287, 1291 (11th Cir. 2009) (ruling district court did not abuse discretion in declining to consider new argument not presented to magistrate judge). From the inception of this case in 2016 through to summary judgment briefing in 2019, the Club never advanced the argument that Section 162.09 preempts the Ordinance on grounds that the fines imposed by the Ordinance exceed the cap on fines established in

Section 162.09. (*See generally* D.E. 1; D.E. 21; D.E. 82.)[10]  By raising it now, Magistrate Judge Goodman was prevented from fully considering the argument and the City was forced to defend itself within its response memorandum to the Club's objections.

Now, while the Court can see the practical reasons why the Club did not bring *Nichols* to Magistrate Judge Goodman's attention in the short two-week period between *Nichols* and the Report and Recommendation issuing, the legally significant problem is that the Club never raised this preemption argument at any time during this 3-year litigation—despite the current version of Section 162.09 being in effect since October 1, 2004. Indeed, the Club failed to do so despite also arguing that Section 775.083(1)(e) preempted the Ordinance for the same reason (*i.e.* the fines imposed by the Ordinance exceed the caps established in Section 775.083(1)(e)).

Allowing the Club to advance this new argument against the City without the benefit of Magistrate Judge Goodman's consideration is both prejudicial to the City and undermines the magistrate system. *See Paterson–Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 991 (1st Cir. 1988) (noting that "[s]ystemic efficiencies would be frustrated" and "it would be fundamentally unfair to permit a litigant to set its case in motion before the magistrate, wait to see which way the wind was blowing, and—having received an unfavorable recommendation—shift gears before the district judge") (citations omitted).

The Court thus deems the Club's new preemption argument waived and will not consider it here. *See Armor Screen Corp. v. Storm Catcher, Inc.*, 709 F. Supp. 2d 1309, 1312 (S.D. Fla. 2010) (declining to consider and deeming waived new arguments raised for the first time in

---

[10] The Complaint does allege that Section 162.09 preempts the Ordinance, but only because "Florida law does not permit a City to *deprive a special master of the discretion to assess a penalty* utilizing the mandatory guidelines set forth in §162.09(2)(b)" (*see* D.E. 1 at ¶¶ 302–03 (emphasis added)). Thus, the allegation in the Complaint is entirely different than the argument the Club asserts now. Accordingly, the City was never put on notice of this new argument.

objections to a report and recommendation).[11]  And as noted above, the Court finds that the preserved state preemption claim is not plausible.  Count 15 is accordingly **DISMISSED**.

### F.  COUNT 16 – FOURTH AMENDMENT – ADMINISTRATIVE SEARCH

In Count 16, the Club brings a facial challenge under the Fourth Amendment on grounds that the Ordinance unconstitutionally allows the City to conduct warrantless administrative searches and seizures at any time without the Club's permission, and does not give the Club an opportunity for precompliance review before a neutral decisionmaker.  The City argues this claim should be dismissed because adult entertainment establishments, like the Club, are involved in a closely regulated industry, and thus the Club is excepted from the Fourth Amendment's warrant requirement.  The City also argues the administrative searches authorized by the Ordinance satisfy Fourth Amendment reasonableness.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV. It further provides that "no Warrants shall issue, but upon probable cause."  *Id.*  Searches of homes and commercial places that are conducted outside the judicial process, without prior approval by a judge or a magistrate judge, are *per se* unreasonable, subject only to a few specifically established and well-delineated exceptions.  *See City of Los Angeles, Calif. v. Patel*, 135 S. Ct. 2443, 2452 (2015) (citations omitted).  The applicable exception here is the "administrative search" exception.

The Supreme Court recently held that for an administrative search to be constitutional, "the

---

[11] Even if the Court exercised discretion to consider the Club's argument, the result would not change.  The issue in *Nichols* was the constitutionality of Sections 142-905(b)(5) and 142-1111 found in "Chapter 142 - Zoning Districts and Regulations" of the Code of the City of Miami. Those Sections relate to the leasing of single-family homes and to the limitations on short-term rentals of apartment units or townhomes.  *See id.*  Thus, the regulations in *Nichols* are not analogous to the human trafficking ordinance being challenged here.  And even if the regulations were analogous, this Court is not bound by a state trial court ruling that is under review on appeal. *See City of Miami Beach, Fla. v. Nichols*, Case No. 3D19-1954 (Fla. 3rd DCA 2019).

subject of the search must be afforded an opportunity to obtain precompliance review before a neutral decisionmaker" "absent consent, exigent circumstances, or the like." *Id.* at 2452, 2456–57 (affirming facial invalidity of city ordinance that failed to provide a hotel any opportunity for precompliance review before being required to give its guest registry to the police for inspection). The Club alleges here that the Ordinance does not give the Club an opportunity for precompliance review before a neutral decisionmaker. (D.E. 1 at ¶ 313(C).) Taking the Club's allegations as true, the Court finds that a plausible Fourth Amendment claim is alleged.

The City argues that precompliance review is unnecessary because the Club is involved in a "closely regulated" industry, and thus the more-relaxed standard for administrative searches applies. Under this standard, the Ordinance must satisfy three criteria to survive constitutional review: (1) there must be a substantial government interest that informs the regulatory scheme pursuant to which the inspection is made; (2) the warrantless inspections must be necessary to further the regulatory scheme; and (3) the statute's inspection program, in terms of the certainty and regularity of its application, must provide a constitutionally adequate substitute for a warrant. *See New York v. Burger*, 482 U.S. 691, 702–03 (1987) (citations omitted).

The Court agrees with Magistrate Judge Goodman that the "closely regulated" industry question need not be decided at the motion to dismiss stage. But even assuming the more-relaxed standard applies, the Club still alleges a plausible Fourth Amendment claim. (*See* D.E. 1 at ¶ 313(D)(1)–(2) (alleging that "surprise" warrantless inspections are not necessary for the City to ensure compliance with recordkeeping requirements, and that allowing inspections without notice, consent, or an opportunity to challenge the inspections gives no certainty or regularity for its application).)

The only issue before the Court right now is whether the Club has plausibly alleged a Fourth Amendment claim. The Court finds that the Club has, and thus the Renewed Motion to

Dismiss is **DENIED** as to Count 16.

### G. COUNTS 8, 11, AND 14 – REMAINING CLAIMS

The Club also seeks a declaratory judgment that the Ordinance is unconstitutional because it taxes the Club's speech (Count 8), violates the Contract Clause (Count 11), and is preempted by the Fair Labor Standards Act (Count 14). These three claims are based on the Club interpreting the Ordinance as "appear[ing] to require adult establishments to pay performers a salary even if their contract provides for alternative forms of compensation," such as tipping by patrons. (D.E. 117 at 15.) Magistrate Judge Goodman found the Club's interpretation that the Ordinance bans tipping to be "constrained" and "unreasonable." (D.E. 110 at 34.) The Court agrees.

Magistrate Judge Goodman aptly noted that although the Ordinance could have been written more clearly, for instance, to state "*if* or *when* a club provides compensation, it must be made directly to the performer and not any third-party intermediary," the plain reading of the Ordinance is that it "does not bar tipping from patrons to the dancers or require Club Madonna to maintain records of all tips made to performers and employees." (*See* D.E. 110 at 33–34 (emphasis in original).) The Ordinance simply prohibits the Club "from providing compensation to a dancer or employee through a 'handler' or third-party intermediary." *Id.* at 38.

Construing the Ordinance in this way means that the Club's speech is not being taxed, the Club's payment arrangements are not being substantially impaired, and the Ordinance does not conflict with the Fair Labor Standards Act. (*See* D.E. 110 at 33–34, 37–39, 44–45.) The City does not object to Magistrate Judge Goodman's construction of the Ordinance, and, notably, the Club describes it as "a sensible and useful construction" that "alleviates [the Club's] concerns" and "produces an outcome sought by both parties." (*See* D.E. 117 at 16; D.E. 121 at 19.)

Finding no error in Magistrate Judge Goodman's analysis or construction of the Ordinance, which the Court now adopts, Counts 8, 11, and 14 are accordingly **DISMISSED**.

## CONCLUSION

For the reasons stated above, it is

**ADJUDGED** that the Report and Recommendation **(D.E. 110)** is **ADOPTED** and **AFFIRMED** as follows:

(1) The City's Renewed Motion to Dismiss is **GRANTED** as to Counts 8, 9, 11, 14, and 15.  These claims are accordingly **DISMISSED**; and

(2) The City's Renewed Motion to Dismiss is **DENIED** as to Counts 7, 13, and 16.  These Counts will proceed to summary judgment.

Furthermore, in view of the Mandate and the Court's denial of the City's Renewed Motion to Dismiss on bad faith grounds, it is also

**ADJUDGED** that the Court's Order Granting Defendant's Motion for Attorneys' Fees **(D.E. 67)** is **VACATED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 20ᵗʰ of February 2020.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

United States Magistrate Judge Jonathan Goodman

Counsel of Record